## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DENNIS MCGURE ,                           :
                                                    Case No. 3:99-cv-140

           Petitioner,

                                                    District Judge Susan J. Dlott
     -vs-                                Chief Magistrate Judge Michael R. Merz

BETTY MITCHELL ,

         Respondent.                 :

---

## REPORT AND RECOMMENDATIONS

This is a habeas corpus action brought by Petitioner Dennis McGuire pursuant to 28 U.S.C. §2254 and seeking relief from both his conviction for aggravated murder with a death penalty specification and his resulting death sentence.[1]

Mr. McGuire is represented by counsel appointed pursuant to 21 U.S.C. §484(q) who did not represent him at trial.[2]

### Statement of Facts

The Ohio Supreme Court described the facts and circumstances leading to Mr. McGuire's indictment, trial, convictions, and sentence of death as follows:

> Joy Stewart was last seen alive on February 11, 1989. That morning, she had breakfast with her neighbors between 9 and 10. She went

---

[1] Mr. McGuire was also convicted of one count of rape and kidnapping and pursuant to O.R.C. §2941.25, the trial court merged the kidnapping conviction with the rape conviction.

[2] The Ohio Public Defender became involved in Mr. McGuire's case when it moved to the Ohio Supreme Court on direct appeal. Mr. Crim became involved when Mr. McGuire's original post-conviction counsel resigned.

there alone that morning because her husband, Kenny Stewart, a truck driver, worked that day from approximately 7:00 a.m. to 5:00 p.m.  After breakfast, Joy went to visit Juanita Deaton, the mother of her friend Chris Deaton.  Mrs. Deaton and her son lived next to each other in a duplex in West Alexandria.

McGuire had been hired by Chris Deaton to clean the ice out of his gutters that day.  According to Chris, McGuire started around 9 or 10 a.m., and finished around noon.  Mrs. Deaton testified that Joy arrived at around 9:30 or 10:00, while McGuire was working.

Mrs. Deaton saw Joy talking to two unidentified males in a dark-colored car before she left.  As Joy was leaving, she told Mrs. Deaton that "she was going to catch a ride somewhere," although Mrs. Deaton did not actually see Joy leave in the car.  Mrs. Deaton was unsure whether McGuire was one of the men in the car.  A few minutes later, however, Mrs. Deaton asked whether McGuire had finished working on the gutters, and her son stated that McGuire had been paid and left.

Jerry Richardson, McGuire's brother-in-law, testified that McGuire later came over to his house that afternoon.  While they were in Richardson's garage, Joy came in and said she wanted some marijuana.  Richardson further testified that McGuire offered to get her some, and the two left in McGuire's car.

The following day, February 12, two hikers found the body of Joy Stewart in some woods near Bantas Creek.  The front of her shirt was saturated with blood.  One deputy sheriff at the scene, Larry Swihart, also noted that there appeared to be a "blood wipe mark" on her right arm.  The body was taken to the Montgomery County Coroner's Office, where an autopsy was performed.  The autopsy revealed that Joy had been stabbed twice.  One wound, located above the left collarbone, caused no significant injury.  The critical wound was a four-and-a-half-inch-deep cut in the throat, which completely severed the carotid artery and jugular vein.  The doctor determined that Joy was alive when she received the wound, and that such a wound could have been caused by a single-edged blade shorter than four and a half inches, due to "how soft and moveable the tissues are in the neck."  The autopsy also revealed abrasions around the neck, impressed with the cloth pattern of Joy's shirt.

The coroner's office also took vaginal, oral, and anal swabs.  The coroner found an abundant amount of sperm on the anal swab, some

2

sperm on the vaginal swab, and none on the oral swab. The coroner indicated that sperm could be detected in the vagina for days or sometimes weeks after ejaculation; however, sperm in the rectum could be detected for a lesser time "because the environment is fairly hostile for sperm, and * * * a bowel movement * * * usually will purge the rectum of any sperm."

Investigator David Lindloff of the Preble County Prosecutor's Office investigated the murder, but to no immediate avail. However, in December 1989, Lindloff was notified that McGuire wanted to talk to him about information concerning a murder in Preble County. McGuire was in jail at the time on an unrelated offense and told a corrections officer that he needed to talk to Investigator Lindloff and Deputy Swihart.

Joseph Goodwin, the corrections officer McGuire initially talked to, took appellant to a private room to talk, where McGuire told him that he knew who had killed Joy Stewart. McGuire stated that Jerry Richardson, McGuire's brother-in-law, had killed Joy with a knife, and appellant could lead investigators to it. McGuire explained to Officer Goodwin that Richardson had wanted to have sex with Joy, but she had refused. McGuire claimed that Richardson then pulled a knife on her, and forced her to have oral sex with him. McGuire then said Richardson anally sodomized her because he "couldn't have regular sex with her because she was pregnant." He also said Richardson stabbed her "in the shoulder bone" and "cut her throat."

Based on these details, Goodwin contacted Investigator Lindloff, who talked to McGuire on December 22, 1989. McGuire told Lindloff that Richardson committed the murder, that he stabbed Joy twice in the neck, and that "the first time it didn't go in. He pulled the knife back out and stuck her again." Lindloff was interested, since the fact that Joy had been stabbed twice in the neck and anally sodomized had not been revealed to the public at that time. The appellant also described in detail the area where Joy's body had been found.

McGuire then led Lindloff and deputies to the murder weapon, on a local farm where he and Richardson had occasionally worked. McGuire led the officers to the hayloft and showed them where a knife was hidden behind a beam.

A subsequent audiotaped interview by Deputy Swihart elicited further details from McGuire. McGuire claimed that Richardson choked Joy before stabbing her and wiped his bloody hands off on

3

her, both of which actions were consistent with the state of Joy's body at the crime scene. Again, Swihart felt that these details were significant, since they had never become a matter of public knowledge. Furthermore, McGuire stated that he was pretty sure that Richardson was driving his mother's blue Ford Escort the day of the murder. However, Richardson's mother later testified at trial that she had traded that car in 1988, a year before the murder, and Richardson did not have access to her car on the day of the murder, since she had driven it to work.

While in prison on December 24, 1989, McGuire received a visit from his childhood friend Shawn Baird. At the time, McGuire told Baird that he knew about a murder that happened in Preble County in February. When Baird asked who did it, the appellant stated that he and Jerry Richardson had done it, and he was going to blame it all on Jerry.

A fellow inmate at the Preble County Jail, Jack Stapleton, testified that he had overheard a conversation between McGuire and another inmate, in which McGuire claimed that he had seen his brother-in-law rape and murder Joy. However, at one point, McGuire apparently slipped and implicated himself when telling the story. While describing the murder, Stapleton testified that McGuire "had his hand like this describing [*sic*], telling the guy how she was killed. And he said I--he goes I mean he. Stabbed her like this. Hit a bone. It didn't kill her. So he stabbed her again."

McGuire was later transferred to Madison Correctional Institute. An inmate there, Willie Reeves, testified that McGuire told him that while he was cleaning gutters, Joy showed up asking whether McGuire had any marijuana. McGuire offered to share some with her, and they left in his car. At one point McGuire asked whether she wanted to have sex, and she refused. McGuire then told Reeves he did it anyway. He then explained that because she was so pregnant, it was difficult to engage in sex with her, so instead he anally sodomized her. Joy then became "hysterical," which made McGuire nervous. He ended up killing Joy for fear that he would go to jail for raping a pregnant woman.

In June 1992, the Montgomery County Coroner's Office sent the vaginal, anal, and oral swabs collected from Joy's body, along with a cutting from her underpants, to Forensic Science Associates, a private laboratory, for DNA testing using the PCR technique. [FN1]. A forensic scientist there compared DNA extracted from the samples

4

with blood samples taken from Dennis McGuire, Jerry Richardson, Joy Stewart, and Joy's husband, Kenny Stewart. The scientist determined that McGuire could not be eliminated as a source of the sperm. Kenny Stewart and Richardson, however, could be eliminated, unless there were two sperm sources, *e.g.,* multiple assailants. This was because the sperm analyzed contained a DQ Alpha type 3, 4, with a trace amount of DQ Alpha type 1.1, 2. McGuire's DNA was the DQ Alpha type 3, 4, whereas Richardson, Stewart, and the victim's DNA was the DQ Alpha type 1.1, 2. The forensic scientist testified that the trace amount of 1.1, 2 could have resulted either from Joy's epithelial cells taken in the swab, or from a secondary sperm source. The sperm DNA analyzed had characteristics that appear in about one in one hundred nineteen males in the white population.

> FN1. The FBI crime laboratory had tried to perform testing in 1989. However, the FBI at the time used the RFLP technique, which requires a greater amount of genetic material. The FBI was unable to extract sufficient DNA from the sperm cells for RFLP testing.

On December 22, 1993, McGuire was indicted on one count of aggravated murder under R.C. 2903.01(B) with one felony-murder specification for rape under R.C. 2929.04(A)(7). McGuire was also indicted on two counts of rape (vaginal and anal) and one count of kidnapping.

On December 8, 1994, the jury returned a guilty verdict on the aggravated murder and specification charge. McGuire was also convicted of anal rape and kidnapping. After a sentencing hearing, the jury recommended a sentence of death for the aggravated murder. The trial judge sentenced the appellant to death, and the court of appeals affirmed.

*State v. McGuire,* 80 Ohio St.3d 390, 391-94 (1997).

## State Court Proceedings

As noted above, on December 22, 1993, the Preble County, Ohio, grand jury indicted

Mr. McGuire on one count of aggravated murder under Ohio Revised Code (" R.C.") §2903.01(B),

with one felony-murder specification for rape under R.C. §2929.04(A)(7). Amended Return of

Writ, Ex. 1 (Doc. 17).[3]  The grand jury also indicted Mr. McGuire on two counts of rape (vaginal and anal) and one count of kidnapping.  *Id.*

The guilt phase of the trial began on November 28, 1994, and the jury heard closing arguments on December 7, 1994.  *See* Transcript of Proceedings, Jury Trial, at 1; 953-1030.  After being instructed by the trial judge, the jury began its deliberations.  *Id.* at 1058.  On December 8, 1994, the jury returned its verdict finding Mr. McGuire guilty of aggravated murder in violation of O.R.C. §2903.01(B) and of committing aggravated murder while he was committing, attempting to commit, or fleeing immediately after committing rape and as the principal offender of the aggravated murder.  *Id.* at 1067-68.  The jury also found Mr. McGuire guilty of rape, anal rape, and kidnapping.  *Id.* at 1068.

The penalty phase of the trial commenced on December 12, 1994, and the jury began its deliberations on that same day.  *See* Transcript of Proceedings, Jury Trial Penalty Phase, at 1; 141.  The jury completed its deliberations on December 13, 1994, and returned its verdict recommending that the sentence of death be imposed.  *Id.* at 159.

On December 23, 1994, the court merged the kidnapping charge into the rape charge and sentenced Mr. McGuire to an indeterminate of term of imprisonment of not less than ten (10) nor more than twenty-five (25) years on the conviction of rape.  Transcript of Proceedings, Miscellaneous Hearings, at 23-24.  In addition, the court imposed upon Mr. McGuire the sentence of death.  *Id.* at 24-25.  On that same date, the court filed its written Sentencing Opinion in which it engaged in an independent weighing of the aggravating circumstances and mitigating factors.

---

[3]  Although Respondent filed an Amended Return of Writ, (Doc. 32), she did not re-file the Exhibits which she initially filed with the Return of Writ.  Therefore, the relevant exhibits are attached to the Respondent's Return of Writ.  (Doc. 17).

Amended Return of Writ, Ex. 68.

Mr. McGuire appealed to the Ohio Twelfth District Court of Appeals and he raised eleven (11) assignments of error:

**Assignment of Error No. 1:**

THE VERDICT OF THE JURY FINDING THE DEFENDANT/APPELLANT GUILTY OF AGGRAVATED MURDER, RAPE AND KIDNAPPING WITH DEATH PENALTY SPECIFICATIONS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AND CONTRARY TO THE LAW OF THE STATE OF OHIO.

**Assignment of Error No. 2:**

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN NOT SUPPRESSING STATEMENTS MADE BY HIM TO LAW ENFORCEMENT OFFICERS AND EVIDENCE OBTAINED FROM THOSE STATEMENT [*sic*]

**Assignment of Error No. 3:**

THE TRIAL COURT ERRED IN ALLOWING THE DEFENDANT/APPELLANT'S TAPED STATEMENT TO BE GIVEN TO THE JURY ALONG WITH A RECORDER DURING THE JURY'S DELIBERATIONS.

**Assignment of Error No. 4:**

THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY DURING THE PENALTY PHASE THAT THE JURY'S DEATH PENALTY VERDICT WAS ONLY A RECOMMENDATION TO THE TRIAL JUDGE.

**Assignment of Error No. 5:**

THE IMPOSITION OF THE DEATH PENALTY WAS INAPPROPRIATE AND CONTRARY TO LAW.

**Assignment of Error No. 6:**

THE PROPORTIONALITY REVIEW MANDATED BY *OHIO*

7

*REVISED CODE SECTION 2929.05* VIOLATES THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.

**Assignment of Error No. 7:**

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DENYING HIS MOTION FOR MISTRIAL AFTER THE PROSECUTION REFERRED TO APPELLANT'S IMPRISONMENT.

**Assignment of Error No. 8:**

THE TRIAL JUDGE ERRED TO THE PREJUDICE OF APPELLANT TO DENY HIS MOTION FOR MISTRIAL AFTER THE PROSECUTION QUESTIONED THE PATHOLOGIST REGARDING THE VIABILITY OF THE VICTIM'S FETUS.

**Assignment of Error No. 9:**

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ADMITTING PHOTOGRAPHS OF THE SCENE AND AUTOPSY.

**Assignment of Error No. 10:**

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING THE VARIOUS MOTIONS FILED BY APPELLANT PRIOR TO TRIAL CONCERNING HIS CONSTITUTIONAL RIGHTS AND VARIOUS OTHER LEGAL ASPECTS OF A DEATH PENALTY PROSECUTION.

**Assignment of Error No. 11:**

THE DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL AT BOTH THE GUILT/INNOCENT PHASE AND THE PENALTY/MITIGATION PHASE DUE TO THE PREJUDICIAL EFFECT CREATED BY THE NUMEROUS ERRORS THAT OCCURRED AT THE TRIAL.

*State v. McGuire,* 1996 WL 174609 at *4 (Ohio App. 12th Dist. April 15, 1996); *see also,* Amended

Return of Writ, Ex. 71.  On April 15, 1996, the court of appeals affirmed Mr. McGuire's convictions

8

for aggravated murder and rape as well as his death sentence. *McGuire,* 1996 WL 174609 at *14;

Amended Return of Writ, Ex. 73.

Mr. McGuire appealed to the Ohio Supreme Court raising eighteen (18) propositions

of law:

**PROPOSITION OF LAW NO. I**

THE TRIAL COURT VIOLATES THE ACCUSED'S RIGHT TO
COMPULSORY PROCESS UNDER THE SIXTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION WHEN IT EXCLUDES EVIDENCE THAT
TENDS TO SHOW THAT SOMEONE OTHER THAN THE
ACCUSED WAS THE SOURCE OF THE SEMEN TAKEN FROM
THE VICTIM IN A TRIAL FOR FELONY MURDER AND RAPE.
THE EXCLUSION OF SUCH EVIDENCE ALSO VIOLATES THE
ACCUSED'S RIGHT TO DUE PROCESS UNDER THE
FOURTEENTH AMENDMENT TO THE UNITED STATES
CONSTITUTION.

**PROPOSITION OF LAW NO. II**

A CAPITAL DEFENDANT'S RIGHT TO FULLY
INDIVIDUALIZED AND RELIABLE SENTENCING UNDER
THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION IS VIOLATED WHEN THE
TRIAL COURT'S INSTRUCTIONS ON MITIGATING FACTORS
PRECLUDE THE JURY'S CONSIDERATION OF THE HISTORY,
CHARACTER AND BACKGROUND OF THE DEFENDANT,
THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND
NONSTATUTORY MITIGATING FACTORS. A PRECLUSIVE
JURY INSTRUCTION ON MITIGATING FACTORS ALSO
INFRINGES A CAPITAL DEFENDANT'S LIBERTY INTEREST
IN OHIO REV. CODE ANN. §2929.04(B)(ANDERSON 1993) AS
PROTECTED BY THE DUE PROCESS CLAUSE OF THE
FOURTEENTH AMENDMENT TO THE UNITED STATES
CONSTITUTION.

**PROPOSITION OF LAW NO. III**

APPELLANT MCGUIRE'S RIGHT TO A RELIABLE CAPITAL
SENTENCING PHASE WAS UNDERMINED BECAUSE THE

TRIAL COURT IMPROPERLY LED THE JURY TO BELIEVE THAT IT WAS NOT RESPONSIBLE FOR ITS DEATH PENALTY VERDICT IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**PROPOSITION OF LAW NO. IV**

DENNIS MCGUIRE'S DEATH SENTENCE IS INAPPROPRIATE BECAUSE THERE IS RESIDUAL DOUBT WHETHER HE WAS THE PRINCIPAL OFFENDER IN JOY STEWART'S MURDER. THIS COURT SHOULD VACATE MR. MCGUIRE'S DEATH SENTENCE PURSUANT TO ITS INDEPENDENT REVIEW UNDER OHIO REV. CODE ANN. §2929.05(A).

**PROPOSITION OF LAW NO. V**

APPELLANT MCGUIRE'S DEATH SENTENCE IS UNRELIABLE IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS THE RESULT OF PENALTY PHASE AND SENTENCING ERRORS. THE PENALTY PHASE AND SENTENCING ERRORS ALSO INFRINGED APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.

**PROPOSITION OF LAW NO. VI**

THE CUMULATIVE EFFECT OF EVIDENTIARY ERRORS THAT PERVADED THIS TRIAL DEPRIVED APPELLANT OF A RELIABLE TRIAL AND FAIR SENTENCING DETERMINATION IN VIOLATION OF HIS RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, §§ 2, 9, 10, 16 OF THE OHIO CONSTITUTION.

**PROPOSITION OF LAW NO. VII**

DEFENSE COUNSEL'S ACTIONS AND OMISSIONS AT MR. MCGUIRE'S CAPITAL TRIAL DEPRIVED HIM OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS GUARANTEED BY THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNTIED STATES CONSTITUTION AND ARTICLE I, §§ 9, 10 AND 16 OF THE OHIO

10

CONSTITUTION.

**PROPOSITION OF LAW NO. VIII**

APPELLANT MCGUIRE'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WAS VIOLATED BY THE INEFFECTIVE ASSISTANCE OF COUNSEL IN THE COURT OF APPEALS.

**PROPOSITION OF LAW NO. IX**

THE STATE FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO PROVE ALL THE ELEMENTS OF RAPE AND FELONY MURDER BEYOND A REASONABLE DOUBT. AS A RESULT APPELLANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

**PROPOSITION OF LAW NO. X**

THE TRIAL COURT ERRED IN FAILING TO SUPPRESS APPELLANT MCGUIRE'S STATEMENT IN VIOLATION OF HIS RIGHTS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

**PROPOSITION OF LAW NO. XI**

THE ACCUSED'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION IS VIOLATED WHEN THE STATE IS PERMITTED TO CONVICT UPON A STANDARD OF PROOF BELOW THE REQUIRED STANDARD OF PROOF BEYOND A REASONABLE DOUBT.

**PROPOSITION OF LAW NO. XII**

A CAPITAL DEFENDANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT IS VIOLATED WHEN THE PROSECUTOR SEEKS COMMITMENTS FROM THE PROSPECTIVE JURORS AT VOIR DIRE TO IMPOSE THE DEATH PENALTY IN THE CASE BEFORE THEM. A CAPITAL

DEFENDANT'S RIGHT TO A RELIABLE DEATH SENTENCE AND TO DUE PROCESS IS ALSO VIOLATED WHEN THE TRIAL COURT DEATH QUALIFIES THE PROSPECTIVE JURORS.

## PROPOSITION OF LAW NO. XIII

A CAPITAL DEFENDANT'S DUE PROCESS LIBERTY INTEREST IN OHIO REV. CODE ANN. §2945.25(c) IS VIOLATED WHEN A PROSPECTIVE JUROR WITH CONSCIENTIOUS OBJECTIONS TO CAPITAL PUNISHMENT IS REMOVED FROM THE JURY PANEL UNLESS THE PROSPECTIVE JUROR IS UNEQUIVOCALLY OPPOSED TO CAPITAL PUNISHMENT UNDER ALL CIRCUMSTANCES.

## PROPOSITION OF LAW NO. XIV

A CAPITAL DEFENDANT'S RIGHT TO RELIABLE SENTENCING UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION IS VIOLATED WHEN THE TRIAL COURT REFUSES TO INSTRUCT THE JURY THAT IT MAY CONSIDER MERCY IN ITS PENALTY PHASE DELIBERATIONS.

## PROPOSITION OF LAW NO. XV

A CHARGE THAT PERMITS THE JURY TO CONVICT THE DEFENDANT UPON A STRICT LIABILITY STANDARD WHEN THE DEFENDANT IS CHARGED WITH A SPECIFIC INTENT OFFENSE VIOLATES THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XVI

A CRIMINAL DEFENDANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION IS VIOLATED WHEN THE JURY IS INSTRUCTED THAT THE DEFENDANT'S PURPOSE TO KILL IS PRESUMED FROM THE PREDICATE FACTS ALSO USURPS THE JURY ROLE OF FACT FINDER IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XVII

IT IS ERROR FOR THE TRIAL COURT TO IMPOSE A DEATH SENTENCE ON APPELLANT MCGUIRE BASED ON HIS COMMISSION OF A FELONY MURDER WHEN THE AGGRAVATING CIRCUMSTANCE MERELY DUPLICATED THE SUBSTANTIVE OFFENSE. THIS DEATH SENTENCE VIOLATED APPELLANT MCGUIRE'S RIGHTS UNDER [THE] EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XVIII

THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND §§2, 9, 10 AND 16 OF ARTICLE I OF THE OHIO CONSTITUTION ESTABLISH THE REQUIREMENTS FOR A VALID DEATH PENALTY SCHEME. OHIO REVISED CODE §§2903.01, 2929.02, 2929.21, 2929.022, 2929.023, 2929.04, AND 2020.05, OHIO'S STATUTORY PROVISIONS GOVERNING THE IMPOSITION OF THE DEATH PENALTY, DO NOT MEET THE PRESCRIBED CONSTITUTIONAL REQUIREMENTS AND ARE UNCONSTITUTIONAL, BOTH ON THEIR FACE AND AS APPLIED.

Amended Return of Writ, Ex. 75. On December 10, 1997, the Ohio Supreme Court issued its decision affirming Mr. McGuire's conviction. *State v. McGuire,* 80 Ohio St.3d 390 (1997). The court also independently reviewed Mr. McGuire's death sentence as required by O.R.C. §2929.05(A) and affirmed the death sentence. *Id.* at 402-04.

Mr. McGuire filed a motion for reconsideration on December 22, 1997, Amended Return of Writ, Ex. 79, which the Ohio Supreme Court denied. *State v. McGuire,* 81 Ohio St.3d 1433 (1998). On October 5, 1998, the United States Supreme Court denied certiorari. *McGuire v. Ohio,* 525 U.S. 831 (1998); Amended Return of Writ, Ex. 80.

During this period of time, specifically on October 21, 1996, Mr. McGuire filed his Petition to Vacate or Set Aside Sentence pursuant to O.R.C. §2953.21. Amended Return of Writ,

13

Ex. 81. In that Petition for post-conviction relief, Mr. McGuire raised twenty-eight (28) causes of action:

**Cause of Action I**
Ineffective assistance of trial counsel for failure to present alibi evidence/actual innocence claim;

**Cause of Action II**
Ineffective assistance of trial counsel for failure to adequately cross-examine the DNA expert/actual innocence claim;

**Cause of Action III**
Drawing blood from Mr. McGuire without a warrant;

**Cause of Action IV**
The state's withholding or destroying evidence consisting of bodily fluids taken from Joy Stewart's anus and vagina;

**Cause of Action V**
The state's use of inadequate population statistics to compare samples of Joy Stewart's DNA with Mr. McGuire's DNA resulting in a wrongful conviction;

**Cause of Action VI**
The trial court's exclusion of evidence which demonstrated that Kenny Stewart was the source of the semen taken from Joy Stewart;

**Cause of Action VII**
The failure of the trial court to record all proceedings including the jury view and several in-chamber conferences;

**Cause of Action VIII**
Improper proceedings during the penalty phase including:
      A. instructing the jury that its findings as to the sentence was a recommendation;
      B. instructing the jury that if it found by proof beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors they had no choice and that they must recommend a sentence of death;
      C. permitting the state to tell the jury that its findings as to the sentence was a recommendation;
      D. permitting the state to refer in its closing argument to the fact that Mr. McGuire's testimony was not given under oath;

**Cause of Action IX**

Ineffective assistance of trial counsel in that counsel failed to:

      A. examine venire members' biases and preconceptions about the death penalty;

      B. subpoena witnesses;

      C. cross-examine on the issue of DNA profile;

      D. move to suppress the blood sample;

      E. move to exclude unscientific DNA population;

      F. have jury view recorded;

      G. have sidebar conferences recorded

      H. object to death qualification of the jury;

      I. object to references to recommendation;

      J. object to the instruction on reasonable doubt;

      K. object to instruction in inferring purpose;

      L. object to duplication on rape charge;

      M. move to limit testimony regarding the decedent victim's background;

      N. object to the government's argument that "Defendant has requested your mercy. And just think of the mercy that he showed."

**Cause of Action X**

Ineffective assistance of counsel during the penalty phase based on the failure to:

      A. obtain reports from experts;

      B. interview family members;

      C. request specialists in mitigation;

**Cause of Action XI**

Ineffective assistance of counsel during the penalty phase based on the failure to meaningfully present the mitigating factor of residual doubt through consistent, meaningful argument in opening statement and closing argument;

**Cause of Action XII**

Ineffective assistance of appellate counsel based on the failure to assign as error:

      A. that prospective jurors were instructed that to get to the issue of the death penalty, they first had to find Mr. McGuire guilty of a specification of rape;

      B. the trial court's failure to remove for cause Tonya Bingham, a juror who was a close relative of Shawn Baird, a key prosecution witness;

      C(1). prosecutorial misconduct in opening statement

15

and closing argument during the penalty phase;

C(2). the trial court's error of permitting the jury to consider and convict Mr. McGuire of a specification which duplicated an element of the principal offense;

D.  the trial court's failure to instruct the jury on the lesser included offense of involuntary manslaughter;

E.  the trial court's erroneous instruction on the issue of intent;

F.  the trial court's erroneous admission of evidence derived from Mr. McGuire's blood which was obtained by means of a warrantless, involuntary search of Mr. McGuire's body;

G.  the trial court's failure to instruct the jury on the issue of mercy;

H.  the trial court's error of failing to explain the meaning and function of mitigating evidence which operated to relieve the state of its burden of proof and which effectively mandated a death verdict;

I.  the trial court's erroneous imposition of a term of imprisonment to be served consecutively to a sentence of death;

J.  the prosecutor obtaining from potential jurors during voir dire a personal commitment to a death verdict;

K.  ineffective assistance of trial counsel;

L.  the prosecutor's systematic use of peremptory challenges to exclude all prospective jurors with some reservation about the death penalty;

M.  the trial court's error of imposing the death penalty because the jury which convicted Mr. McGuire and recommended the death penalty was improperly constituted;

N.  the trial court's erroneous truncated instruction on mitigating factors;

O.  the fact that the rape specification duplicates and fails to narrow the substantive offense; and

P.  the trial court's exclusion of Kenny Stewart's statement even though a complete proffer was made for the record.

**<u>Cause of Action XIII</u>**

Ineffective assistance of appellate counsel based on the failure to assign as error:

A.  the trial court's exclusion of evidence which tended to show that someone other than Mr. McGuire was the source of the semen taken from the victim;

B.  the trial court's erroneous instruction on mitigating factors which precluded the jury's consideration of Mr. McGuire's history, character and background, the nature and circumstances of

16

the offense and nonstatutory mitigating factors;

        C.  the fact that Mr. McGuire's death sentence was inappropriate because there was residual doubt as to whether he was the principal offender in Joy Stewart's murder;

        D.  the fact that Mr. McGuire's death sentence was inappropriate because of several penalty phase and sentencing errors;

        E.  the ineffective assistance of trial counsel;

        F.  the trial court's failure to suppress Mr. McGuire's statement;

        G.  the state being permitted to convict upon a standard of proof below the required standard of proof beyond a reasonable doubt;

        H.  the prosecutor's seeking from the prospective jurors during voir dire commitments to impose the death sentence;

        I.  the removal for cause of a juror who was not unequivocally opposed to the death penalty;

        J.  that Mr. McGuire's right to reliable sentencing was violated when the trial court refused to instruct the jury that it could consider mercy in its penalty phase deliberations;

        K.  that Mr. McGuire was convicted under a strict liability standard;

        L.  that Mr. McGuire was convicted under the presumption of the purpose to kill;

        M.  that the aggravating circumstance was duplicative of the underlying substantive offense;

**Cause of Action XIV**
The failure of Ohio courts to engage in meaningful proportionality review;

**Cause of Action XV**
The trial court's instruction to the jury which was based on Ohio's unconstitutional death penalty statutory scheme;

**Cause of Action XVI**
Ohio's death penalty statutory scheme is unconstitutional;

**Cause of Action XVII**
Cumulative constitutional errors resulted in an unconstitutional conviction and imposition of the death penalty;

**Cause of Action XVIII**
The cumulative effect of the errors and omissions presented in this Petition has denied Mr. McGuire his constitutional rights.

Amended Return of Writ, Ex. 81.  In a decision issued on May 15, 1997, the common pleas court granted the state's motion for summary judgment and denied Mr. McGuire's petition for post-conviction relief.  *Id.* at 92.

Mr. McGuire appealed the denial of his post-conviction petition and raised ten (10) assignments of error:

### First Assignment of Error

The trial court erred in dismissing without a hearing the Petitioner's First cause of action, that he was denied effective assistance of counsel because his counsel failed to present evidence of his actual innocence by properly investigating the case and calling alibi witnesses.

### Second Assignment of Error

The trial court erred in dismissing without a hearing the Petitioner's Second cause of action, that he was denied effective assistance of counsel because his counsel failed to present evidence of Petitioner's actual innocence by examining the DNA experts.

### Third Assignment of Error

The trial court erred in dismissing without a hearing the Petitioner's Third cause of action, that he was denied effective assistance of counsel because his counsel failed to move to suppress evidence seized in violation of his Constitutional Rights to be free from warrantless searches.

### Fourth Assignment of Error

The trial court erred in dismissing without hearing the Petitioner's Fourth cause of action, that he was denied a fair trial guaranteed under the Fifth and Fourteenth Amendments because the government destroyed the evidence of the body fluids taken from the victim.

### Fifth Assignment of Error

The trial court erred in dismissing without a hearing the Petitioner's Fifth cause of action, that he was denied a fair trial guaranteed under

the Fifth and Fourteenth Amendments because the government's expert relied upon erroneous population statistics.

## Sixth Assignment of Error

The trial court erred in dismissing without a hearing the Petitioner's Sixth cause of action, that he was denied a fair trial guaranteed under the Fifth and Fourteenth Amendments because he was not permitted to show that the victim's spouse had had anal intercourse with her shortly before her death.

## Seventh Assignment of Error

The trial court erred in dismissing without a hearing the Petitioner's Seventh cause of action, that he was denied a fair trial guaranteed under the Fifth and Fourteenth Amendments because the government's expert relied upon erroneous population statistics.

1. *Issue Presented for Review and Argument*: Where the trial record on the initial appeal does not contain information needed to establish one of the prongs of the *Strickland v. Washington* test, the doctrine of *res judicata* under *State v. Perry* does not prevent a petitioner from raising the matter pursuant to Ohio Rev. Code. §2953.21-23 (Assignments of Error Nos. One, Two, Three, Four, Five, Six, and Seven argued together).

## Eighth Assignment of Error

The trial court erred in failing to grant the Motion for An Order to Make State's Evidence available for Independent Testing and for Funding for an Independent Examination.

1. *Issue(s) Presented for Review and Argument*: Is a Petitioner facing the death penalty entitled to experts to help in a post-conviction proceeding pursuant to Ohio Rev. Code §§2953.21-2953.23 (Assignments of Error Eight and Nine argued together)?

## Ninth Assignment of Error

The trial Court erred in failing to grant the Motion for Discovery and Funds.

1. *Issue(s) Presented for Review and Argument*: Is a Petitioner

facing the death penalty entitled to experts to help in a post-conviction proceeding pursuant to Ohio Rev. Code §§2953.21-2953.23 (Assignments of Error Eight, and Nine argued together)?

**Tenth Assignment of Error**

The trial court erred in failing to review the entire record to resolve the petition.

    1. *Issue(s) Presented for Review and Argument*: Must a trial court review the entire record, or may the court review just the pleadings to complete the review of a petition filed pursuant to Ohio Rev. Code §§ 2953.21-2953.23?

Amended Return of Writ, Ex. 98. The Court of Appeals affirmed the trial court, *State v. McGuire,* 1998 WL 191415 (Ohio App. 12th Dist. April 20, 1998), and the Ohio Supreme Court did not allow the appeal. *State v. McGuire*, 83 Ohio St.3d 1428 (1998).

    Mr. McGuire filed a second or successive post-conviction petition in the trial court on July 20, 2000. (Doc. 62, Ex. A). In that petition, Mr. McGuire challenged the constitutionality of Ohio's successive post-conviction statute, O.R.C. §2953.23(A)(2), on the grounds that it is unconstitutional on its face and as applied to him arguing in support that it violates the Supremacy Clause of the United States Constitution and the doctrine of separation of powers. *Id.* Mr. McGuire also alleged that the statute violates the "due course of law" and "open courts" provisions of the Ohio Constitution. *Id.* In addition, Mr. McGuire brought a claim of ineffective assistance of trial counsel based on the failure to properly investigate and present mitigation evidence. *Id.* On September 29, 2000, the trial court denied Mr. McGuire's second petition for post-conviction relief. (Doc. 62, Ex. C).

    Mr. McGuire appealed the denial of his second post-conviction relief petition raising two (2) assignments of error:

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED IN DISMISSING PETITIONER'S CLAIMS BECAUSE 2953.23(a)(2) IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED TO PETITIONER IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SEC. 9, 10 AND 19 OF THE OHIO CONSTITUTION.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN FINDING THAT PETITIONER'S CLAIMS ARE BARRED BY THE DOCTRINE OF RES JUDICATA, IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SEC. 9, 10 AND 19 OF THE OHIO CONSTITUTION.

*State v. McGuire,* 2001 WL 409424 (Ohio App. 12th Dist. Apr. 23, 2001) at *4, *9-10; *see also,* Doc. 62, Ex. E.  The court of appeals affirmed the trial court's dismissal of Mr. McGuire's second petition for post-conviction relief.  *McGuire,* 2001 WL 409424 at *10; *see also,* Doc. 62, Ex. G.  The Ohio Supreme Court did not allow the appeal.  *State v. McGuire,* 93 Ohio St.3d 1411 (2001); *see also,* Doc. 62, Ex. K.

## Proceedings in this Court

Mr. McGuire filed his Notice of Intention to file his habeas Petition on January 27, 1999.  (Doc. 2).  He filed his Petition on March 30, 1999, and originally raised twenty (20) grounds for relief.  (Doc. 8).  On October 5, 1999, Mr. McGuire filed his Amended Petition raising twenty-one (21) grounds for relief.  (Doc. 28).

On August 16, 2000, this Court granted Mr. McGuire's Motion for Appointment of Kathleen Burch as a neuropsychologist and his Motion for Appointment of Cellmark Diagnostics as a DNA expert.  (Doc. 50).  In addition, the Court granted in part and denied in part Mr. McGuire's

Amended Motion for Discovery.  *Id.*  On March 14, 2002, the Court granted Mr. McGuire's Motion

to Expand the Record to include the state court pleadings with respect to Mr. McGuire's second or

successive post-conviction petition.  (Doc. 70; *see also,* Doc. 62 and Exhibits thereto).  The Court,

on February 3, 2003,  denied Mr. McGuire's second Motion to Expand the Record and his Motion

for Evidentiary Hearing.  (Doc. 81).  On December 15, 2003, District Judge Dlott overruled Mr.

McGuire's Objections to the Court's denials of his  second Motion to Expand the Record and his

Motion for Evidentiary Hearing.  (Doc. 85).  Pursuant to the Court's December 16, 2003, Briefing

Schedule, Mr. McGuire filed his Trial Brief on March 15, 2004, (Doc. 87), and the Respondent filed

her Brief on April 14, 2004.  (Doc. 88).

In his Amended Petition, Mr. McGuire raised twenty-one (21) grounds for relief.

(Doc. 28).  However, in his Merit Brief, Mr. McGuire has given notice that he has abandoned

Ground 1, Ground 4, Ground 7, and Ground 21(k).  (Doc. 87).  Mr. McGuire's remaining Grounds

for Relief are as follows:

### Ground 2

**Mr. McGuire's trial counsels' conduct of the case fell below the
standard of care.  This violated the Sixth, Eighth and Fourteenth
Amendments**

 a.  Mr. McGuire's counsel's acts and omissions during the voir dire
phase deprived McGuire of the effective assistance of counsel.
i.  Failure to adequately examine venire member's biases and
preconceptions about the death penalty.
ii.  Failure to challenge juror who was related to significant
prosecution witness.
iii.  Failure to preserve errors fundamental to state and federal capital
punishment law.

b.  Defense counsel's actions and omissions during the culpability
phase of McGuire's capital trial deprived him of the effective
assistance of counsel.

22

c. Defense counsel's actions and omissions during the penalty phase of McGuire's capital trial deprived him of the effective assistance of counsel.

i. Inadequate preparation and presentation of mitigation evidence.

ii. Failure to effectively argue residual doubt.

iii. Failure to preserve errors fundamental to Ohio's death sentencing process.

## Ground 3

**Mr. McGuire was not permitted to introduce evidence showing that the victim's husband had anal intercourse with her and thus the semen could have come [from] two sources rather than a single source. The DNA opinion that Mr. McGuire was the source of the semen depended on the assumption that there was only a single source for the semen. His conviction and sentence violate the Eighth and Fourteenth Amendments.**

## Ground 5

**The jury was not instructed in a manner that allowed them to take into consideration Mr. McGuire's history, character and background. Thus his sentence violates the Eighth and Fourteenth Amendments.**

## Ground 6

**The jury was mislead about its role in the sentencing process by being lead to believe that it was only recommending a sentence. This violates the Eighth Amendment.**

## Ground 8

**The jury was not properly instructed on what aggravating factors [to consider] and may have considered improper factors because of the nature of the evidence permitted at the mitigation phase. This violates the Eighth and Fourteenth Amendments.**

## Ground 9

**The court made numerous improper evidentiary rulings: the government was permitted to introduce gruesome and cumulative photographs, improper opinion testimony, improper rebuttal testimony; and Mr. McGuire was not permitted to**

23

present evidence that someone else may have committed this offense, and finally the jury was permitted to have an audio tape during its deliberations. These cumulatively violate the Fifth, Sixth, Eighth and Fourteenth Amendments.

## Ground 10

Mr. McGuire's intermediate-appellate counsel's conduct of the case fell below the standard of care. This violates the Sixth, Eighth and Fourteenth Amendments.

## Ground 11

The government failed to introduce sufficient evidence of Rape. Thus Mr. McGuire was ineligible for consideration for a death sentence. This violates the Eighth and Fourteenth Amendments.

a. Insufficient evidence of Rape.

b. Insufficient evidence of Capital Murder.

## Ground 12

Before a defendant's statement can be used against him in trial, the government must show that the statement is voluntary. The government has failed to show that it complied with the Miranda requirements. This violates the Fifth and Fourteenth Amendments.

## Ground 13

A jury must be convinced beyond a reasonable doubt that a person is guilty of a crime. An instruction that tells the jury that they must be firmly convinced does not meet this standard. This violates the Fourteenth Amendment.

## Ground 14

The Sixth Amendment requires that a person have his guilt determined by a fair and impartial jury. The Due Process Cause requires that jurors must be able to judge all issues without bias or premeditation. In this case, the jurors were asked to commit

24

to a death penalty specifically in this case. This violates the Sixth, Eighth and Fourteenth Amendments.

## Ground 15

A capital defendant has a due process liberty interest in Ohio Rev. Code §2945.25, which prevents people from being excused from capital cases when they [have] conscientious or religious opposition to the death penalty. This violates the Eighth and Fourteenth Amendments.

## Ground 16

A Capital Defendant's right to reliable sentencing is violated when the trial court refuses to instruct the jury that it may consider mercy in its penalty phase deliberations. This violates the Eighth and Fourteenth Amendments.

## Ground 17

The jury was instructed to convict Mr. McGuire upon a strict liability standard. Mr. McGuire was charged with a specific intent crime. This violates the Sixth, Eighth and Fourteenth Amendments.

## Ground 18

The trial court's definition of purpose relieved the government of its burden to prove that Mr. McGuire purposely caused the death of Ms. Stewart. This violates the Sixth, Eighth and Fourteenth Amendments.

## Ground 19

The Defendant was convicted of an aggravating circumstance that merely repeated the elements of a substance offense. This violates the Eighth and Fourteenth Amendments.

## Ground 20

A trial court must review the entire record and not just the pleadings to complete the review of a petition filed pursuant to Ohio Rev. Code §§2953.21 to 2953.23.

**Ground 21**

**The Ohio Death Penalty Scheme violates the prohibition against cruel and unusual punishment in the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.**

a.  The Ohio Death Penalty Scheme is applied in an arbitrary and unequal manner.

b.  The Ohio Death Penalty Scheme utilizes unreliable sentencing procedures.

c.  The Ohio Death Penalty Scheme has a lack of individualized sentencing.

d.  The Ohio Death Penalty Scheme bases the death penalty on a lack of felonious intent.

e.  The Ohio Death Penalty Scheme burdens defendant's right to a jury trial by giving defendants who waive a jury trial a judge with the power to dismiss the specifications in the interest of justice.

f.  The Ohio Death Penalty Scheme mandates the submission of reports and evaluations to the jury.

g.  The Ohio Death Penalty Scheme has a defective proportionality review.

h.  The Ohio Death Penalty Scheme provides for a mandatory death sentence.

i.  The Ohio Death Penalty Scheme is vague.

j.  The Ohio Death Penalty Scheme violates international law.

(Doc. 28).

**Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") applies to all habeas cases filed after April 25, 1996.

26

*Herbert v. Billy,* 160 F.3d 1131 (6th Cir. 1998), *citing, Lindh v. Murphy,* 521 U.S. 320 (1997).  Since

Mr. McGuire filed his Petition well after the AEDPA's effective date, the amendments to 28 U.S.C.

§2254 embodied in the AEDPA are applicable to his Petition.

> Title 28 U.S.C. §2254, as amended by the AEDPA, provides:
>
> ...
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254.

The AEDPA also provides that a factual finding by a state court is presumed to be

correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e).   In addition, pursuant to the AEDPA, before a writ may issue on a claim that

was evaluated by the state courts, the federal court must conclude that the state court's adjudication

of a question of law or mixed question of law and fact was "contrary to or an unreasonable

application of clearly established federal law as determined by the Supreme Court."  28 U.S.C.

§2254(d)(1).

A state court's decision is contrary to the Supreme Court's clearly-established

precedent if: (1) the state court applies a rule that contradicts the governing law as set forth in

Supreme Court case law; or (2) the state court confronts a set of facts that are materially

indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case", "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply[,] or [if the state court] unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407-08. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous; it must have been "objectively unreasonable." *Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003); *Williams,* 529 U.S. at 407, 409. An *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Id.* at 410 (emphasis in original). In sum, Section 2254(d)(1) places a new constraint on the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Id.* at 412 (Justice O'Connor, concurring).

A state court decision is not "contrary to" Supreme Court law simply because it does not specifically cite Supreme Court cases. *Early v. Packer,* 537 U.S. 3 (2002). Indeed, "contrary to" does not even require awareness of Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them. *Id.* at 8. The AEDPA prohibits the overturning of state decisions simply because the federal court believes that the state courts incorrectly denied the petitioner relief:

> By mistakenly making the "contrary to" determination and then proceeding to a simple "error" inquiry, the Ninth Circuit evaded

28

Section 2244(d)'s requirement that decisions which are not "contrary to" clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but "an unreasonable application" of clearly established federal law, or based on "an unreasonable determination of the facts".

*Id.* at 366.

## Merits of the Petition

## Ground 2

**Mr. McGuire's trial counsels' conduct of the case fell below the standard of care. This violated the Sixth, Eighth and Fourteenth Amendments**

a. Mr. McGuire's counsel's acts and omissions during the voir dire phase deprived McGuire of the effective assistance of counsel.

i. Failure to adequately examine venire member's biases and preconceptions about the death penalty.

ii. Failure to challenge juror who was related to significant prosecution witness.

iii. Failure to preserve errors fundamental to state and federal capital punishment law.

b. Defense counsel's actions and omissions during the culpability phase of McGuire's capital trial deprived him of the effective assistance of counsel.

c. Defense counsel's actions and omissions during the penalty phase of McGuire's capital trial deprived him of the effective assistance of counsel.

i. Inadequate preparation and presentation of mitigation evidence.

ii. Failure to effectively argue residual doubt.

iii. Failure to preserve errors fundamental to Ohio's death sentencing process.

29

Mr. McGuire raised an ineffective assistance of trial counsel in his appeal to the Ohio Supreme Court as Proposition of Law Seven, *McGuire,* 80 Ohio St.3d at 407, and the court determined that the claim was waived. *Id.* at 394. Respondent argues that the claim is therefore procedurally defaulted. Mr. McGuire argues only that although the Ohio Supreme Court rejected this claim because it was not raised in the court of appeals, the claim is not defaulted because the Ohio Supreme Court does not apply this rule consistently and "sometimes will review an error not raised in the court of appeals".

The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also, Simpson v. Jones,* 238 F. 3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F. 3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainright* 433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when determining whether a habeas claim is barred by procedural default. *Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261

F. 3d 594 (6th Cir. 2001), *cert. denied,* 534 U.S. 1147 (2002).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>  . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F. 2d at 138.

In his *habeas* petition, Mr. McGuire acknowledges that issue was not raised on direct appeal.  Because Mr. McGuire failed to raise it on appeal, he failed to comply with an Ohio procedural rule that he do so.  *See Lordi v. Ishee,* 384 F.3d 189, 194 (6th Cir. 2004).  Ohio's doctrine of *res judicata* provides, in relevant part, that a final judgment of conviction bars a convicted defendant from raising in any proceeding, except an appeal from that judgment, any issue that was raised, or could have been raised, at trial or on appeal from that judgment.  *Williams v. Bagley,* 380 F.3d 932, 967 (6th Cir. 2004), *citing State v. Perry*, 10 Ohio St.2d 175 (1967).  With respect to a procedural default analysis, Ohio's doctrine of *res judicata* is an adequate and independent state procedural ground.  *Williams, citing Monzo v. Edwards,* 281 F.3d 568, 577 (6th Cir. 2002).  Further, the Sixth Circuit has rejected claims that Ohio has failed to apply the doctrine of *res judicata* consistently.  *Williams, citing Greer v. Mitchell,* 264 F.3d 663, 673 (6th Cir. 2001).

31

This Court concludes that Mr. McGuire's claim that his trial counsel were ineffective is procedurally defaulted.  First, Ohio has a *res judicata* rule which essentially required Mr. McGuire to raise this ineffective assistance of counsel claim in his direct appeal.  Second, the Ohio Supreme Court specifically found that Mr. McGuire had waived the issue.  Third, the Sixth Circuit has determined that Ohio's *res judicata* rule is an "adequate and independent" state ground for purposes of a procedural default analysis.

Mr. McGuire's Ground 2 should be denied because it is procedurally defaulted.

### Ground 3

**Mr. McGuire was not permitted to introduce evidence showing that the victim's husband had anal intercourse with her and thus the semen could have come [from] two sources rather than a single source.  The DNA opinion that Mr. McGuire was the source of the semen depended on the assumption that there was only a single source for the semen.  His conviction and sentence violate the Eighth and Fourteenth Amendments.**

### State court opinion

In addressing this claim, the Ohio Supreme Court said:

Appellant contends that trial counsel failed to effectively argue residual doubt.  This is based on the fact the counsel did not attempt to admit a statement made by Joy's husband Kenny that he had anal intercourse with Joy three or four days before the murder.  Appellant wanted this statement admitted to demonstrate that Kenny was the source of the semen found on Joy's body at the time of the murder. This statement was correctly deemed inadmissible hearsay and was not admitted at trial.   McGuire argues, however, that even if this statement was inadmissible in the guilt phase, it was admissible in the penalty phase because there, "the Rules of Evidence do not strictly apply."  *State v. Landrum,* (1990), 53 Ohio St.3d 107, 115, 559 N.E.2d 710, 720.

However, Kenny's statement was not strong evidence in McGuire's favor.  The statement that Kenny had consensual sex three to four days before the murder was not against his interest, as was the case

32

in *Landrum,* where the statement was deemed admissible. No physical or other evidence corroborated the fact that Kenny was the source of the semen found on Joy's body, unless there were two assailants. Kenny was at work at the time of the murder, and McGuire himself accused Jerry Richardson of the murder, not Kenny. As a result, McGuire has failed to show prejudice. His counsel's failure to proffer the statement in the penalty phase does not undermine confidence in the outcome. For the same reasons, such facts discount McGuire's argument in Proposition of Law One that the exclusion of Kenny Stewart's statement denied appellant due process under the United States Supreme Court's decision in *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297. *Chambers* held that the hearsay rule should not be mechanistically applied, and an excessively strict application of the hearsay rule that excludes highly reliable evidence may deny an accused due process. However, unlike *Chambers,* these facts indicate that the excluded hearsay statement in this case is not highly reliable evidence. Accordingly, Proposition of Law One, which argues that the evidence was wrongly excluded at the guilt phase, is also overruled.

*McGuire,* 80 Ohio St.3d at 399-400.

### Clearly established federal law

Apart from circumstances giving rise to deprivation of a specific constitutional right, trial error will result in a constitutional violation only where it so infected the trial with unfairness as to make the resulting conviction or sentence a denial of due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). Only where the erroneous application of state law deprives a petitioner of a fundamental constitutional guarantee will a federal court inquire into the state court rulings. *Id.* State court rulings on the admission of evidence are not open to challenge in a federal habeas suit unless admission of the evidence undermines the fundamental fairness of the trial and thereby constitutes a violation of due process. *Pulley v. Harris,* 465 U.S. 37 (1984). The Due Process Clause simply does not mandate that all government decisions comply with standards that assure perfect, error-free determinations. *See Mackey v. Montrym,* 433 U.S. 1, 14 (1979). The hearsay rule

33

should not be mechanically applied, and an excessively strict application of the hearsay rule that excludes highly reliable evidence may deny an accused due process. *Chambers v. Mississippi*, 410 U.S. 284 (1973).

### Analysis

Mr. McGuire's position is that his federal constitutional rights were violated when the trial court failed to allow him to introduce  testimony from David A. Lindloff, the investigator for the Preble County Coroner's Office.  During his case-in-chief, Mr. McGuire, through counsel, proffered Detective Lindloff's testimony:

> [Mr. McGuire's counsel]:  Your honor, the defense would propose to put on the stand Detective Lindloff, who was present and participated in an interview of Kenny Stewart on June–let me get the date of the transcription.  I believe it's February 20th of 1989.
>
> And during the interview of Kenny Stewart, the following questions were asked.
>
> You may have had on Tuesday or Wednesday night you may have had anal intercourse.
>
> Kenny Stewart says there was one night we did.  I ain't sure.
>
> Lindloff then says ok, do you remember the time that you did have anal intercourse with her, did you ejaculate in her rectum.
>
> Kenny Stewart's response is yes.
>
> And Lindloff then goes on to say ok, but it was at least Tuesday or Wednesday, prior to Friday night, and earlier in the transcription it relates to the Friday night prior to February 11th of 1989.  It would have been February 10th of 1989.
>
> So the essence of it is that Kenny Stewart has admitted to Detective Lindloff that he had anal intercourse with Joy Stewart within three or four days of the day that Joy Stewart disappeared.
>
> We  would  propose  to  admit  that  through  David  Lindloff  as  a

statement against the interest of Kenny Stewart, since the DNA analysis does demonstrate that there is some semen which could be that of Kenny Stewart's in the sample that was examined.

We should suggest that it is a statement against interest also because of the scenario that the defense would paint that given the state of the body, given the state of the lack of a disarray of clothes, the lack of any objective signs of a struggle, that she would have had anal intercourse with someone who she knew well, and that would have been someone with whom she's done it before, *i.e.*, Kenny Stewart.

And, therefore, would go to the presence of Kenny Stewart at the time and also the presence of his semen that was examined within the sample and we would propose to admit it for those purposes.

Transcript of Proceedings, Jury Trial, at 880-81.

Mr. McGuire recognizes that Detective Lindloff's testimony as to Kenny Stewart's statement is hearsay, but he argues that it was admissible under Ohio's Rule of Evidence 804(B)(3).[4] Mr. McGuire alleges that the jury should have been allowed to hear Kenny Stewart's statement that he had engaged in anal intercourse with his wife, Joy Stewart, who was the victim in this case, because that evidence would raise doubt as to the reliability of the DNA evidence presented at trial. Specifically, Mr. McGuire argues that the state's DNA expert based his testimony on the assumption that there was only one source of semen found in Joy Stewart's anus. Mr. McGuire claims that Kenny Stewart's statement establishes that there was a possibility that there were two sources of semen and that the jury should have been allowed to weigh the credibility of the state's evidence in light of Kenny Stewart's statement.

Jennifer Mihalovich, the state's criminologist, testified that assuming there was a single semen source, the DNA testing she performed on the swabs taken of Joy Stewart's rectum

---

[4] Kenny Stewart committed suicide on July 6, 1992, and therefore was not available to testify at Mr. McGuire's 1994 trial. *See* Transcript of Proceedings, Jury Trial at 358, 373.

showed that Kenny Stewart and Jerry Richardson could be excluded as the sources of the semen but that Mr. McGuire could not be excluded as the source. Transcript of Proceedings, Jury Trial, at 529-32. Ms. Mihalovich also testified that if there was more than one source of the semen in the rectal sample, then neither Jerry Richardson or Kenneth Stewart could be eliminated as a potential donor of that second source. *Id.* at 532.

The defense's expert, Dan Krane, testified that the process that the state's criminologist used to perform DNA testing of the semen sample from Joy Stewart's rectum is very sensitive, that the outcome could be affected by contamination of the sample, that contamination could occur in any one of several ways, and that a false positive, or misidentification, could result. *Id.* at 815-21. Dr. Kane also testified that if the semen sample had been contaminated, Kenny Stewart could not be excluded as the source of that semen. *Id.* at 825. In addition, Dr. Kane testified that assuming that there was a single donor of the semen and that there was no contamination of the sample, the analysis described by Ms. Mihalovich were performed correctly. *Id.* at 845.

First, the record reveals that Mr. Stewart made his statement that he had anal sex with Joy Stewart in response to questioning by David Lindloff, the investigator for the Preble County Prosecutor's Office. He did not make the statement spontaneously, did not make it soon after Ms. Stewart's disappearance or murder, and he did not make it to a close acquaintance. In addition, the fact that Kenny Stewart had consensual anal intercourse with Joy Stewart, his wife, is irrelevant. If Kenny Stewart had anal intercourse with Joy Stewart within three or four days of her disappearance and his DNA was present on the rectal swab, that would not require a conclusion that Mr. McGuire's DNA was *not* present. In other words, even assuming that there were two sources of the sperm, the position which Mr. McGuire apparently advocates, none of the evidence at trial

would support the conclusion that Mr. McGuire was *not* one of the sources. *See,* Testimony of Thomas Blake [forensic serologist], Transcript of Proceedings, Jury Trial, at 414-35; Testimony of Jennifer Mihalovick [criminalist], *Id.* at 510-69.

   In addition, any evidence that Kenny Stewart had anal intercourse with Joy Stewart would not be strong evidence in favor of Mr. McGuire and therefore, the failure to admit it did not result in a denial of Mr. McGuire's due process rights. Specifically, the uncontradicted evidence introduced at trial through the testimony of Gary Brubaker was that Kenny Stewart was at work at the time Ms. Stewart disappeared. *Id.* at 313-29. In addition, the uncontradicted evidence introduced through Dr. David Smith, a forensic pathologist and deputy coroner with the Montgomery County Coroner's Office, is that while sperm can remain in the vagina for days, sperm in the rectum would not stay as long because the environment is fairly hostile to sperm and because the act of defecating usually will purge the rectum of any sperm. *Id.* at 129-86. Finally, while Mr. McGuire implicated someone else in Joy Stewart's rape and murder, it was always Jerry Richardson he implicated, never Kenny Stewart. *See, e.g.*, Testimony of Shawn Baird, Transcript of Proceedings, Jury Trial, at 581-92; Testimony of Joseph Goodwin, *Id.* at 106-28; Testimony of David Lindloff, *Id.* at 332-73; Testimony of Jack Stapleton, *Id.* at 570-81.

   In addressing Mr. McGuire's allegation that failure to admit into evidence Kenny Stewart's statement that he had engaged in anal intercourse with Joy Stewart three or four days prior to her disappearance and murder, the Ohio Supreme Court's decision is not contrary to nor an unreasonable application of, clearly established federal law and therefore Mr. McGuire's Third Ground for Relief should be overruled.

**<u>Ground 5</u>**

37

> **The jury was not instructed in a manner that allowed them to take into consideration Mr. McGuire's history, character and background. Thus his sentence violates the Eighth and Fourteenth Amendments.**

Respondent argues that this Ground is procedurally defaulted.  Mr. McGuire admits that he did not raise this issue in the state court of appeals on direct appeal.  However, Mr. McGuire argues that because he has alleged ineffective assistance of trial and appellate counsel, he is able to establish "cause and prejudice" on this claim.

**Analysis**

Mr. McGuire raised this issue before the Ohio Supreme Court as Proposition of Law No. 2, *see supra,* and the Court determined that it was waived. *McGuire,* 80 Ohio St.3d at 394.[5]  The question becomes, then, whether this claim is procedurally defaulted.

In addressing Mr. McGuire's Ground 2, *supra*, this Court reviewed the law and standard for evaluating a procedural default defense.  That review is incorporated herein by reference.   Briefly, however, the Court notes that a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default and that absent cause a prejudice, the petitioner who fails to comply with a state's rules of procedure waives his right to federal habeas corpus review.  The Court also notes that it must ask whether: (1)  there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2)  whether the state courts actually enforce the state procedural sanction; and (3) whether the state procedural forfeiture is an "adequate and independent" state ground on which

---

[5]  Mr. McGuire did raise the issue in his state post-conviction relief petition as an underlying claim for an ineffective assistance of counsel claim.  Amended Return of Writ, Ex. 81 (Cause of Action XIII(B)).  Relying on *State v. Murnahan,* 63 Ohio St.3d 60 (1992), the trial court did not address the merits of that claim.  Amended Return of Writ, Ex. 92.  Mr. McGuire did not raise the issue on appeal of the denial of his post-conviction petition. *See State v. McGuire,* No. CA97-06-015, 1998 WL 191415 (Ohio App.12 Dist. April 20, 1998).

the state can rely to foreclose review of a federal constitutional claim.  If the Court answers these inquiries in the affirmative, then Mr. McGuire must demonstrate that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

In addition, in considering Mr. McGuire's Ground Two, the Court also reviewed the standard with respect to Ohio's doctrine of *res judicata* as it relates to procedural default.  That review is likewise incorporated herein by reference.

In his *habeas* petition, Mr. McGuire acknowledges that his appellate counsel did not raise this jury instruction issue on direct appeal.  This Court concludes that Mr. McGuire's claim the jury was not instructed in a manner that allowed them to take into consideration his history, character, and background, is procedurally defaulted.  First, as noted above, Ohio has a *res judicata* rule which essentially required that Mr. McGuire raise this jury instruction issue in his direct appeal. Second, the Ohio Supreme Court specifically found that Mr. McGuire had waived the issue.  Third, the Sixth Circuit has determined that Ohio's *res judicata* rule is an "adequate and independent" state ground.

Nevertheless, Mr. McGuire argues that he satisfies the "cause and prejudice" prong of the procedural default analysis because he has claimed that his appellate counsel was ineffective. However, for the reasons explained in addressing Ground 10,  *infra*, Mr. McGuire's ineffective assistance of appellate counsel claim fails on the merits.  Therefore, he is unable to establish "cause and prejudice" for the purpose of escaping the application of procedural default to this claim.

Mr. McGuire's Ground 5 should be overruled because the claim is procedurally defaulted.

## Ground 6

**The jury was misled about its role in the sentencing process by being led to believe that it was only recommending a sentence. This violates the Eighth Amendment.**

**State court opinion**

In his direct appeal to the Ohio Supreme Court, Mr McGuire's Proposition of Law Three reads:

> Proposition of Law Three: "Appellant McGuire's right to a reliable capital sentencing phase was undermined because the trial court improperly led the jury to believe that it was not responsible for its death penalty verdict in violation of the Eighth and Fourteenth Amendments to the United States Constitution."

*McGuire,* 80 Ohio St.3d at 406. The Ohio Supreme Court disposed of that Proposition as follows:

> Appellant has raised eighteen propositions of law for our consideration, which we have fully reviewed according to R.C. 2929.05(A). (See Appendix.) However, pursuant to *State v. Poindexter*, (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily reject, without discussing, the merits of a number of appellant's propositions of law, as they involve settled issues. (Propositions of Law Three, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen.)

*Id.* at 394.

In *Poindexter, supra,* the Ohio Supreme Court held that when it has considered and decided issues of law in capital cases and the issues are raised anew in a subsequent capital case, it is proper to summarily dispose of such issues in the subsequent case. 36 Ohio St.3d at 3. The *Poindexter* court continued:

> Appellant's first two propositions of law challenge the trial court's instruction to the jury that its recommendation of death would not be binding on the court, and that the final responsibility for the imposition of the death penalty rested with the court. Appellant cites *Caldwell v. Mississippi* (1985), 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231, for the proposition that such an instruction impermissibly reduces the jury's sense of responsibility and increases

40

the likelihood of a recommendation of death.

> We considered and rejected this argument in *State v. Buell* (1986), 22 Ohio St.3d 124, 143-44, 22 OBR 203, 219-220, 489 N.E.2d 795, 811-812; *State v. Williams* (1986), 23 Ohio St.3d 16, 21-22, 23 OBR 13, 18-19, 490 N.E.2d 906, 912; *State v. Rogers* (1986), 28 Ohio St.3d 427, 28 OBR 480, 504 N.E.2d 52; *State v. Steffen* (1987) 31 Ohio St.3d 111, 113-114, 31 OBR 273, 275, 509 N.E.2d 383, 387-388; and *State v. Thompson* (1987), 33 Ohio St.3d 1, 6, 514 N.E.2d 407, 413. We are not persuaded by appellant's arguments to change our position.

*Id.*

### Clearly established federal law

In *Mapes v. Coyle,* 171 F.3d 408 (6th Cir. 1999), the Sixth Circuit held:

> Pertinent to the first claim–the "recommendation" issue–the Supreme Court has recognized that there is a danger in leading a death-sentence jury to believe that the ultimate responsibility for a death sentence lies with appellate courts. *See, Caldwell v. Mississippi,* 472 U.S. 320, 332-33 ... (1985).  In *Caldwell*, the prosecutor told a death-jury that a death sentence would really be determined by the state supreme court.  *Id.* at 323....  This violated the defendant's rights under the Eighth Amendment to be protected from cruel and unusual punishment primarily because it allowed the jury to believe that it could make an incorrect determination without harming the defendant, and because appellate courts are ill-equipped to accurately review such aggravation-mitigation determinations. *Id.* at 330-32....

> However, in order to make out a *Caldwell* violation, a defendant must show that the prosecutor or trial judge improperly described the jury's role under state law in order to "water down" its responsibility. *Kordenbrock v. Scroggy,* 919 F.2d 1091, 1101 (6th Cir. 1990).  In *Kordenbrock,* the prosecutor told the jury that a death-sentence verdict would merely be a recommendation to the trial judge.  State law provided that "the judge shall give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating or aggravating circumstances ... exist and to recommend a sentence for the defendant.  Upon the findings of the jury, the judge shall fix a sentence within the limits prescribed by law." *Id.* (quoting Ky.Rev.Stat.Ann. §523.025(1)(b)).  This court found no constitutional violation because the prosecutor's characterization was

41

"technically ... correct[ ]." *Id.*

In this case, Ohio law provides:

> Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury ... shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to [one of various terms of imprisonment].....

> If the trial jury recommends that the offender be sentenced to life imprisonment with parole eligibility after serving twenty years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment, the court shall impose the sentence recommended by the jury upon the offender. It the trial jury recommends that the sentence of death be imposed upon the offender, the court shall [weigh independently the aggravating and mitigating factors, and impose the death penalty if the former outweigh the latter, and impose a life sentence otherwise.]

Ohio Rev.Code Ann. §2929.03(D)(2), Vol. I ...; *see Id.* at (D)(3).

Thus, while it is somewhat inaccurate to state that a sentencing jury "recommends" a life sentence when such a recommendation would be binding, we conclude that even if the trial judge's instruction was erroneous it could not have diminished the jury's sense of responsibility in *Caldwell* terms. The only plausible way that Mapes's jury could have been lulled into a diminished sense of responsibility is if it erroneously believed that a death verdict would only be a recommendation. However, that is an accurate statement of Ohio law. Further, one of the primary dangers identified in *Caldwell*–that the entity to which the jury ceded responsibility could not adequately exercise that responsibility–is absent here. In *Caldwell*, the state courts of appeals could not accurately assess the

aggravating and mitigating factors presented in a sentencing hearing. In this case, it was the trial judge presiding over the hearing who reviewed the jury's determination. There was no constitutional error.

*Id*. 414-15 .

### Analysis

In support of Ground 6, Mr. McGuire argues that the trial court's comments concerning the jury's recommendation of a sentence misled the jury in violation of *Caldwell*. Specifically, Mr. McGuire takes issue with the following comments the trial court made at the beginning of *voir dire*:

> Procedurally then, if you are selected as a juror in this case you may have to participate in the equivalent of two trials or two proceedings.
>
> The first proceeding would be to decide the guilt or innocence of the defendant of the crimes charged and of any specification alleged in the indictment.
>
> Depending on your actions on the first trial or proceeding, you might then be involved in a second proceeding. If this second proceeding takes place, you will have to made a recommendation to the Court on a sentence.
>
> One of the recommendations could be the death penalty.
>
> Finally, if you are required to make a recommendation and if that recommendation is death, before that sentence can be ordered, the Court must independently determine if the recommendation is supported with proof of evidence beyond a reasonable doubt.

Transcript of Proceedings, *Voir Dire*, at 68-69.

Mr. McGuire also takes issue with the fact that during *voir dire* the trial court asked individuals if he or she could recommend a death sentence if he or she found that the aggravating circumstances outweighed the mitigating factors. *Id.* at 239 (Mr. Michael); 254-55 (Ms. Bush); 266 (Mr. Mitchell); 280-81 (Mr. Brawley); 309 (Ms. Pheanis); 320 (Ms. Browning); 325 (Mr. Sink);

338-39 (Ms. Bingham); 344-45 (Ms. Neiberding); 374 (Ms. Keener); 377 (Ms. Coleman); 382-83 (Mr. Downey).[6]

> Finally, Mr. McGuire challenges the trial court's penalty phase instruction to the jury:
>
> I've used the word recommend many times and the attorneys have used it, and I want to make sure that you understand that you are not to construe that word to diminish your responsibility in this matter. It is a difficult task, and the fact that the word recommend is used, should not be considered by you to lessen your task.
>
> If you recommend a sentence of death, the Court is required to make its own independent examination to determine if the State proved beyond a reasonable doubt that the aggravating circumstance outweighs the mitigating factors.

Transcript of Proceedings, Jury Trial, Penalty Phase, p. 132.

The present matter is quite unlike the situation in *Caldwell* where the prosecutor urged the jury not to view itself as finally determining whether Mr. Caldwell would die because a death sentence would be reviewed for correctness by the state's supreme court. Here, the trial court did not make any such suggestion to the jury either during *voir dire* or during its penalty phase instructions.. Nor did the trial court here create the impression that an appellate court would be free to reverse a death sentence if it disagreed with the jury's conclusion that death was appropriate. Rather, the court made accurate statements about, and gave accurate instructions which reflected, Ohio law; that is, that a sentence of death would be a recommendation to the trial court and that the trial court is required to make its own independent examination to determine if the State proved beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors.

---

[6] Mr. McGuire waived his right to be present during the Court's individual examinations of the potential jurors during which the court inquired as to whether the potential juror could recommend a death sentence. Therefore, the trial court conducted those examinations in the presence of counsel only. *Id.* at 236-37. In other words, each potential juror was not subjected to repetitively hearing the same question about "recommending" a death sentence. Rather, each potential juror heard the question only once during his or her individual examination.

There is nothing in the trial court's *voir dire* examination or penalty phase instructions that offends either *Caldwell, supra* or *Mapes, supra.*

The Ohio Supreme Court's decision rejecting Mr. McGuire's claim that the trial court improperly led the jury to believe that it was not responsible for its death penalty verdict was not contrary to nor an unreasonable application of, clearly established federal law and therefore Mr. McGuire's Ground Six should be overruled.

### Ground 8

**The jury was not properly instructed on what aggravating factors [to consider] and may have considered improper factors because of the nature of the evidence permitted at the mitigation phase. This violates the Eighth and Fourteenth Amendments.**

Respondent argues that this Ground is procedurally defaulted. Mr. McGuire admits that he did not raise this issue on direct appeal. However, as he did in support of his Ground 5, Mr. McGuire argues that because he has alleged ineffective assistance of trial and appellate counsel, he is able to establish "cause and prejudice" on this claim.

### Analysis

Mr. McGuire did not raise this issue in his direct appeal, *see McGuire,* 1996 W.L. 174609 at *4; *see also,* Amended Return of Writ, Ex. 71, nor in his appeal to the Ohio Supreme Court.  *See, McGuire,* 80 Ohio St.3d at 406-08; *see also*, Amended Return of Writ, Ex. 75.[7] The question, of course, is whether this claim is procedurally defaulted.

The Court incorporates herein the law as it relates to a procedural default analysis as stated within the Court's analysis of Ground 2, *supra.*  Briefly, however, the Court notes that a

---

[7] Similarly, Mr. McGuire did not raise the issue in his state post-conviction relief petition.  Amended Return of Writ, Ex.81; Ex. 82; *see also, McGuire,* 1998 WL 191415 at *1-7.

petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default and that absent cause a prejudice, the petitioner who fails to comply with a state's rules of procedure waives his right to federal habeas corpus review.  The Court also notes that it must ask whether: (1)  there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2)  whether the state courts actually enforce the state procedural sanction; and (3) whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.  If the Court answers these inquiries in the affirmative, then Mr. McGuire must demonstrate that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

This Court concludes that Mr. McGuire's claim that the jury was not properly instructed on what aggravating factors to consider and therefore it may have considered improper factors because of the nature of the evidence permitted at the mitigation phase is procedurally defaulted.  First, as noted above in the discussion of Mr. McGuire's Ground 2 and Ground 5, Ohio has a *res judicata* rule which required Mr. McGuire to raise this issue in his direct appeal and the Sixth Circuit has determined that the rule is an "adequate and independent" state ground.

As he did in support of his Ground 5, Mr. McGuire argues that is able to avoid application of the principle of procedural default because he satisfies the "cause and prejudice" requirement of the analysis on the basis that his appellate counsel was ineffective.  However, for the reasons explained in the Court's analysis of Ground 10, *infra*, Mr. McGuire's ineffective assistance of appellate counsel claim fails on the merits.  Therefore, he is unable to establish "cause and prejudice" for the purpose of avoiding application of procedural default to this claim.

46

Mr. McGuire's Ground 8 should be overruled on the basis the claim is procedurally defaulted.

## Ground 9

**The court made numerous improper evidentiary rulings: the government was permitted to introduce gruesome and cumulative photographs, improper opinion testimony, improper rebuttal testimony; and Mr. McGuire was not permitted to present evidence that someone else may have committed this offense, and finally the jury was permitted to have an audio tape during its deliberations. These cumulatively violate the Fifth, Sixth, Eighth and Fourteenth Amendments.**

Mr. McGuire alleges that the cumulative effect of the following evidentiary errors deprived him of fair and reliable guilt and sentencing phases:

a. Admission of cumulative and gruesome photographs denied Mr. McGuire's rights to a fair trial and sentencing determination;

b. The admission of opinion evidence given by the government's witness was improper;

c. Improper rebuttal testimony;

d. Failure to allow Mr. McGuire to present his defense;

e. The trial court abused its discretion by admitting into evidence and permitting the jury to listen to the tape during deliberations;

f. The trial court erred when it failed to instruct the jury to move to a lesser verdict of life when the jury reported that it had consistently voted 11-1.

### State court opinion

In addressing these various alleged evidentiary errors, the Ohio Supreme Court said:

McGuire alleges in Proposition of Law Six that the state introduced gruesome and cumulative photographs of the victim's body that were irrelevant and prejudicial to appellant. In *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 402, 473 N.E.2d 768, 792, we

47

held that photographs of the body or crime scene were admissible if relevant and the danger of material prejudice to a defendant was outweighed by their probative value. Furthermore, the photographs must not be repetitive or cumulative. A trial court's decision to admit photographs of the victim's injuries will be upheld absent an abuse of discretion. *State v. Slagle* (1992), 65 Ohio St.3d 597, 602, 605 N.E.2d 916, 923.

In this case, none of the eleven photographs admitted was so gruesome that the danger of prejudice outweighed their probative value. The photographs were relevant in depicting the crime scene and illustrative of the coroner's autopsy report. Certain photographs which showed the incision in the victim's neck opened up during the autopsy and which showed a metal probe protruding from the severed artery were not misleading and were probative since they illustrated the manner in which the wound was inflicted. *State v. Murphy* (1992), 65 Ohio St.3d 554, 579, 605 N.E.2d 884, 904-905. Several of the photographs may have been repetitive. However, we find that any error in admitting repetitive photographs was harmless.

Appellant also alleges that it was error for the court to submit Detective Swihart's taped interview with McGuire to the jury during its deliberations. McGuire claims that the interview, which was played during trial, was overly emphasized when the court allowed the tape into the jury room.

However, there is no error in allowing the jury to view or hear for a second time an exhibit properly admitted into evidence. *State v. Loza* (1994), 71 Ohio St.3d 61, 79-80, 641 N.E.2d 1082, 1103; *State v. Clark* (1988), 38 Ohio St.3d 252, 257, 527 N.E.2d 844, 851. Sending properly admitted evidence into jury deliberations rests within the sound discretion of the trial judge. *Id.* In this case, the judge did not abuse his discretion in allowing the jury access to the taped interview. Therefore, appellant's sixth proposition of law is meritless.
...

Next, appellant argues that appellate counsel should have challenged the admissibility of Willie Reeves's testimony that "I guess [McGuire] was gonna make it look like someone else did it." However, McGuire failed to challenge it at trial. No prejudice exists, since appellate counsel's failure to challenge this single, relatively insignificant statement by Reeves does not undermine confidence in the fairness or reliability of the appeal.
...

48

> McGuire further contends that appellate counsel should have challenged the rebuttal testimony of Shirley Dinkins as irrelevant or inadmissible, apparently under Evid.R. 403(A) and 611(A). However, Evid. R. 401 broadly defines "relevance," and judges have broad discretion in admitting or excluding evidence, and controlling the order of interrogating witnesses.   We hold that the trial court committed no error.

*McGuire,* 80 Ohio St.3d 395-96; 400; 400-01.

### Clearly established federal law

As noted above, apart from circumstances giving rise to deprivation of a specific constitutional right, trial error will result in a constitutional violation only where it so infected the trial with unfairness as to make the resulting conviction or sentence a denial of due process. *Donnelly,* 416 U.S. at 643.  As also noted, only where the erroneous application of state law deprives a petitioner of a fundamental constitutional guarantee will a federal court inquire into the state court rulings, *Id.,* and state court rulings on the admission of evidence are not open to challenge in a federal habeas suit unless admission of the evidence undermines the fundamental fairness of the trial and thereby constitutes a violation of due process.  *Pulley, supra.* The Due Process Clause simply does not mandate that all government decisions comply with standards that assure perfect, error-free determinations.  *See Mackey,* 433 U.S. at 14.  However, cumulative error can render a trial unfair when any one of the elements accumulated to reach that conclusion should not in itself render the trial unfair.  *Lundy v. Campbell,* 888 F.2d 467 (6th Cir. 1989).

### Analysis

Mr. McGuire argues first that the admission of cumulative and gruesome photographs denied him his rights to a fair trial and sentencing determination.  Mr. McGuire's position is that grotesque and repetitive photographs unrelated to causation were admitted at his trial and that State's

Exhibits 7-11 were especially prejudicial.

The state introduced eleven (11) photographs which the trial judge admitted into evidence.  Six (6) of those photographs depict the crime scene, including Ms. Stewart's body, and five (5) were taken during the autopsy of Ms. Stewart's body.   Specifically, the six (6) crime scene photographs and what each depicts are as follows:

State's Ex. 1—the crime scene and the location of Ms. Stewart's body. Steven Noble testified that State's Ex. 1 reflects the crime scene as he and his brother discovered it. Testimony of Steven Noble, Transcript of Proceedings, Jury Trial at at 36-42.  Deputy Sheriff Swihart testified that State's Ex. 1 reflects how the crime scene appeared when he arrived at the scene.  Testimony of Larry Swihart, Transcript of Proceedings, Jury Trial, at 75-105.

State's Ex. 2—a grey coat found on the ground near the crime scene.  Deputy Swihart testified that State's Ex. 2 shows the grey coat which was found at the scene and its location before it was collected as evidence.  *Id.*

State's Ex. 3—Joy Stewart's legs.  Deputy Swihart testified that State's Ex. 3 depicts Ms. Stewart's legs, knees, and feet as they appeared at the crime scene.  *Id.*

State's Ex. 4—the top 2/3 of Joy Stewart's body at the crime scene showing that her glasses are at the top of her head.  Deputy Swihart testified that State's Ex. 4 shows Ms. Stewart's body from just above the knees to up past the top of her head as it appeared at the crime scene.  *Id.*

State's Ex. 5—the crime scene including Ms. Stewart's body and a blue and white shirt hanging in a tree.  Deputy Swihart testified that State's Ex. 5 is a photo of the scene including a blue and white stripped shirt in a tree and that it accurately depicts the scene as it

appeared when he arrived. *Id.*

State's Ex. 6—the crime scene with particular focus on Ms. Stewart's neck with a tape measure at the site of the neck wound. Deputy Swihart testified that, with the exception of the tape measure, State's Ex. 6 accurately shows what the scene looked like with he arrived. *Id.*

State's Ex. 7—the upper trunk, shoulder, and head areas of Ms. Stewart's body at the time of autopsy. David Smith, M.D., the forensic pathologist and deputy coroner with the Montgomery County Coroner's Office, testified that State's Ex. 7 is a photograph of Joy Stewart's body, the one which he examined on February 13, 1989. Testimony of David Smith, Transcript of Proceedings, Jury Trial at 128-86. Dr. Smith testified further that this exhibit shows the relationship of the injuries on Ms. Stewart's body that he discovered during his examination. *Id.* Dr. Smith used this photograph to describe in detail the stab wound on the left side of Ms. Stewart's neck, the damage caused to her anatomical structures, and to explain that Ms. Stewart was alive at the time the wound was inflicted. *Id.*

State's Ex. 8—the right side of the lower neck and right collarbone region of Ms. Stewart's body. Dr. Smith testified that State's Ex. 8 was taken during his examination and autopsy of Ms. Stewart. *Id.* He testified further that Ex. 8 reveals two (2) abrasions, one of which reveals a weave pattern of cloth which was impressed onto her skin probably from the clothing that Ms. Stewart was wearing. *Id.*

State's Ex. 9—a close up of two (2) stab wounds on the left side of Ms. Stewart's neck. Dr. Smith testified that State's Ex. 9 depicts the left side of Ms. Stewart's neck at the time he examined and autopsied her body. *Id.* Dr. Smith also testified that the upper, larger wound was the injury that caused the cutting across Ms. Stewart's major blood vessels. He also

testified that between the larger stab wound and the smaller wound, there is a cloth pattern which corresponds to the collar of the shirt Ms. Stewart was wearing. *Id.*

State's Ex. 10—a magnified view of the larger stab wound on the left side of Ms. Stewart's neck. Dr. Smith testified that State's Ex. 10 is a magnified view of the larger stab wound on the left side of Ms. Stewart's neck which was taken when he examined and autopsied Ms. Stewart's body. *Id.* Dr. Smith also testified that State's Ex. 10 shows which aspect of the neck wound is sharp and which aspect is dull. *Id.*

State's Ex. 11—the left side of Ms. Stewart's neck with a probe inserted into the larger stab wound. Dr. Smith testified that State's Ex. 11 was taken when he examined and autopsied Ms. Stewart's body. *Id.* He also testified that he inserted the probe from inside the chest going up through the jugular vein and out the stab wound to determine whether the vessel was completely severed. *Id.*

State's Exhibits 1 through 6 are photographs of the crime scene, none of which is particularly gruesome. In addition, State's Exhibits 2, 4, and 5 go to the issues of consent, force, and struggle and State's Ex. 6 goes to the issue of an intentional killing. Specifically, State's Ex. 2 indicates that Ms. Stewart was not wearing her coat on a February day in Ohio and goes to the issue of whether she would have voluntarily removed it before laying down on the ground. State's Ex. 4 shows that Ms. Stewart's glasses are at an odd angle at the top of her head which goes to the issue of a struggle between Ms. Stewart and her rapist/killer. State's Ex. 5, which depicts Ms. Stewart's blue and white stripped shirt hanging in a tree, similar to State's Ex. 2, goes to the issue of whether Ms. Stewart would have voluntarily removed her clothing in the woods on a February day in Ohio. Of course, the issues of consent, force, and struggle go to the very elements the state was required

52

to establish in support of the charge of rape.  Finally, State's Ex. 6 shows how the fatal wound appeared prior to Ms. Stewart's body being removed from the crime scene and cleaned before autopsy.  The presence of this fatal wound goes to the element of a purposeful killing, an element the State was required to prove.

State's Exhibits 7 through 11 were taken during Dr. Smith's autopsy of Ms. Stewart and were illustrative of Dr. Smith's testimony.  *See* Testimony of David Smith, Transcript of Proceedings, Jury Trial at 128-86.  In addition, State's Ex. 8, which reveals a right-side abrasion with a weave pattern of cloth which was impressed into Ms. Stewart's skin, and State's Ex. 9 which reveals a cloth pattern impressed into Ms. Stewart's skin on the left side between the two stab wounds, go to the issue of force, an element of the State's case.  State's Ex. 10 which is a magnified view of the larger stab wound on the left side of Ms. Stewart's neck, goes to the issue of the kind of weapon which was used to inflict the wound as well as its description.  Finally, all of State's Ex. 7 through 11, and particularly 11, not only go to the issue of the manner in which death was inflicted but also to the issue of the purpose to inflict death.

The eleven (11) photographs which the State introduced and which the trial court admitted into evidence did not prejudice Mr. McGuire nor were his due process rights violated by going beyond what was necessary to prove critical elements of the State's case.

Mr. McGuire argues next that it was error for the trial court to admit into evidence the opinion testimony of Willie Reeves, one of the government's witnesses.

Willie Reeves was an inmate at the Madison Correctional Institute during the period of time that Mr. McGuire was incarcerated at that facility.  Transcript of Proceedings, Jury Trial at at 734-70.  During his testimony, the following exchange took place between Mr. Reeves and the

prosecutor:

> Q.  Did Dennis McGuire confide in you that he made any mistakes in this case?
> A.  Just that he told the police where the knife was.
> Q.  He considered that a mistake?
> A.  He–he said it was.   I guess he was gonna try to make it look like someone else did it.

*Id.* at 741.

Mr. McGuire's position is that Mr. Reeves' statement about Mr. McGuire allegedly framing someone else cannot be rationally inferred from Mr. McGuire's allegedly telling Mr. Reeves that it was a mistake to tell the police about the knife.  As noted by the Ohio Supreme Court, Mr. McGuire's trial counsel failed to object to that testimony.[8]  *See, Id.* at 741.  At this juncture, therefore, this Court must consider the issue of procedural default as it relates to Mr. McGuire's claim of error as to the admission of Mr. Reeves' testimony.

The Court's previous review and analysis of the law applicable to a procedural default analysis is incorporated herein by reference.  *See* Ground 2, *supra*.

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Williams,* 51 Ohio St. 2d 112, 364 N.E. 2d 1364 (1977); *see also, State v. Mason*, 82 Ohio St. 3d 144, ___, 694 N.E.2d 932, 951 (1998) — is an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003), citing  *Hinkle v. Randle*, 271 F. 3d 239, 244 (6th Cir. 2001);  *Scott v. Mitchell*, 209 F. 3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107,

---

[8]  Mr. McGuire did not raise this issue on direct appeal nor in his post-conviction proceedings.  *See,* Amended Return of Writ, Ex. 81.

124-29 (1982); *see also, Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000).

With these principles in mind, this Court concludes that Mr. McGuire's claim with respect to the admission of Mr. Reeves' testimony is procedurally defaulted and therefore it is barred from federal habeas review.  First, Ohio has a contemporaneous objection rule and Mr.  McGuire's counsel failed to contemporaneously object to Mr. Woodson's corrected testimony nor to any other parts of his testimony.  Second, the Ohio Supreme Court specifically relied on the contemporaneous objection rule in addressing Mr. McGuire's claim as to Mr.  Reeves' testimony.  Third, the Sixth Circuit has determined that Ohio's contemporaneous objection rule is an "adequate and independent" state ground.

Turning to the "cause and prejudice" prong of a procedural default analysis, even assuming *arguendo*  that  Mr. McGuire could successfully argue "cause", any argument that he satisfies the "prejudice" requirement would fail.

When Mr. Reeves' testimony is reviewed in its entirety, it is clear that he testified that Mr. McGuire indeed told him that blaming someone else for Ms. Stewart's rape and murder was what he (Mr. McGuire) was going to do.  *See, Id.* at 741-42.  Specifically, Mr. Reeves testified that Mr. McGuire said he had to get some people to testify for him and that he was going to try to make it look like he was somewhere else when he, in fact, wasn't.  *Id.*  Mr. Reeves also testified that Mr. McGuire told him that after he learned about Kenny Stewart's suicide, he was able to sleep at night because he was also going to try to use Mr. Stewart as his defense.  *Id.* at 742.   In view of the entirety of Mr. Reeves' testimony, as well as the other evidence against Mr. McGuire, even assuming that the trial court erroneously admitted Mr. Reeves' initial testimony about Mr. McGuire allegedly framing someone else, that testimony which Mr. McGuire now challenges did not

55

prejudice Mr. McGuire nor his defense.  Mr. McGuire's claim with respect to Mr. Reeves' testimony is without merit.

Mr. McGuire's next claim is that the trial court abused its discretion when it permitted the state, over defense counsel's objection, to call rebuttal witness Shirley Dinkins.  Mr. McGuire's position is that Ms. Dinkins' testimony did not rebut any evidence he offered in his defense and that it was merely used to bolster Mr. Reeves' credibility.

Again, Mr. McGuire's trial counsel did not object to Ms. Dinkins testifying when the state called her in its rebuttal case.[9]  *See, Id.* at 930-37.  As noted by the Ohio Supreme Court, Mr. McGuire's appellate counsel failed to raise the issue on appeal.[10]

The procedural default analysis which this Court applied to Mr. Reeves' testimony, *supra,* applies to Mr. McGuire's claim with respect to Ms. Dinkins' testimony; that is, Ohio has a contemporaneous objection rule which is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  Accordingly, absent a showing of cause and prejudice, Mr. McGuire's claim as to Ms. Dinkins' testimony is not cognizable in federal habeas corpus proceedings on the ground that it is procedurally defaulted.

Again, even assuming that Mr. McGuire is able to establish "cause", any argument that he was prejudiced by Ms. Dinkins' testimony would fail.  Ms. Dinkins testified that she is Mr. Reeves' mother.  *Id.*  The thrust of Ms. Dinkins' testimony was that after she received an initial telephone call from her son, she obtained the telephone number for the Preble County Sheriff's

---

[9]  Mr. McGuire's trial counsel lodged some objections to Ms. Dinkins' testimony on the basis of hearsay. *See, Id.* at 931, 934.  However, he did not object to her testifying on any other basis.

[10]  Nor did Mr. McGuire raise this issue in his post-conviction proceedings.  *See,* Amended Return of Writ, Ex. 81.

office which she gave to Mr. Reeves during a subsequent telephone conversation with him.  *Id.*
While it may be arguable that Ms. Dinkins' testimony was irrelevant, it was not prejudicial to Mr.
McGuire.  In view of the evidence which the state introduced in support of Mr. McGuire's guilt,
including the forensic evidence,  the testimony of Investigator Lindloff, Mr. Stapleton, Mr. Reeves,
and Mr. McGuire's own statements to the investigating officials, *see,* Ground 11, *infra*, a reasonable
jury would have had a basis for finding Mr. McGuire guilty in the absence of Ms. Dinkins'
testimony.  Ms. Dinkins' testimony which Mr. McGuire now challenges did not prejudice Mr.
McGuire nor his defense and his claim with respect to that testimony is meritless.

   Next, Mr. McGuire argues that it was error to not permit him to introduce evidence
that someone else may have committed the offense.  Specifically, Mr. McGuire alleges that it was
error for the trial court to not permit him to introduce testimony on the issue of Kenny Stewart's
concerns over Joy Stewart's drug use.  Mr. McGuire also alleges that it was error for the trial court
to not allow him to introduce evidence indicating that Kenny Stewart could have been the source
of the semen because he and Ms. Stewart had engaged in anal intercourse a few days before Ms.
Stewart's rape and murder.

   Mr. McGuire first argues that it was error for the trial court to fail to allow him to
introduce evidence that Kenny Stewart allegedly expressed concern about Joy Stewart's drug use.

   At this juncture, this Court notes that Mr. McGuire never raised this particular claim
anywhere in his direct appeal or in his collateral proceedings in state court.  Therefore, it appears
that the claim is procedurally defaulted.  However, the Respondent does not advance the affirmative
defense of procedural default and the Court declines to raise the procedural default *sua sponte*.
Although Mr. McGuire's failure to raise this issue in any of the state court proceedings results in

the issue being unexhausted, the AEDPA provides that a habeas court may address an unexhausted claim that is plainly meritless.  *Rhines v. Weber,* ___ U.S. ___, 125 S.Ct. 1528, 1535 (2005), *citing*, 28 U.S.C. §2254(b)(2).  The Court turns its attention to the merits of Mr. McGuire's claim.

Joseph Goodwin was a part-time West Alexander police officer as well as a Preble County deputy sheriff.  Testimony of Joseph Goodwin, Transcript of Proceedings, Jury Trial at 106-28.  Mr. McGuire's counsel asked Mr. Goodwin if, at the time Kenny Stewart came to the West Alexander police station to report his wife Joy as missing, he expressed concern about Joy's drug use.  *Id.*  The prosecutor objected to the question as calling for hearsay and after a lengthy sidebar conference, the trial court sustained the objection.  *Id.*  During the sidebar, Mr. McGuire's counsel admitted that the question was asking for hearsay but he argued that it was "anticipatory of hearsay" expected to be introduced by the State.  *Id.*  The trial judge rejected that argument and held that both Mr. McGuire and the State were subject to the Rules of Evidence and that he would not admit hearsay.  *Id.*  Additionally, the trial judge rejected Mr. McGuire's argument that the statement qualified as an exception to the hearsay rule as a statement against interest as it was not against Kenny Stewart's pecuniary or proprietary interest to say that he was concerned about his wife's drug use.

Mr. McGuire now argues that Mr. Goodwin's proposed testimony was not hearsay because it was not being offered to show that Joy Stewart was using drugs.  Mr. McGuire's position is that the testimony was being offered to establish Kenny Stewart's state of mind at the time he filed the missing person's report.  Mr. McGuire essentially argues that the testimony was offered to show that Joy Stewart used drugs, that Kenny Stewart's disapproved of her drug use, and that it therefore went to the issue of whether Kenny Stewart was a suspect in Joy's murder.

Contrary to Mr. McGuire's current argument, as noted above, his trial counsel agreed during the sidebar conference that Mr. Goodwin's testimony was indeed hearsay. The trial judge properly rejected counsel's "anticipatory of hearsay"argument. This Court is not aware of, nor did its exhaustive research locate, any recognized "anticipatory of hearsay" doctrine which would have excepted Mr. Goodwin's testimony from the hearsay rule. In addition, Mr. McGuire does not argue, nor does this Court understand how, Kenny Stewart's expressed concern about his wife Joy's drug use was against his pecuniary or proprietary interest.

Nevertheless, even assuming that the trial judge erred by not allowing Mr. Goodwin to testify that Kenny Stewart expressed concern about Ms. Stewart's drug use, the error was harmless. First, there was evidence in the record that Kenny Stewart was concerned about Ms. Stewart smoking because she was pregnant. Deposition of Juanita Deaton, Oct. 10, 1994, p. 8 (read into the record, Transcript of Proceedings, Jury Trial pp 312-13). In addition, there was other evidence in the record about Ms. Stewart's marijuana use. Testimony of Jerry Richardson, Transcript of Proceedings, Jury Trial, p. 603-25; *see also* Testimony of Willie Reeves, *Id.* at 734-70. Further, as noted above, while Mr. McGuire attempted to implicate someone else in Joy Stewart's rape and murder, it was always Jerry Richardson he tried to implicate and never Kenny Stewart. *See, e.g.*, Testimony of Shawn Baird, Transcript of Proceedings, Jury Trial, at 581-92; Testimony of Joseph Goodwin, *Id.* at 106-28; Testimony of David Lindloff, *Id.* at 332-73; Testimony of Jack Stapleton, *Id.* at 570-81. Finally, in view of the evidence which the state introduced in support of Mr. McGuire's guilt, including the forensic evidence, the testimony of Investigator Lindloff, Mr. Stapleton, Mr. Reeves, and Mr. McGuire's own statements to the investigating officials, *see,* Ground 11, *infra*, a reasonable jury would have had a basis for finding Mr. McGuire guilty even if

59

faced with Kenny Stewart's statement about his concern over Ms. Stewart's drug use. Mr. McGuire's claim related to testimony about Kenny Stewart's concern about Joy Stewart's drug use is without merit.

The Court turns to Mr. McGuire's argument that the trial court erred by failing to allow him to introduce evidence indicating that Kenny Stewart could have been the source of the semen. For the same reasons the Court gave in addressing Ground Three, *supra,* Mr. McGuire's current claim that it was error to not permit him to introduce evidence indicating that Kenny Stewart could have been the source of the semen because he and Ms. Stewart had engaged in anal intercourse a few days before Ms. Stewart's rape and murder fails here as well.

Mr. McGuire argues next that the trial court abused its discretion by admitting into evidence the audiotape of the interview Deputy Swihart conducted with him and then permitting the jury to take the tape into deliberations. Mr. McGuire's position is that admitting the audiotape and allowing the jury to listen to it during deliberations unduly emphasized that portion of the testimony to the exclusion of everything else that the jurors heard during the trial.

Deputy Swihart testified that at Mr. McGuire's request, he met with Mr. McGuire on December 22, 1989. Testimony of Larry Swihart, Transcript of Proceedings, Jury Trial, at 376-98. Deputy Swihart also testified that after Mr. McGuire took him and David Lindloff to a barn and showed them a knife hidden there, he (Deputy Swihart) interviewed Mr. McGuire and made an audiotape of that interview. *Id.* During the trial, Deputy Swihart testified about the details of that taped interview. *Id.* In addition, the trial court allowed the state to play the audiotape. *Id.* Subsequently, over the objections of Mr. McGuire's counsel, the trial court admitted into evidence State's Ex. 28 which is the audiotape of the interview. Transcript of Proceedings, Jury Trial, at 781-

83.[11]

The audiotaped statement which Mr. McGuire gave to Deputy Swihart, and about which Deputy Swihart testified, is certainly not a confession by Mr. McGuire that he raped and murdered Joy Stewart. Rather, in that statement Mr. Mr. McGuire alleges that Jerry Richardson told him that he (Richardson) raped and murdered Joy Stewart. Mr. McGuire also alleges in the statement that he was with Jerry Richardson when he (Richardson) hid a knife in a barn on the Conley property. The audiotape is clear, the questions which Deputy Swihart asked Mr. McGuire in reaction to Mr. McGuire's statements are not repetitive, nor do they focus on any particular area of Mr. McGuire's statement. The audiotaped statement reveals how much detail about Joy Stewart's rape and murder Mr. McGuire was able to give to Deputy Swihart. Deputy Swihart testified as to all of those facts and the audiotape was played in open court. The audiotape itself is, of course, the best evidence of the statement Mr. McGuire gave to Deputy Swihart. It is common practice to send exhibits admitted into evidence into the jury room. The trial court did not abuse its discretion by doing so here.

Even assuming that the trial court did err by allowing the jury to take the audiotape of Mr. McGuire's statement to Deputy Swihart into the jury room, any such error was not prejudicial to Mr. McGuire. Specifically, in light of all of the other evidence which the state introduced in support of Mr. McGuire's guilt, including the forensic evidence, the testimony of Investigator Lindloff, Mr. Stapleton, Mr. Reeves, and Mr. McGuire's own statements to the investigating officials, about which the jury heard by way of Deputy Swihart's testimony, as well as the audiotape which was played in open court, a reasonable jury would have had a basis for finding Mr. McGuire

---

[11] The trial court did not, however, admit into evidence State's Ex. 29 which is the written transcript of the audiotape. *Id.*

guilty in the absence of having access to the audiotape during deliberations.

The Ohio Supreme Court's decision on Mr.McGuire's claim that the trial court made

numerous improper evidentiary rulings is not contrary to nor an unreasonable application of clearly

established federal law and therefore Mr. McGuire's Ground Nine should be overruled.

### Ground Ten

**Mr. McGuire's intermediate-appellate counsel's conduct of the case fell below the standard of care.  This violates the Sixth, Eighth, and Fourteenth Amendments.**

Mr. McGuire alleges that intermediate-appellate counsel were prejudicially deficient

in their representation in the following ways:

1.  Counsel failed to challenge the constitutionality of Ohio's death penalty statute except for infirmities in Ohio's system of proportionality review.  Appellate counsel were deficient because trial counsel raised this issue by pre-trial motion.  Appellant was prejudiced because appellate counsel may have abandoned a valid federal claim.  *See Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992).

2.  Counsel were prejudicially deficient because they failed to raise as error, defective jury instructions on "purpose".  The jury instruction on purpose improperly incorporated "the gist of the offense" definition into this specific intent offense.  The "gist of the offense[ "] language is for strict liability offenses.  *See* OJI §409.01.  The jury instruction on purpose also created a conclusive presumption on the mens rea element of the offense because it instructed the jury that Appellant's purpose to kill "is" presumed from the predicate facts of the offense.  *See Sandstrom v. Montana,* 422 U.S. 510 (1979).

3.  Appellate counsel failed to challenge the trial court's definition of reasonable doubt.  The court's definition of reasonable doubt allowed the jury to convict on a clear and convincing standard of proof below the requirements of the Due Process Claus.  *See Cage v. Louisiana,* 498 U.S. 39 (1990).

4.  Appellate counsel failed to argue as a constitutional error, the trial court's truncated instruction on mitigating factors.  The truncated instruction precluded the jury from considering Appellant's history

character and background, the nature and circumstances of the offense and nonstatutory mitigation in violation of *Lockett v. Ohio*, 438 U.S. 586 (1978).

5. Appellate counsel neglected to raise as error the improper death qualifying procedures of the trial court and the State. *See Witherspoon v. Illinois*, 391 U.S. 510 (1968).

6. Appellate counsel failed to argue as error that Appellant's due process, liberty interest in Ohio Rev. Code §2945.25(C) was infringed when the court excluded prospective jurors under a less exacting standard.

7. Appellate counsel did not assert claims of trial counsel's prejudicially deficient errors and omissions in violation of *Strickland*, 466 U.S. 668.

8. Despite trial counsel's Ohio Crim. R. 29 Motion to Acquit, appellate counsel neglected to argue as error the insufficient quantum of evidence used to convict in violation of the Due Process Clause. *Jackson v. Virginia*, 443 U.S. 307 (1979).

9. Appellate counsel may also have abandoned a federal constitutional claim when they failed to argue that the Ohio Rev. Code §2929.04(A)(7) rape specification duplicates and fails to narrow the substantive offense under Ohio Rec. Code §2903.01(B)(rape). *See Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992); *Lowenfield v. Phelps*, 484 U.S. 231 (1988).

10. Appellate counsel neglected to raise as error irrelevant and prejudicial opinion testimony by a lay witness, Willie Reeves, as to Appellant's motives. Moreover, counsel did not raise as error the improper use of rebuttal testimony by the State when it offered Shirley Dinkins' testimony on rebuttal to bolster Willie Reeves' credibility.

11. Appellate counsel neglected to raise the failure of trial counsel to request that the judge instruct the jury to move from a sentence of death to one of the life sentences when the jury informed him that they were consistently voting 11-1.

12. Appellate counsel also neglected to raise the failure of trial counsel to challenge for cause a juror who was related to a significant government witness.

**State court opinion**

The Ohio Supreme Court rejected Mr. McGuire's claims of ineffective assistance of

appellate counsel saying:

> In his eighth proposition of law, McGuire contends that his counsel
> in the court of appeals rendered ineffective assistance.  Performance
> by appellate counsel will not be deemed ineffective unless that
> performance falls below an objective standard of reasonable
> representation and prejudice arises from counsel's performance.
> *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373,
> paragraph two of the syllabus.
>
> Appellant first raises counsel's failure to challenge the
> constitutionality of Ohio's death penalty statute.  McGuire
> acknowledges that this court has repeatedly rejected attacks on the
> death penalty statute, but argues that appellate counsel should have
> preserved the issue for federal habeas review.  McGuire cites a case
> from the Seventh Circuit on preserving issues for habeas review.
> *Freeman v. Lane*(C.A. 7, 1992), 962 F.2d 1252.  However, the same
> court has also stated that a "failure to raise what appeared [at the
> time] to be a losing issue" is not deficient.  *Lilly v. Gilmore* (C.A. 7,
> 1993), 988 F.2d 783, 788.
>
> Next, McGuire argues that appellate counsel should have assigned as
> error the trial court's instructions on purpose, reasonable doubt, and
> two issues relating to the death-qualification of the venire.  But each
> of these issues was waived at trial and we find no plain error.
>
> McGuire also complains that appellate counsel did not assign as error
> the trial court's failure to instruct the jury in mitigation on the nature
> and circumstances of the offense; the history, character, and
> background of the offender and any other relevant factors.  The court
> erred in not giving this instruction.  The court did, however, give a
> list of specific factors for the jury to consider under R.C.
> 2929.04(B)(7).  The only particular factor McGuire now claims that
> the jury could not consider under this list is McGuire's history of
> marijuana use.  Under the circumstances of this case, reasonable
> appellate counsel could have decided that a history of marijuana use
> was of such little mitigation that the error in instructing the jury was
> harmless.
>
> McGuire argues that appellate counsel should have raised the

ineffectiveness of trial counsel as set forth in McGuire's seventh proposition of law. McGuire first asserts that trial counsel failed to adequately *voir dire* potential jurors. Specifically, he complains that counsel did not examine them sufficiently to determine whether they were capable of considering all the mitigating factors. However, trial counsel is in a better position than is a reviewing court to decide how deeply to probe the views of a prospective juror. *Bradley*, 42 Ohio St.3d at 143-144, 538 N.E.2d at 380-381. Furthermore, trial counsel did ask the veniremen whether they could consider mitigating circumstances, as opposed to automatically imposing the death penalty, and counsel could reasonably decide that it was unnecessary to ask prospective jurors whether they would find specific factors to be mitigating. *Cf. State v. Wilson* (1996), 74 Ohio St.3d 381, 385-387, 659 N.E.2d 292, 300-301. Since trial counsel were not deficient, McGuire's appellate counsel correctly decided to forgo raising this issue.

Additionally, McGuire asserts that trial counsel were ineffective, since they failed to object to the reasonable doubt and purpose instructions at trial. However, a reasonable attorney would have had no basis to object to the instruction on reasonable doubt. *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339, 352-352. As for the purpose instruction, "counsel could reasonably have thought the trial court's strong instructions on specific intent to kill were sufficient to protect their client." *Id.* at 49, 630 N.E.2d at 350. Since McGuire failed to show a reasonable probability that but for counsel's failure to object, the trial would have been different, appellate counsel were justified in not raising that issue.

Appellant argues that appellate counsel should have raised the fact that trial counsel failed to seek before trial the merger of the kidnapping and rape charges. However, R.C. 2941.25(A) states. "Where the same conduct by defendant can be construe to constitute two of more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Allied offenses of similar import do not merge until sentencing, since a conviction consists of verdict and sentence. *See State v. Osborne* (1976), 49 Ohio St.2d 135, 144, 3 O.O.3d 79, 83-84, 359 N.E.2d 78, 85, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1155; *State v. Waddy* (1992), 63 Ohio St.3d 424, 447, 588 N.E.2d 819, 836. Therefore, reasonable competent trial counsel would not have sought the merger of allied offenses before trial, and appellate counsel correctly ignored this issue.

65

McGuire also claims that appellate counsel were ineffective for not raising a number of alleged penalty-phase errors made by trial counsel.  First, he claims "inadequate preparation and presentation of mitigation evidence, "because counsel should have hired a "mitigation specialist" to gather mitigating evidence.  However, he cites no authority that this is a requirement of effective assistance, and we hold that it is not.  He further complains that the trial counsel should have called more that [*sic*] just the two members of McGuire's family to testify in the penalty phase.  But the record does not show that this resulted from inadequate investigation or incompetent deciding.  In addition, McGuire claims that Dr. Kuehnl, the defense psychologist who testified on his behalf, was inadequately prepared and should have performed routine tests to determine whether McGuire was suffering a mental disorder.  McGuire appears to blame defense counsel for this, but the record provides no basis to do so. Kuehnl may have decided that such tests were unnecessary.  If so, it seems reasonable that counsel would defer to the psychologist's professional judgment.  Given the difficulty of proving ineffective assistance of trial counsel and the weakness of appellant's claims, McGuire's appellate counsel were not deficient in failing to raise the issue of ineffective trial counsel.

Appellant contends that trial counsel failed to effectively argue residual doubt.  This is based on the fact the counsel did not attempt to admit a statement made by Joy's husband Kenny that he had anal intercourse with Joy three or four days before the murder.  Appellant wanted this statement admitted to demonstrate that Kenny was the source of the semen found on Joy's body at the time of the murder. This statement was correctly deemed inadmissible hearsay and was not admitted at trial.   McGuire argues, however, that even if this statement was inadmissible in the guilt phase, it was admissible in the penalty phase because there, "the Rules of Evidence do not strictly apply."  *State v. Landrum,* (1990), 53 Ohio St.3d 107, 115, 559 N.E.2d 710, 720.

However, Kenny's statement was not strong evidence in McGuire's favor.  The statement that Kenny had consensual sex three to four days before the murder was not against his interest, as was the case in *Landrum,* where the statement was deemed admissible. No physical or other evidence corroborated the fact that Kenny was the source of the semen found on Joy's body, unless there were two assailants.   Kenny was at work at the time of the murder, and McGuire himself accused Jerry Richardson of the murder, not Kenny. As a result, McGuire has failed to show prejudice.   His counsel's

failure to proffer the statement in the penalty phase does not undermine confidence in the outcome.  For the same reasons, such facts discount McGuire's argument in Proposition of Law One that the exclusion of Kenny Stewart's statement denied appellant due process under the United States Supreme Court's decision in *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297.  *Chambers* held that the hearsay rule should not be mechanistically applied, and an excessively strict application of the hearsay rule that excludes highly reliable evidence may deny an accused due process.   However, unlike *Chambers,* these facts indicate that the excluded hearsay statement in this case is not highly reliable evidence.   Accordingly, Proposition of Law One, which argues that the evidence was wrongly excluded at the guilt phase, is also overruled.

McGuire argues that appellate counsel should have argued the legal insufficiency of the evidence.  Having found above that the state introduced sufficient evidence as a matter of law to support McGuire's conviction, we hold that appellate counsel's failure to argue this issue did not prejudice McGuire.

McGuire contends that appellate counsel should have argued that the R.C. 2929.04(A)(7) felony-murder specification "duplicates and fails to narrow" the offense of felony-murder under R.C. 2903.01(B). Ohio precedent is clearly against McGuire, so he again argues that appellate counsel may have abandoned a federal constitutional claim. Our repeated holdings on this issue obviously mean that we believe the claim should fail in federal court too.  There is no need to preserve futile claims.

Next, appellant argues that appellate counsel should have challenged the admissibility of Willie Reeve's testimony that "I guess [McGuire] was gonna make it look like someone else did it."  However, McGuire failed to challenge it at trial.  No prejudice exists since appellate counsel's failure to  challenge this single, relatively insignificant statement by Reeves does not undermine confidence in the fairness or reliability of the appeal.

McGuire further contends that appellate counsel should have challenged the rebuttal testimony of Shirley Dinkins as irrelevant or inadmissible, apparently under Evid.R. 403(A) and 611(a). However, Evid R. 401 broadly defines "relevance", and judges have broad discretion in admitting or excluding evidence, and controlling the order of interrogating witnesses.  We hold that the trial court

committed no error.

Finally, McGuire complains that his appellate counsel inadequately raised three issues.  In the court of appeals, the eleventh assignment of error consisted of twenty-one alleged trial errors, supported only by citation to the record.  Appellate counsel did not explain why the alleged errors were errors or how they had prejudiced McGuire.  The assignment of error alleged that taken together, all of the errors denied appellant a fair trial.  Pursuant to App.R. 12(A)(2), the court of appeals refused to address fourteen of these issues.

McGuire now singles out three of those fourteen issues and argues that appellate counsel should have fully briefed them.  He contends once more that appellate counsel "may have abandoned valid federal constitutional claims."  Again, we hold that there was no need to preserve futile claims.

McGuire has not shown that appellate counsel rendered ineffective assistance with respect to any of these issues by showing both deficient performance and prejudice.  Accordingly, McGuire's eighth proposition of law is overruled.

*McGuire,* 80 Ohio St.3d at 397-401.

### **Clearly established federal law**

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court.  *Evitts v. Lucey,* 469 U.S. 387, 394 (1985)(citation omitted).  Counsel must be appointed on appeal of right for indigent criminal defendants.  *See Douglas v. California,* 372 U.S. 353 (1963).

Counsel need not advance every argument, regardless of merit, urged by the appellant.  *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983).  Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made.  *See Smith v. Murray,* 477 U.S. 527 (1986).  It is the job of appellate counsel to provide effective advocacy and in the process weed out the weaker claims on appeal.  *Id.* at 536 (citation omitted).  Indeed, experienced

advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most, on a few key issues. *Jones, supra.* Such "winnowing out", however, must be done with the utmost conscientiousness when a person's life is at stake. *Jamison v. Collins,* 100 F.Supp.2d 647, 734 (S.D.Ohio 2000), *aff'd,* 291 F.3d 380 (6th Cir. 2002).

In considering an ineffective assistance of appellate counsel claim, the *habeas* court ought to take into account counsel's experience as well as whether: (1) the omitted issues were "significant and obvious"; (2) there was arguably contrary authority on the omitted issues; (3) the omitted issues were clearly stronger than those presented; (4) the omitted issues were objected to at trial; (5) the trial court's rulings were subject to deference on appeal; (6) appellate counsel testified in a collateral proceeding as to his appeal strategy and, if so, whether the justifications are reasonable; (7) the petitioner and appellate counsel met to go over possible issues; (8) there is evidence that counsel reviewed all the facts; (9) the omitted issues were addressed in other assignments of error; and (10) the decision to omit an issue was an unreasonable one which only an incompetent attorney would adopt. *Mapes v. Cole,* 171 F.3d 408, 427-28 (6th Cir. 1999).

### Analysis

In his first sub-claim, Mr. McGuire argues that his appellate counsel were constitutionally ineffective because they did not raise the constitutionality of Ohio's death sentence. However, as this Court has determined with respect to Mr. McGuire's Ground 21, *infra,* since Ohio reinstituted the death penalty in 1974, both the Ohio Supreme Court and the United States Supreme Court have rejected each and every challenge to Ohio's death penalty scheme. Failing to raise a meritless claim cannot be considered constitutionally ineffective assistance of counsel.

69

Mr. McGuire argues in his second sub-claim that his appellate counsel were ineffective because they failed to raise as error defective jury instructions on "purpose".  In addressing the merits of Mr. McGuire's Ground 17, *infra*, this Court essentially notes that Mr. McGuire's claim on this issue would not likely succeed under Ohio law.  In addition, the Court has determined  that Mr. McGuire's claim on this issue as it relates to his *habeas* petition is without merit.  Mr. McGuire's appellate counsel were not ineffective for failing to raise this issue.

In his third sub-claim, Mr. McGuire argues that appellate counsel were ineffective for challenging the trial court's definition of reasonable doubt.  For the reasons given with respect to Mr. McGuire's second sub-claim, *supra,* as well as those given with respect to his Ground 17, *infra*, Mr. McGuire's appellate counsel were not ineffective for failing to challenge the trial court's definition of reasonable doubt.

Mr. McGuire argues next that his appellate counsel were ineffective because they failed to argue as a constitutional error the trial court's truncated instruction on mitigating factors.  Mr. McGuire's position is that the instruction precluded the jury from considering his history, character, and background, the nature and circumstances of the offense, and nonstatutory mitigation in violation of *Lockett*.

The trial court instructed the jury as follows:

Now, you are going to proceed to weigh the aggravating circumstances which you have already found, against the mitigating factors which you will consider and find.

The aggravating circumstances which you have already found is as follows: The offense was committed with the Defendant was committing, or attempting to commit, or fleeing immediately after committing or attempting to commit rape and was the principal offender in the commissioner of the aggravated murder.

Now, weighing against the aggravating circumstance will be the following mitigating factors:

1) Any residual or lingering doubts about the Defendant's guilt of the offense charged or an aggravating circumstance.
2. The Defendant's potential for rehabilitation.
3) The Defendant's ability to make a well-behaved and peaceful adjustment to life in prison.
4) The Defendant's ability to lead a useful life behind bars if sentenced to life imprisonment.
5) The Defendant's devotion to, and care of, his family members.
6) Whether the Defendant was the victim of childhood abuse.
7) The Defendant was deprived of parental nurturing.

Now, before you can recommend death, you must unanimously agree that the prosecution has proved to you beyond a reasonable doubt that the aggravating circumstances outweighs all of the mitigating factors.

Transcript of Proceedings, Penalty Phase at 133-34.

O.R.C. §2929.04(B)[12] provides that in a capital case the jury shall weigh against the aggravating circumstances proved beyond a reasonable doubt the nature and circumstances of the offense, and the history, character, and background of the offender. In instructing the jury that it was to consider Mr. McGuire's potential for rehabilitation, ability to make a well-behaved and peaceful adjustment to life in prison, ability to lead a useful life behind bars if sentenced to life imprisonment, devotion to, and care of, his family members, whether he was the victim of childhood abuse, and whether he was deprived of parental nurturing, the trial court properly covered Mr. McGuire's history, character and background. It is unlikely that Mr. McGuire's claim that the trial court improperly instructed the jury would have succeeded on appeal. Accordingly, his appellate

---

[12] The version of O.R.C. §2929.05(B) which was in effect at the time of Mr. McGuire's trial and appeals is identical to the current version. *Compare,* O.R.C. §2929.05(B) (eff. Oct. 19, 1981) *with* O.R.C. §2929.05(B) (eff. Aug. 6, 1997).

counsel were not ineffective for failing to raise that issue.[13]

In his fifth sub-claim, Mr. McGuire argues that his appellate counsel were ineffective because they did not raise as error the improper death qualifying procedures of the trial court and the State.  However, in addressing Mr. McGuire's Ground 14, *infra*, this Court noted that this claim would fail in the Ohio courts and that it fails as a ground for relief in Mr. McGuire's *habeas* petition.  Accordingly, Mr. McGuire's appellate counsel were not ineffective because they failed to raise it.

Mr. McGuire argues next that his appellate counsel were ineffective for failing to argue as error his due process liberty interest in O.R.C. §2945.25(C) was infringed when the court excluded prospective jurors under a less exacting standard.  For the reasons given with respect to Mr. McGuire's Ground 15, this claim would not have succeeded on direct appeal and it fails as a ground for relief in Mr. McGuire's *habeas* petition.  Therefore, his appellate counsel were not ineffective for failing to raise the issue.

In his seventh sub-claim, Mr. McGuire claims that his appellate counsel were ineffective for failing to assert his trial counsel's prejudicially deficient errors and omissions in violation of *Strickland.*  However, other than those he has identified in his other sub-claim, Mr. McGuire fails to specifically identify any additional "errors and omissions" nor argue how they prejudiced him.

Mr. McGuire argues in his eighth sub-claim that his appellate counsel were ineffective because they failed to argue as error the insufficient quantum of evidence used to convict him in violation of the Due Process Clause.  This Court noted, in addressing Mr. McGuire's Ground

---

[13]  The Court notes that it is doubtful, at best, that Mr. McGuire's claim on this issue would be successful in his *habeas* petition.  *See Buchanan v. Angelone,* 522 U.S. 269 (1998)(state courts are not constitutionally required to affirmatively structure in a particular way the manner in which juries consider mitigating evidence).

11 that his insufficiency of the evidence claim would not have succeeded in state court. Likewise, the Court concluded that his claim fails as a basis for issuing a writ. Therefore, his counsel were not ineffective for failing to raise that issue on direct appeal.

In his ninth sub-claim, Mr. McGuire argues that his appellate counsel were ineffective because they failed to argue that the O.R.C. §2929.04(A)(7) rape specification duplicates and fails to narrow the substantive offense under O.R.C. §2903.01(B). In addressing Mr. McGuire's Ground 19, *infra*, this Court determined that such a claim would not succeed in state court and that it is not a successful ground for purposes of Mr. McGuire's *habeas* action. Mr. McGuire's appellate counsel were not ineffective for failing to raise a meritless issue.

Next, Mr. McGuire alleges that his appellate counsel were ineffective because they neglected to raise as error irrelevant and prejudicial opinion testimony by Willie Reeves, a lay witness, as to Mr. McGuire's motives and because they did not raise as error the improper use of Shirley Dinkins' testimony in rebuttal in an effort to bolster Mr. Reeves' credibility. This Court addressed both of these evidentiary issues in its discussion of Mr. McGuire's Ninth Ground, *supra.* In addition, at this juncture the Court notes that Ohio law provides that a trial court has broad discretion in the admission of evidence. *State v. Martin,* 19 Ohio St.3d 122, 129 (1985). A reviewing court will not overturn a trial court's decision regarding the admissibility of evidence absent an abuse of discretion. *Id.* An abuse of discretion requires more than just an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

The Court first considers Mr. Reeves' testimony. In light of the other evidence against Mr. McGuire, particularly the forensic evidence and the fact that Mr. McGuire knew details

about the crimes that were not made public, Mr. Reeves' testimony that Mr. McGuire told him about blaming someone else for Ms. Stewart's rape and murder was, as described by the Ohio Supreme Court, relatively insignificant. Nevertheless, in the absence of unreasonable, arbitrary, or unconscionable conduct by the trial court, it is unlikely that had counsel raised the issue on direct appeal the issue would have succeeded on the merits. Therefore, Mr. McGuire's appellate counsel were not ineffective for failing to raise the issue.

This analysis applies also to Mr. McGuire's claim about Ms. Dinkins' testimony. In other words, because it is not likely that such a claim would have been successful on the merits, Mr. McGuire's counsel were in ineffective for failing to raise it on direct appeal.

In his eleventh sub-claim, Mr. McGuire argues that his appellate counsel were ineffective because they neglected to raise the failure of trial counsel to request that the judge instruct the jury to move from a sentence of death to one of the life sentences when the jury informed him that they were consistently voting 11-1.

During the penalty phase of Mr. McGuire's trial, the jury had been deliberating for several hours when it sent the court a question which read: "What happens when we get a vote of 11 to 1, consistently, on one possible sentence?" Transcript of Proceedings, Penalty Phase, p. 142. The trial judge noted that giving a supplemental charge had been approved by the Ohio Supreme Court in *State v. Howard,* 42 Ohio St.3d 18, 1989. Transcript, *Id.* at 143. The court then instructed the jury as follows:

> In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of other jurors, each question submitted to you should be examined with proper regard and deference to the opinions of others.

It is desirable that the case be decided.  You are selected in the same manner and from the same source as any future jury would be selected.  There's no reason to believe that the case would ever be submitted to a jury more capable, more impartial, more intelligent, than this one.

Likewise, there is no reason to believe that more or clearer evidence will be produced by either side.  And we're dealing of course with the penalty phase of this case.

It is your duty to decide the case if you can conscientiously do so.  You should listen to one another's opinions with the disposition to be persuaded.  Don't hesitate to re-examine your views and change your position if you are convinced that it is erroneous.

If there is disagreement, all jurors should re-examine their positions, given that a unanimous verdict has not been reached.

Jurors voting on one side of the question should consider whether their doubt is reasonable considering that it is not shared by other jurors, equally honest who have heard the same evidence with the same desire to arrive at the truth and under the same oath.

Likewise, jurors voting the other way should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.

Remember you need to consult with one another in the jury room and deliberate with a view toward reaching an agreement if you can do so without disturbing your individual judgment.

Each of you must decide this case for yourself, but you should do so only after a discussion of the case with your fellow jurors.

Now it is conceivable that after a reasonable length of time honest differences of opinion on the evidence and what is appropriate, may prevent an agreement upon a verdict.  If and when that condition exists, simply tell the Court.

*Id.* at 148-50.  The jury continued to deliberate for almost four (4) additional hours before reaching

its verdict.  *Id.* at 151.

75

In *Howard, supra,* the Ohio Supreme Court held that the traditional *Allen*[14] charge was not a proper supplemental charge to be given to Ohio juries that have become deadlocked on the question of conviction or acquittal. *Howard,* 42 Ohio St.3d at 22-23. The Court then approved the following supplemental charge:

> The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.

*Id.* at 25-26. Ohio courts have given, and the Ohio Supreme Court approves of, a modified *Howard* charge in the penalty phase of a capital trial when the jury indicates it is unable to reach a verdict. *See, i.e., State v. Gapen,* 104 Ohio St.3d 358 (2004); *State v. Brown,* 100 Ohio St.3d 51 (2003); *State v. Robb,* 88 Ohio St.3d 59, 81 (2000) and cases cited therein; *State v. Mason,* 82 Ohio St.3d 144

---

[14] *Allen v. United States,* 164 U.S. 492 (1896).

(1998).

The supplemental instruction which the court gave to the jury in the penalty phase of Mr. McGuire's trial accurately reflected the modified *Howard* instruction which the Ohio Supreme Court has approved for use in the penalty phase of capital trials. It is unlikely, then, that a claim that the trial court committed error would have been successful on direct appeal. Therefore, Mr. McGuire's appellate counsel were not ineffective for failing to raise the issue.

In his twelfth sub-claim, Mr. McGuire alleges that his appellate counsel were constitutionally infirm because they neglected to raise the failure of trial counsel to challenge for cause a juror who was related to a significant government witness. However, Mr. McGuire does not argue how he was prejudiced by any such relationship.

During *voir dire*, juror Tonya Bingham testified that Shawn Baird, one of the state's witnesses, was married to her sister[15]. Transcript of Proceedings, *Voir Dire*, at 157. Ms. Bingham also testified that the fact that Mr. Baird was her brother-in-law would not cause her to give any more or less weight to his testimony. *Id.* at 158. Defense counsel had the opportunity to examine Ms. Bingham and in response to defense counsel's questions, Ms. Bingham testified that she did not see Mr. Baird very often, indeed, saw him only on holidays, because of scheduling conflicts. *Id.* at 191-92.

In *State v. Woodards,* 6 Ohio St.2d 14 (1966), the Ohio Supreme Court determined that the fact that a person selected to serve as a juror at the trial of some one charged with murder

---

[15] Mr. Baird essentially testified that he had visited Mr. McGuire on December 24, 1989, when Mr. McGuire was incarcerated in the Preble County jail, that Mr. McGuire had told him about the February murder of a girl who had been stabbed in the neck, that Mr. McGuire told him that he and Jerry Richardson had committed the murder, and that Mr. McGuire said he was going to blame it all on Jerry Richardson. Transcript of Proceedings, Jury Trial at 581-92.

is acquainted with the sheriff and a deputy sheriff who was a witness for the prosecution and who had procured an insurance policy for that witness did not prejudice the defendant's right to a fair and impartial trial where the opportunity was present for defendant's counsel to ascertain this fact, and where there is no evidence that the juror was prejudiced against the defendant by reason of such acquaintance. *Id.* at 15.  Similarly, there is no evidence that Ms. Bingham was actually or impliedly biased.  Indeed, she testified that the fact that Mr. Baird was her brother-in-law would not cause her to give any more or less weight to his testimony.  Further, in response to defense counsel's questions Ms. Bingham that she did not see Mr. Baird very often.  In the absence of any indication whatsoever of bias on the part of Ms. Bingham, it is not likely that this issue would have succeeded on appeal.  Therefore, Mr. McGuire's counsel were not ineffective for failing to raise it.

This Court concludes that the Ohio Supreme Court properly applied the *Strickland* standard to Mr. McGuire's ineffective assistance of appellate counsel claim.  Because the issues Mr. McGuire alleges his appellate counsel should have raised would not have succeeded on appeal, his appellate counsel were not ineffective for failing to raise them.  Mr. McGuire's Tenth Ground should be overruled.

## Ground 11

**The government failed to introduce sufficient evidence of Rape. Thus Mr. McGuire was ineligible for consideration for a death sentence.  This violates the Eighth and Fourteenth Amendments.**

In this Ground, Mr. McGuire alleges that there was insufficient evidence of rape and of capital murder.

### State court opinion

In addressing this claim, the Ohio Supreme Court said:

When a defendant challenges the sufficiency of evidence, we determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks* (1991), 61 Ohio St.3d 259. 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  After reviewing the evidence in this case, we find it sufficient to support appellant's convictions.

McGuire's statements to the police tended to show guilt.  He had detailed knowledge of the crime, correctly stating how Joy was raped, the way she was stabbed, where the crime took place, and where the knife was hidden.  McGuire explained that these details came from what Jerry Richardson had told him the day after the murder, and that McGuire still remembered the details ten months later when he decided to talk to the police.  However, the state's DNA expert testified that Richardson could not be the sole source of sperm.

The DNA evidence was consistent with McGuire's guilt, since his DNA possessed characteristics similar to the DNA of sperm found on the victim's body.  The DNA did not conclusively eliminate Richardson or Kenny Stewart, but they were possible sperm sources only if there was more than one source.  Furthermore, there was evidence that Kenny was at work at the time of the murder, and Richardson could not have been driving his mother's car as McGuire claimed.

Additionally, McGuire admitted guilt to Willie Reeves and Shawn Baird.  Likewise, Jack Stapleton testified that McGuire accidentally implicated himself in describing the murder to another inmate.

Sufficient evidence was also presented indicating that McGuire was the principal offender.  The DNA evidence implicated McGuire as the source of semen found on Joy's body.  Jerry Richardson denied any involvement in the murder, and there was also testimony that Richardson did not have access to the car that McGuire claimed Richardson used in the commission of the rape and murder.  Willie Reeves also testified that when McGuire admitted to the rape and murder, he made no mention of any accomplices.  Finally, there was evidence that Kenny Stewart was at work on the day of the murder and therefore could not have been an accomplice to the crime.

There was also sufficient evidence to prove rape.  Reeves testified

that McGuire told him that Joy became hysterical because "he wanted to have sex with her, and she didn't want to, so he did it anyway." Moreover, the testimony of Lindloff, Reeves, and Stapleton shows that McGuire consistently used the word "rape" to describe what was done to Joy. The jury could infer from this evidence that the sexual contact was compelled by force or threat of force.

Finally, the nature of the wound indicates specific intent to kill. McGuire also told Reeves that he killed Joy to avoid going to jail. Thus, there was sufficient evidence to convict appellant, and we reject his ninth proposition of law.

*McGuire,* 80 Ohio St.3d at 396-97.

### **Controlling federal law**

In *Jackson v. Virginia,* 443 U.S. 306 (1979), the Supreme Court discussed the standard applicable to a federal court's review of a state conviction on a sufficiency-of-the-evidence claim in some detail. The Court stated:

In [*In re*] *Winship,* [397 U.S. 358, 364 (1970)] the Court held for the first time that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." ... The standard of proof beyond a reasonable doubt, said the Court, 'plays a vital role in the American scheme of criminal procedure," because it operates to give "concrete substance" to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding. 397 U.S. at 363.... At the same time by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. *Id.* at 372 ... (Harlan, J., concurring).

...

The *Winship* doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. A "reasonable doubt", at a minimum is one based on "reason". Yet a properly instructed jury

may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury.  In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction.  Under *Winship*..., it follow that when such a conviction occurs in a state trial, it cannot constitutionally stand.

A federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court.

...

After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether, *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

*Jackson,* 443 U.S. at 315-19 (citations and footnotes omitted)(emphasis in original).

Under the standard announced in *Jackson*, therefore, it is not the reviewing court's duty to rule out every hypothesis that might be conjured from the facts other than the petitioner's guilt.  *Jackson,* 443 U.S. at 326.  Instead, where the evidence supports conflicting inferences, the court must presume the fact finder resolved such conflicts against the petitioner and must defer to that resolution.  *Id.*  Moreover, circumstantial evidence may be sufficient to support a conviction.  *United States v. Stone,* 748 F.2d 361, 363 (6th Cir. 1984).  Finally, it is well established that the trier

of fact at the state court level bears primary responsibility to choose which testimony or evidence to believe, and that a credibility determination by a state court is entitled to a presumption of correctness so long as the determination is fairly supported by the record.  *Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied sub nom Marshall v. Walker*, 464 U.S. 951 (1983); *Scott v. Perini,* 662 F.2d 428, 435 (6th Cir. 1981).

**Analysis**

Mr. McGuire argues that as to the rape conviction, the state failed to prove the element of compulsion by force or threat of force.  Mr. McGuire then argues that because there was insufficient evidence of rape, which was the underlying offense of the felony murder conviction, the murder conviction must be vacated.  Mr. McGuire also claims that there was insufficient evidence that he intended to cause Ms. Stewart's death when he committed the rape.  Finally, he argues that there was insufficient evidence to support the death specification as principal offender of the murder.

The Ohio Revised Code defines the offense of rape as follows: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  O.R.C. §2907.01(A)(2).  Physical resistance by the victim is not an element of the offense: "A threat of force can be inferred from the circumstances surrounding sexual conduct[.]" O.R.C. §2907.02(C).

First, Mr. McGuire consistently referred to Ms. Stewart being "raped".  Investigator Lindloff testified at Mr. McGuire's trial that when he met with Mr. McGuire on December 22, 1989, Mr. McGuire told him that Joy Stewart had been raped vaginally and anally.  Transcript of Proceedings, Jury Trial at 332-73.  Jack Stapleton, an inmate at the Preble County jail at the same time Mr. McGuire was incarcerated at that facility, testified that he overheard Mr. McGuire telling

82

another inmate about a murder, that Mr. McGuire said he and his brother-in-law were involved, and that first they raped the victim. *Id.* at 570-81. As noted above, Willie Reeves was an inmate at the Madison Correctional facility at the same time Mr. McGuire was in that facility. Mr. Reeves testified that Mr. McGuire told him that he and Ms. Stewart were cruising around in Mr. McGuire's vehicle and that he wanted to have sex with her but that she didn't want to have sex. *Id.* at 734-70. Mr Reeves also testified that Mr. McGuire told him that he "did it anyway", that it was difficult for him to have sex with her because she was pregnant so he "flipped her over" and "fucked her in the ass", and then he got "nervous and paranoid" because she was acting hysterical. *Id.* Mr. Reeves testified further that Mr. McGuire told him that Ms. Stewart became hysterical and that he knew if he didn't kill her that he would go to jail for raping a pregnant woman. *Id.*

Second, the medical evidence is consistent with a finding of compulsion by force. Dr. Smith, the forensic pathologist and deputy coroner for Montgomery County, testified that Ms. Stewart had sustained two abrasions around her neck and one on the inside of her knee. *Id.* at 128-86. Additionally, Dr. Smith testified that there was enough pressure exerted on Ms. Stewart's neck to cause the pattern of her clothing to be ingrained into her skin. *Id.* Finally, Dr. Smith testified that there was no trauma to Ms. Stewart's genitals or anus. *Id.* However, Dr. Smith also testified that it did not necessarily follow that because there was no trauma that there was consensual sex and that absence of trauma did not have a great deal of significance. *Id.*

Additionally, other evidence corroborated the fact that Mr. McGuire used force to compel Ms. Stewart to engage in sexual activity. For example, Ms. Stewart's body was found laying on the ground, out-of-doors, in Ohio, in the winter month of February. Testimony of Steven Noble, Transcript of Proceedings, Jury Trial at at 36-42. When Ms. Stewart's body was found, she was not

wearing her coat; rather, it was recovered from the ground.  Testimony of Deputy Swihart, Transcript of Proceedings, Jury Trial, at 75-105.

Finally, in view of the DNA evidence introduced at trial, it was not unreasonable for the jury to conclude that Mr. McGuire was the source of the semen collected from Ms. Stewart's vagina and anus.  *See* Analysis of Ground 3, *supra.*

Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that the essential elements of the crime of rape, including the use of or threat of force, were proven beyond a reasonable doubt.  *Jackson, supra.*  Because there was sufficient evidence of rape which was the underlying offense in the felony murder conviction, there is no merit to Mr. McGuire's claim that his murder conviction must be vacated on the basis that there was insufficient evidence of rape.

Mr. McGuire also claims that there was insufficient evidence that he intended to cause Ms. Stewart's death when he committed the rape.  However, the trial testimony discussed *supra,* reveals that Mr. McGuire made several statements describing Ms. Stewart's rape and murder. Some of those statements contained great detail as to how Ms. Stewart was stabbed.  They also contained information which the investigating authorities had not released.  Dr. Smith, the deputy coroner, testified about the knife wounds on Ms. Stewart's body including the injury which began on the left side of her neck, cut across her carotid artery and jugular vein, continued behind her esophagus and just in front of her spine, and which ended just to the right side of midline. Transcript of Proceedings, Jury Trial at 128-86.   Dr. Smith also described a smaller stab wound located near Ms. Stewart's left collarbone.  *Id.*  Finally, as noted above, Dr. Smith testified that there had been sufficient pressure exerted on Ms. Stewart's neck to cause her clothing to leave

84

impressions on her skin.  *Id.*

Again, viewing the evidence in the light most favorable to the prosecution, a reasonable fact finder could conclude that Mr. McGuire intended to cause Ms. Stewart's death when he committed the rape.

Mr. McGuire's final argument in support of this Ground is that there was insufficient evidence to support the death specification because the evidence was insufficient to establish that he was the principal offender in Ms. Stewart's murder.  However, for the same reasons discussed above, the DNA evidence, coupled with the detailed information that Mr. McGuire gave to Investigator Lindloff, Jack Stapleton, and Willie Reeves, provided a reasonable basis for the jury to conclude that Mr. McGuire was the principal offender.

The Ohio Supreme Court's decision on Mr. McGuire's claim that government failed to introduce sufficient evidence of rape and insufficient evidence of capital murder, is not contrary to nor an unreasonable application of, clearly established federal law and therefore Mr. McGuire's Ground 11 should be overruled.

## Ground 12

**Before a defendant's statement can by used against him in trial, the government must show that the statement is voluntary.  The government has failed to show that it complied with the *Miranda* requirements.  This violates the Fifth and Fourteenth Amendments.**

In his support of Ground 12, Mr. McGuire essentially argues that the failure of the trial court to suppress his statements which he alleges were obtained by law enforcement officials while he was in custody and in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), was a violation of his Fifth and Fourteenth Amendment rights.  Mr. McGuire alleges that

85

the violation commenced once Joseph Goodwin, a corrections officer at the Preble County jail,

began to interview him about Joy Stewart's homicide.

### State court opinion

The Ohio Supreme Court rejected Mr. McGuire's *Miranda* claim and stated:

In his tenth proposition of law, McGuire claims that his statements to law enforcement officers should have been suppressed because he was not advised of his rights. *See Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

McGuire's initial interview occurred with corrections officer Goodwin after McGuire repeatedly asked the officer that he be allowed to talk to detectives Lindloff and Swihart. Goodwin did not read appellant his *Miranda* rights. Goodwin took McGuire to a booking room, then asked whether McGuire had an attorney, "and he stated no, that he wanted to give me a statement on the murder case." McGuire proceeded to give a voluntary statement concerning the murder.

Though Goodwin did not advise McGuire of his *Miranda* rights, it was unnecessary to do so. *Miranda* does not affect the admissibility of [v]olunteered statements of any kind." 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. Furthermore, appellant initiated the discussion with police and volunteered the information. There was no evidence that Goodwin even asked any questions during the statement. Thus, appellant was not subject to custodial interrogation and was not entitled to *Miranda* warnings. *State v. Roe* (1989), 41 Ohio St.3d 18, 22, 535 N.E.2d 1351, 1357.

Further interviews with McGuire all were preceded by valid *Miranda* warnings and waivers by McGuire. McGuire claims that he did not voluntarily waive his rights due to his lack of education and illiteracy. However, the record of the suppression hearing contains no evidence about McGuire's lack of education, nor is there any evidence that officers used any coercive tactics in obtaining statements.

In any event, the totality of the circumstances indicates that McGuire voluntarily waived his rights. He repeatedly begged to talk to detectives and tried to obtain concessions in exchange for information. He also gave a self-exculpatory version of events. The record depicts a man who voluntarily cooperated, or pretended to for

86

> his own purposes, not one who was coerced.  Therefore, McGuire's
> tenth proposition lacks merit.

*McGuire,* 80 Ohio St.3d at 401-02.

### Clearly established federal law

 *Miranda v. Arizona,* 384 U.S. 436, 467 (1966), requires that unless an individual waives his rights after being provided with certain warnings, any statements made by the individual during a custodial interrogation must be suppressed.  For purposes of *Miranda*, "custodial interrogation" means questioning initiated by law enforcement officers after a person has been taken into custody.  *Illinois v. Perkins,* 496 U.S. 292, 296 (1990).  "Interrogation" refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the individual.  *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980).  When deciding whether a suspect has been interrogated, courts should carefully scrutinize the factual setting of each encounter.  *United States v. Avery,* 717 F.2d 1020, 1025 (6th Cir. 1983), *cert. denied,* 466 U.S. 905 (1984).  Even a relatively innocuous series of questions may, in light of the factual circumstances and the susceptibility of a particular suspect, be reasonably likely to elicit an incriminating response.  *Id.*  However, any statement given freely and voluntarily without any compelling influences is admissible in evidence.  *Id.*

 The *Miranda* warnings ensure that an individual knows of his rights not to talk with the police, to have a lawyer present, and to discontinue talking at any time, as well as ensuring that the individual is appraised that his statements can be used to secure his conviction.  *Id.*  A person can waive these rights, but *Miranda* requires that the waiver be voluntary, knowing, and intelligent.  *Miranda,* 384 U.S. at 444.  The test for waiver "has two distinct dimensions":

 First, the relinquishment of the right must have been voluntary in the

87

> sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Colorado v. Spring,* 497 U.S. 564, 573 (1987), *quoting, Moran,* 475 U.S. at 421.

A court should consider the "totality of the circumstances" of the interrogation to determine whether the suspect had the requisite level of comprehension. *Spring, supra.* It is not necessary that a suspect know and understand every possible consequence of a waiver. *Id.* at 574. Thus, when a suspect's voluntary decision to answer police officers' questions is made with "requisite" comprehension of all the information required by *Miranda* (that he has the right to remain silent and to have an attorney present during custodial interrogation, and that his responses to police questioning can be used as evidence against him), his waiver is knowing and intelligent under *Miranda. See Id.* at 574-75.    If an individual effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. *North Carolina v. Butler,* 441 U.S. 369, 372-76 (1979).[16]

Coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. *Colorado v. Connelly,* 479 U.S. 157, 167 (1986). There is no reason to require more in the way of a "voluntariness" inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context. *Id.* at 169-70. The sole concern of the Fifth Amendment, on which *Miranda*

---

[16] Although not an issue in the present matter, it is well settled that if a suspect requests counsel at any time during an interview to which he has agreed, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation. *Edwards v. Arizona,* 451 U.S. 477, 484-85 (1981).

was based, is governmental coercion. *Id.* (citations omitted). The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. *Id.* (citations omitted). A defendant's mental condition, by itself and apart from its relation to official coercion, does not dispose of the inquiry into constitutional "voluntariness". *Id.* at 164.

**<u>Analysis</u>**

Joseph Goodwin, a corrections officer at the Preble County jail at the time relevant to this issue, testified at the suppression hearing that on or about December 22, 1989, while incarcerated in the jail on charges unrelated to the present matter, Mr. McGuire spoke with him and requested to speak with David Lindloff or Larry Swihart. Transcript of Proceedings, Suppression Hearing, at 11-20. Mr. McGuire approached Officer Goodwin about six or seven times with respect to speaking with either Investigator Lindloff or Deputy Swihart but Officer Goodwin was unable to contact either Investigator Lindloff or Deputy Swihart. *Id.* Mr. McGuire subsequently told Officer Goodwin several times that he needed to speak with somebody about a murder. *Id.* Eventually, Officer Goodwin took Mr. McGuire out of his cell and brought him to the booking room where Officer Goodwin asked Mr. McGuire if he had an attorney to represent him. *Id.* Mr. McGuire advised Officer Goodwin that he did not want his attorney and that he wanted to give Officer Goodwin a statement. *Id.* Mr. McGuire then told Officer Goodwin that Jerry Richardson killed Joy Morningstar [Stewart] and he described how Mr. Richardson committed the rape and murder. *Id.* In addition, he gave Officer Goodwin a description of the weapon and said he knew where the weapon was hidden. *Id.*

Investigator Lindloff testified at the suppression hearing that after receiving

messages that Mr. McGuire wanted to speak with him, on December 22, 1989, he went to the Preble

County jail, removed Mr. McGuire from the jail, and took him to the prosecutor's office to speak

with him.  *Id.* at 21-39.   Although he did not have him execute a written waiver form, Investigator

Lindloff verbally advised Mr. McGuire of his *Miranda* rights.  *Id.*  Mr. McGuire inquired whether

Investigator Lindloff would be able to help him with the charges for which he was incarcerated if

he (Mr. McGuire) gave him information about Joy Stewart's murder.  *Id.*   Investigator Lindloff

advised Mr. McGuire that any help he gave in clearing up Ms. Stewart's murder would be reported

to the court.  *Id.*  Mr. McGuire then told Investigator Lindloff that he had information about Joy

Stewart's death.  *Id.*  Mr. McGuire provided Investigator  Lindloff with specific information about

Ms. Stewart's death, some of which had not been released to the public.  *Id.*  Mr. McGuire also told

Investigator Lindloff that Mr. Richardson had committed the crime and advised Investigator Lindloff

that he could take Investigator Lindloff and Deputy Swihart to the knife that Mr. Richardson used

to kill Ms. Stewart.  *Id.*  Mr. McGuire subsequently took Investigator Lindloff, Deputy Swihart, and

two other deputies to the Joe Conley residence where he led the officers to a knife hidden in a barn.

*Id.*

Deputy Swihart testified at the suppression hearing that prior to receiving the call

from Investigator Lindloff advising him that Mr. McGuire had information about Joy Stewart's

murder and that he could take the investigating officials to the place where the knife used in the

crime was hidden, he had received several messages from corrections officers that Mr. McGuire

wanted to speak with him.  *Id.* at 40-59.  Deputy Swihart also testified that when he arrived at the

prosecutor's office to meet with Investigator Lindloff and Mr. McGuire, he did not advise Mr.

McGuire of his constitutional rights.  *Id.*  After recovering the knife from the barn, Deputy Swihart

90

and Mr. McGuire went to the sheriff's office where he verbally advised Mr. McGuire of his constitutional rights after which Mr. McGuire execute a waiver form.  *Id.*  Deputy Swihart then interviewed Mr. McGuire making an audio tape of that interview.  *Id.*  At no time did Deputy Swihart ask Mr. McGuire if he was represented by an attorney.  *Id.*

   With respect to his encounter with Officer Goodwin, Mr. McGuire was not subjected to a "custodial interrogation" for purposes of *Miranda.*  It was Mr. McGuire who initiated the contact with Officer Goodwin, repeatedly requesting to speak with someone about a murder.  Mr. McGuire volunteered the information he gave to Officer Goodwin and there is no evidence that Officer Goodwin engaged in any "express questioning" of Mr. McGuire or that he said or did anything that he knew would be reasonably likely to elicit an incriminating response from Mr. McGuire.  In reaching this conclusion, this Court is aware of the fact that at the time he initiated contact with Officer Goodwin, Mr. McGuire was incarcerated in the Preble County jail on charges unrelated to the present matter.  Under those circumstances, one could argue that he was "in custody" for purposes of *Miranda.* However, the issue with respect to Mr. McGuire's statement to Officer Goodwin is not whether he was "in custody" but whether he was subject to a "custodial interrogation" for purposes of *Miranda.*  The evidence establishes that he was not.  *Perkins, supra; Innis, supra.*

   Prior to meeting with and interviewing Mr. McGuire, Investigator Lindloff advised Mr. McGuire of his *Miranda* rights which rights Mr. McGuire waived.  Similarly, prior to his meeting individually with Mr. McGuire, Deputy Swihart verbally advised Mr. McGuire his *Miranda* rights after which Mr. McGuire executed a waiver form.  There was no evidence introduced at the hearing on Mr. McGuire's Motion to Suppress about Mr. McGuire's inability to understand his

constitutional rights or any inability to understand the consequences of his waiving those rights.  Nor

was there any evidence of Mr. McGuire's lack of education.[17]

        The record contains no evidence or indication of police coercion.  Rather, the

evidence reveals that Mr. McGuire repeatedly requested to speak with Officer Goodwin, Investigator

Lindloff, and Deputy Swihart and that he initiated contact with those individuals.  Mr. McGuire

attempted to obtain assistance and concessions with respect to the matter for which he was

incarcerated in exchange for giving the police officials information about Joy Stewart's murder.  Mr.

McGuire then provided a self-serving description of the events surrounding Ms. Stewart's murder

including identifying Jerry Richardson as the perpetrator.

        The Ohio Supreme Court's decision with respect to suppressing Mr. McGuire's

statements to Officer Goodwin, Investigator Lindloff, and Deputy Swihart is not contrary to nor an

unreasonable application of, clearly established federal law and therefore Mr.  McGuire's Ground

12 should be overruled.

### Ground 13

**A jury must be convinced beyond a reasonable doubt that a person is guilty of a crime.  An instruction that tells the jury that they must be firmly convinced does not meet this standard.  This violates the Fourteenth Amendments [*sic*].**

        In support of Ground 13, Mr. McGuire argues that the jury instruction on reasonable

doubt which the trial court gave during both the guilt and penalty phases of his trial violated his

---

[17] The Court notes that psychologist Phyllis Kuehnl testified at the penalty phase of Mr. McGuire's trial that based on her review of Mr. McGuire's school records she was of the opinion that Mr. McGuire should have received specialized educational opportunities.  Transcript of Proceedings, Penalty Phase at 55-80.  She also testified that when she interviewed Mr. McGuire, he came across as a man who had few social skills coupled with illiteracy. *Id.*  Assuming *arguendo* that Mr. McGuire is indeed illiterate, the record reveals that both Investigator Lindloff and Deputy Swihart verbally advised Mr. McGuire of his *Miranda* rights.

Fourteenth Amendment rights because it could have led jurors to find him guilty on a degree of proof below that required by the Due Process Clause; that is, to find him guilty on less than a degree of guilt beyond a reasonable doubt.

### State court opinion

The Ohio Supreme Court addressed this jury instruction issue as follows:

Next, McGuire argues that appellate counsel should have assigned as error the trial court's instructions on purpose, reasonable doubt, and two issues relating to the death-qualification of the venire. But each of these issues was waived at trial and we find no plain error.

*McGuire,* 80 Ohio St.3d at 398.

Although the Respondent does not raise the defense of procedural default, it arguably applies to this claim. *See Coleman,* 501 U.S. at 749; *Maupin*, 785 F.2d at 138; *Wainwright,* 433 U.S. at 72. Indeed, Mr. McGuire does not dispute the Ohio Supreme Court's determination that his claim as to the reasonable doubt jury instruction was waived at trial. Additionally, this Court's review of the trial transcript reveals that Mr. McGuire's trial counsel did not object to the jury instruction on the issue of reasonable doubt. Transcript of Proceedings, Jury Trial at at 942-53; 1054-58.[18] Nevertheless, this Court declines to raise the question of procedural default *sua sponte* with respect to this claim. However, as noted above, the AEDPA provides that a *habeas* court may address an unexhausted claim that is plainly meritless. *Rhines,* ___ U.S. at ___, 125 S.Ct. at 1535. Therefore, the Court turns to the merits of Mr. McGuire's claim related to the reasonable doubt jury instruction.

During the trial phase, the trial court instructed the jury on reasonable doubt as

---

[18] Additionally, Mr. McGuire's trial counsel did not request an alternative reasonable doubt instruction. *Id.*

follows:

> Now what is reasonable doubt?  Reasonable doubt is present when,
> after you have carefully considered and compared all the evidence,
> you cannot say that you are firmly convinced of the truth of the
> charge.  It is based—it is doubt based on reason and common sense.
> Reasonable doubt is not mere possible doubt, because everything
> relating to human affairs or depending on moral evidence is open to
> some possible or imaginary doubt.  Proof beyond a reasonable doubt
> is proof of such character than an ordinary person would be willing
> to rely and act upon it in the most important of his own affairs.

Transcript of Proceedings, Jury Trial at at 1038.  That language is taken directly from O.R.C. §2901.05(D).

At this juncture, this Court notes that the Ohio Supreme Court upheld the constitutionality of O.R.C. §2901.05(D) in *State v. Nabozny,* 54 Ohio St.2d 195 (1978)[19]. Therefore, even assuming that Mr. McGuire's counsel had contemporaneously objected to the jury instruction on  reasonable doubt, or had requested an alternative instruction, it is not likely that he would have succeeded in the state courts on that issue.   Nevertheless, the Court turns to the applicable federal law.

The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.  *Victor v. Nebraska,* 511 U.S. 1, 5 (1994)(citation omitted).  Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  *Id.*(citations omitted).  Rather, taken as a

---

[19]  The United States Supreme Court vacated Mr. Nabozny's death sentence, 439 U.S. 811 (1978), on the basis of *Lockett v. Ohio,* 438 U.S. 586 (1978), in which the Court found unconstitutional Ohio's death penalty scheme which was in existence at that time.

whole, the instructions must correctly convey the concept of reasonable doubt to the jury. *Id.*(citation omitted).  In *Thomas v. Arn*, 704 F.2d 865, 869 (6th Cir. 1982), the Sixth Circuit determined that Ohio's statutory definitions of reasonable doubt and proof beyond a reasonable doubt as defined in O.R.C. §2901.05(D) do not offend due process or any other federally guaranteed constitutional right.

This Court concludes that Mr. McGuire's claim related to the reasonable doubt jury instruction is plainly meritless.  Therefore, his Ground 13 should be overruled.

## Ground 14

**The Sixth Amendment requires that a person have his guilt determined by a fair and impartial jury.  The Due Process Clause requires that jurors must be able to judge all issues without bias or predetermination.  In this case the jurors were asked to commit to the death penalty specifically in this case.  This violates the Sixth, Eighth and Fourteenth Amendments.**

### State court opinion

Mr. McGuire raised this issue in his Proposition of Law Twelve in his direct appeal to the Ohio Supreme Court. *See McGuire,* 80 Ohio St.3d at 407.  In addressing that Proposition, the Ohio Supreme Court stated:

> Appellant has raised eighteen propositions of law for our consideration, which we have fully reviewed according to R.C. 2929.05(A). ... However, pursuant to *State v. Poindexter* (1998), 36 Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily reject, without discussing, the merits of a number of appellant's propositions of law, as they involve settled issues.  (Propositions of Law Three, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen.)

*McGuire,* 80 Ohio St.3d at 394.

As noted above, in *Poindexter,* the Ohio Supreme Court held that when it has

95

considered and decided an issue of law in a capital case and the issue is raised anew in a subsequent

capital case, it is proper for it to summarily dispose of the issue in the subsequent case.  36 Ohio

St.3d at 3.

> In *State v. Allard,* 75 Ohio St.3d 482 (1996), the Ohio Supreme Court said:

> Appellant's fourth proposition of law concerns the death-qualification process used during jury selection.  In *State v. Rogers* (1985), 17 Ohio St.3d 177 ..., paragraph three of the syllabus, vacated and remanded on other grounds (1985) 474 U.S. 1002 ..., this court held that "[t]he proper standard for determining when a prospective juror may be excluded for cause based on his views on capital punishment is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath. (*Wainwright v.* Witt [1985], [469 U.S. 412 ..., followed)."

> During *voir dire,* the trial judge asked prospective jurors the following question: "If in a proper case where the facts warrant it and the law permits it, could you join in signing a verdict form which might recommend to the Court the imposition of the death penalty?" Appellant contends that this question was insufficient to ferret-out those prospective jurors who would automatically vote to impose the death sentence, *i.e.,* to determine whether the jurors hold views concerning capital punishment that would preclude them from fairly considering a sentence other than death.  *See Morgan v. Illinois* (1992), 504 U.S. 719 ....  What appellant fails to recognize is that the trial court in this case permitted defense counsel wide latitude to inquire into each prospective juror's beliefs and opinions concerning the death penalty.  Further, defense counsel exercised that right and questioned jurors extensively regarding their view on capital punishment.  Thus, there was no reversible error in the death qualification process used in jury selection.

*Allard,* 75 Ohio St.3d at 493.

### Controlling federal law

The Sixth Amendment, made applicable to the states through the Fourteenth

Amendment, guarantees a criminal defendant a trial by an impartial jury.  *Williams v. Bagley,* 380

96

F.3d 932, 943 (6th Cir. 2004), *citing Morgan v. Illinois,* 504 U.S. 719, 726-27 (1992). The presence of even a single biased juror deprives a defendant of his right to an impartial jury. *Williams,* 380 F.3d at 944, *citing Morgan,* 504 U.S. at 729.

A capital defendant may challenge for cause any "automatic death penalty" juror–*i.e.,* any juror who would vote to impose death automatically if the jury found the defendant guilty. *Morgan,* 504 U.S. at 728. As a general rule, a defendant may excuse a juror for cause "if the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id., quoting Wainwright v. Witt,* 496 U.S. 412, 424 (1985)

In *Morgan* the Court said:

> As with any other trial situation where an adversary wishes to exclude a juror because of bias, then, it is the adversary seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality. It is then the trial judge's duty to determine whether the challenge is proper.

*Id.* at 733 (citation omitted).

### Analysis

Mr. McGuire challenges the trial court's individual *voir dire*. Specifically, Mr. McGuire alleges that the jurors were asked to commit themselves to the death penalty in this case when the trial court asked the following question:

> My first question is simply this, in a proper case where you believe the facts warrant it and the law permits it, could you join in signing a verdict form which might recommend to the Court the imposition of the death penalty?

Transcript of Proceedings, *Voir Dire,* at 239 (Mr. Michael); 242 (Mr. Filbrun); 245 (Ms. Herbkersman); 254-55 (Ms. Bush); 258 (Ms. Petitt); 265 (Mr. Smith); 266 (Mr. Mitchell); 271 (Ms. Condon); 280-81 (Mr. Brawley); 286 (Mr. Carter); 294 (Mr. Mathes); 301-02 (Ms. Miller); 308-09

(Ms. Pheanis); 315 (Ms. Flory); 320 (Ms. Browning); 325 Mr. Sink); 330 (Ms. Howard); 338-39

(Ms. Bingham); 345 (Ms. Nieberding); 349 (Mr. French); 354 (Mr. Brunner); 357 (Mr. Daily); 362

(Ms. Brower); 364 (Ms. Spitler); 369-70 (Mr. Rader); 374 (Ms. Keener); 377 (Ms. Coleman); 382-

83 (Mr. Downey); 387 (Mr. Arnold); 395-96 (Mr. Morris); 401-02 (Ms. Davis).  Mr. McGuire's

position is that the trial court did not ask the jurors if they could sign a life verdict in a proper case

if warranted by the facts and law and therefore the prospective jurors were death-qualified in a

manner that denied him his right to due process and to a reliable capital sentencing hearing.

Mr. McGuire has accurately quoted the question that the trial court asked the various

prospective jurors during the individual *voir dire*.  The record reveals, however, that after the trial

judge inquired of each prospective juror, he allowed counsel for the State and counsel for Mr.

McGuire to inquire.  Among the questions Mr. McGuire's counsel asked of the prospective jurors

was whether the prospective juror would *automatically* impose the death penalty simply because he

or she found Mr. McGuire guilty or whether the prospective juror could sign a life verdict or

whether the prospective juror would follow the judge's instructions in the penalty phase. *See, e.g.,*

*Id.* at 241 (Mr. Michael); 244 (Mr. Filbrun); 251 (Ms. Herbkersman); 256-57 (Ms. Bush); 263 (Ms.

Petitt); 270 (Mr. Mitchell); 284 (Mr. Brawley); 289 (Mr. Carter); 305 (Ms. Miller); 313-14 (Ms.

Pheanis); 319 (Ms Flory); 323-24 (Ms. Browning); 329 (Mr. Sink); 337-38 (Ms. Howard); 343 (Ms.

Bingham); 348 (Ms. Nieberding); 352-53 (Mr. French); 360 (Mr. Daily); 368 (Ms. Spitler); 372-73

(Mr. Rader); 374 (Ms. Keener)[20]; 381-82 (Ms. Coleman); 385-86 (Mr. Downey); 391-92 (Mr.

Arnold); 400-01 (Mr. Morris); 404-05 (Ms. Davis).   Three of the prospective jurors, Mr. Filbrun,

Ms. Herbkersman, and Mr. Carter essentially responded that he or she would automatically impose

---

[20]  It was actually the trial judge who asked Ms. Keener if she would automatically vote to recommend death to which Ms. Keener responded "No".

a sentence of death upon a finding of guilty and the trial judge excused for cause those three prospective jurors. *See* Transcript of Proceedings, *Voir Dire* at 244 (Mr. Filbrun), 254 (Ms. Herbkersman), and 294 (Mr. Carter).[21]

Not only did the trial court give Mr. McGuire's counsel wide latitude to inquire into each prospective juror's beliefs and opinions concerning the death penalty, defense counsel exercised that right and questioned jurors extensively regarding their view on capital punishment. More importantly, however, the trial judge excused for cause those potential jurors who admitted that they were likely to automatically impose a sentence of death if the jury found Mr. McGuire guilty. That is what *Morgan, supra,* requires and that is what the trial court did.

The Ohio Supreme Court's decision with respect to Mr. McGuire's claim that his rights were violated because during *voir dire* the prospective jurors were asked to commit to imposing the death penalty is not contrary to nor an unreasonable application of, clearly established federal law. Mr. McGuire's Ground 14 should be overruled.

### Ground 15

**A capital defendant has a due process liberty interest in Ohio Rev. Code §2945.25, which prevents people from being excused from capital cases when they [*sic*] conscientious or religious opposition to the death penalty. This violates the Eighth and Fourteenth Amendments.**

#### State court opinion

Mr. McGuire raised this issue in his Proposition of Law Thirteen in his direct appeal to the Ohio Supreme Court. *See McGuire,* 80 Ohio St.3d at 407. In addressing Proposition of Law

---

[21] The Court notes that six prospective jurors were excused due to strong opposition to the death penalty and/or an admitted inability to follow the law as given by the trial judge and/or fear of reprisal if the jury recommended the death penalty. *Id.* at 265 (Mr. Smith), 275-80 (Ms. Condon), 295-301 (Mr. Mathes), 305-07 (Ms. Miller), 355-56 (Mr. Brunner), and 363-64 (Ms. Brower).

Thirteen, the Ohio Supreme Court stated:

> Appellant has raised eighteen propositions of law for our consideration, which we have fully reviewed according to R.C. 2929.05(A). ... However, pursuant to *State v. Poindexter* (1998), 36 Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily reject, without discussing, the merits of a number of appellant's propositions of law, as they involve settled issues. (Propositions of Law Three, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen.)

*McGuire,* 80 Ohio St.3d at 394.

As noted above, in *Poindexter,* the Ohio Supreme Court held that when it has considered and decided an issue of law in a capital case and the issue is raised anew in a subsequent capital case, it is proper for it to summarily dispose of the issue in the subsequent case. 36 Ohio St.3d at 3.

In *State v. Roe,* 41 Ohio St.3d 18 (1989), *cert. denied,* 494 U.S. 1060 (1990), the court noted:

> In his eighth, ninth and tenth propositions of law, appellant questions the jury selection process. First, appellant contends that two veniremen were improperly excluded for cause on the grounds of their beliefs concerning capital punishment. The record reveals, however, that both prospective jurors were properly excluded under the standard set forth in *Wainwright v. Witt* (1985) 496 U.S. 412 ..., which standard this court embraced in *State v. Rogers* (1985), 17 Ohio St.3d 174, 178 ... (*Rogers I*), vacated on other grounds, (1987), 32 Ohio St. 3d 70 .... R.C. 2945.25(C)[FN1] does not impose a higher standard than that set forth in *Witt.*

> > FN1. R.C. 2945.25 provides, in pertinent part:
> > "A person called as a juror in a criminal case may be challenged for the following causes:" ...
> > "(C) In the trial of a capital offense, that he unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case. A prospective juror's conscientious or religious opposition to the death

100

> penalty in and of itself is not grounds for a challenge for cause. All parties shall be given wide latitude in voir dire questioning in this regard."

*Roe,* 41 Ohio St.3d at 21.

### Controlling federal law

In *Wainwright v. Witt,* 469 U.S. 412 (1985), the Court held that the federal constitutional standard for determining juror bias in a capital case is whether the prospective juror's views would "prevent or substantially impair the performance of the juror's duties in accordance with his instructions and his oath." *Id.* at 424.

### Analysis

Mr. McGuire argues that his right to due process was violated "because the trial court applied the *Witt* standard to excluded [*sic*] for cause six prospective jurors with conscientious objections to capital punishment." Mr. McGuire claims that it was error for the trial court to remove prospective jurors Larry Smith, Cathy Condon, Robert Mathes, Ben Brunner, and Barbara Bower on the basis it found that their views on capital punishment impaired or impeded their jury service. Mr. McGuire's position is that the trial court erred "because [it] never determined if those jurors were eligible to serve under Ohio Rev. Code §2945.25(C)." Stated differently, Mr. McGuire argues that state law imposes a standard for juror removal that is more stringent than the standard imposed by *Witt*.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a

101

federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62 (1991).

Mr. McGuire acknowledges that the trial court applied the *Witt* standard to exclude six prospective jurors with conscientious objections to capital punishment. Therefore, Mr. McGuire is not arguing a federal constitutional violation. Rather, Mr. McGuire is arguing a state law issue, to wit: that O.R.C. §2945.25(C) imposes a stricter standard for excusing a potential juror for cause than does *Witt*. As such, Mr. McGuire's Ground 15 is not cognizable in this habeas action and should be overruled.

In any event, as noted above, in *Roe,* 41 Ohio St.3d at 21, the Ohio Supreme Court rejected the argument that O.R.C. §2945.25(C) imposes a higher standard than the one set forth in *Witt*. This amounts to a determination that Ohio has not created a liberty interest by enacting this statute which is higher than the federal standard.

Whereas an appellate court on habeas review decides federal law questions *de novo*, the federal reviewing court is generally bound by state court interpretations of state law. *Vroman v. Brigano*, 346 F. 3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F. 3d 731, 735-36, (6th Cir. 1999); *Duffel v. Dutton,* 785 F. 2d 131, 133 (6th Cir. 1986). Accordingly, Mr. McGuire's state law argument is not well taken.

### Ground 16

**A Capital Defendant's right to reliable sentencing is violated when the trial court refuses to instruct the jury that it may consider mercy in its penalty phase deliberations. This violates the Eighth and Fourteenth Amendments.**

#### State court opinion

Mr. McGuire raised this issue in his Proposition of Law Fourteen in his direct appeal

to the Ohio Supreme Court. *See McGuire,* 80 Ohio St.3d at 407-08. In addressing Proposition of

Law Fourteen, the Ohio Supreme Court stated:

> Appellant has raised eighteen propositions of law for our
> consideration, which we have fully reviewed according to R.C.
> 2929.05(A). ... However, pursuant to *State v. Poindexter* (1998), 36
> Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily
> reject, without discussing, the merits of a number of appellant's
> propositions of law, as they involve settled issues. (Propositions of
> Law Three, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen,
> Seventeen, and Eighteen.)

*McGuire,* 80 Ohio St.3d at 394.

As already noted, in *Poindexter,* the Ohio Supreme Court held that when it has

considered and decided an issue of law in a capital case and the issue is raised anew in a subsequent

capital case, it is proper for it to summarily dispose of the issue in the subsequent case. 36 Ohio

St.3d at 3. The Ohio Supreme Court has addressed this precise issue in several cases.

The instruction to the jury in the penalty phase of a capital prosecution to exclude

consideration of bias, sympathy or prejudice is intended to insure that the sentencing decision is

based upon a consideration of the reviewable guidelines fixed by statute as opposed to the individual

juror's personal biases or sympathies. *State v. Lorraine,* 66 Ohio St.3d 414, 417 (1993), *cert.

denied*, 510 U.S. 1054 (1994), *citing State v. Jenkins,* 15 Ohio St.3d 164 (1984). Permitting a jury

to consider mercy, which is not a mitigating factor and thus irrelevant to sentencing, would violate

the well-established principle that the death penalty must not be administered in an arbitrary,

capricious, or unpredictable manner. *Lorraine, supra*, *citing California v. Brown*, 479 U.S. 538, 541

(1987); *Gregg v. Georgia,* 428 U.S. 153 (1976); *Furman v. Georgia,* 408 U.S. 238 (1972).

> The arbitrary result which may occur from a jury's consideration of
> mercy is the exact reason the General Assembly established the
> procedure now used in Ohio. R.C. 2929.03(D)(2) provides that "[i]f

the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury *shall* recommend to the court that the sentence of death be imposed on the offender." (Emphasis added.)  This statutory requirement eliminates the subjective state of mind the issue of mercy generally adds to a jury's deliberation.

*Lorraine,* 66 Ohio St.3d at 417-18.

Mercy, like bias, prejudice, and sympathy, is irrelevant to the duty of the jurors.

*Lorraine, supra.*  Stated differently, mercy is not a mitigating factor.  *State v. Williams,* 99 Ohio

St.3d 439, 469 (2003)(citations omitted).

**Controlling federal law**

The controlling Supreme Court precedent is *California v. Brown,* 479 U.S. 538

(1987).  In that case, the Court found constitutionally unexceptionable a caution to the jury that they

"must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion,

or public feeling."   The plurality found a reasonable juror was unlikely to single out the word

"sympathy" from this list.  Chief Justice Rehnquist wrote:

The Eight Amendment jurisprudence of this Court establishes two separate prerequisites to a valid death sentence.  First, sentencers may not be given unbridled discretion in determining the fates of those charged with capital offenses.  The Constitution instead requires that death penalty statutes be structured so as to prevent the penalty from being administered in an arbitrary and unpredictable fashion.  *Gregg v. Georgia,* 428 U.S. 153 ... (1976); *Furman v. Georgia,* 408 U.S. 238 ... (1972).  Second, even though the sentencer's discretion must be restricted, the capital defendant generally must be allowed to introduce any relevant mitigating evidence regarding his "'character or record and any of the circumstances of the offense.'"*Eddings, supra,* 455 U.S. at 110 ... *quoting Lockett, supra,* 436 U.S. at 604 ... .  Consideration of such evidence is a "constitutionally indispensable part of the process of inflicting the penalty of death."  *Woodson v. North Carolina, supra,* 428 U.S. at 304 ... (opinion of Stewart, Powell, and Stevens, JJ.).  The instruction given by the trial court in

104

this case violates neither of these constitutional principles.

479 U.S. at 541.

The plurality in *Brown* believed that the reasonable juror would hear this instruction "as a directive to ignore only the sort of sympathy that would be totally divorced from the evidence adduced during the penalty phase." *Id.* at 542.

Justice O'Connor concurred, agreeing with the Chief Justice that the case presented squarely the tension between the two death penalty principles he had enumerated[22]. Justice O'Connor expounded on the difference between acceptable evaluation of mitigating evidence and the sort of consideration excluded by the instruction in question as follows:

> In my view, evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse. ... Thus the sentence imposed at the penalty state should reflect a reasoned moral response to the defendant's background, character, and crime rather than mere sympathy or emotion.
> ... [T]he individualized assessment of the appropriateness of the death penalty is a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence.

*Id.* at 545.

The Supreme Court has continued to decline to disapprove of instructions directing jurors not to be influenced by sympathy, mercy, or passion in deciding on the appropriate sentence for the capital defendant. *See Saffle v. Parks,* 494 U.S. 484 (1990). Indeed, a sentencer must *rationally* distinguish between those individuals for whom death is an appropriate sanction and those

---

[22] Justice O'Connor's concurrence was necessary to the decision. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those members who concurred in the judgment on the narrowest grounds. ...'" *Marks v. United States*, 430 U.S. 188 (1977)*, quoting Gregg v. Georgia,* 428 U.S. at 153.

for whom it is not.  *See Spaziano v. Florida,* 468 U.S. 447, 460 (1984)(emphasis supplied).

**Analysis**

Mr. McGuire argues that it was error for the trial court to deny his request to instruct the jury that it was allowed to consider mercy as part of the mitigating factors.  Mr. McGuire's position is that the trial court's refusal to instruct the jury on mercy denied him his right to a reliable and fully individualized capital sentencing hearing in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

During the jury charge conference, Mr. McGuire's counsel said:

... Your Honor, we should also simply ask that you advise the jury that they could come up with their own mitigating factors based upon any of the evidence that was presented to them, not articulated by either the Court of the defense.  Including but not limited to, just simply mercy.

Transcript of Proceedings, Jury Trial, Penalty Phase p. 107.  In response to Mr. McGuire's request, the court said:

...And I have a problem with listing what in my judgment, are all other mitigating factors, none of them being statutory.  And then saying again other mitigating factors.  So, I would deny that.

And with respect to mercy, I don't think it's an accurate statement of the law again.  The jury is supposed to decide, using this balancing test to make their decision.  And I don't see that mercy is one of the other mitigating factors.

*Id.* at 116.

In response to the court's ruling, Mr. McGuire's counsel said:

Mercy is not—to my knowledge has not been accepted as a mitigating factor in the state of Ohio.  That came from a federal case. I believe it was out of Alabama, in which was there some dicta about that being a possibility in the future.

106

*Id.* at 116-17.

The trial court gave the following instruction to the jury.

Remember you must not be influenced by any consideration of sympathy or prejudice. It is your duty to weigh the evidence, to decide the disputed questions of fact, to apply the instructions to your findings and to render your verdict accordingly, In fulfilling your duty as jurors, your efforts must be to arrive at a fair and just verdict. Consider all the evidence, use your common sense and make your findings with intelligence and interest - intelligence and impartiality, and without bias, sympathy, or prejudice so that the State and the Defendant will feel that the case was fairly and impartially tried.

at 136-37.

A jury must, of course, listen sympathetically to the mitigating evidence. That is, they are required to accept as mitigating those factors which the Supreme Court has held are proper to be considered in mitigation, but they may not exercise general sympathy. That ensures that the death penalty is not administered in an arbitrary and unpredictable manner. As noted above, the Supreme Court has declined to disapprove of instructions directing jurors not to be influenced by sympathy, mercy, or passion in deciding on the appropriate sentence for the capital defendant. Indeed, in *Scott v. Mitchell,* 209 F.3d 854, 877-78 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000), the the court determined that a jury instruction almost identical to the one the trial judge gave in this case was  constitutional.

The Ohio Supreme Court's decision with respect to Mr. McGuire's request for a jury instruction on mercy is not contrary to nor an unreasonable application of, clearly established federal law.   Mr. McGuire's Ground 16  is without merit and should be denied.

## **Ground 17**

**The jury was instructed to convict Mr. McGuire upon a strict liability standard.  Mr. McGuire was charged with a specific**

107

**intent crime. This violates the Sixth, Eighth and Fourteenth Amendments.**

### State court opinion

Mr. McGuire raised this issue in his Proposition of Law Fifteen in his direct appeal to the Ohio Supreme Court. *See McGuire,* 80 Ohio St.3d at 408. In addressing Proposition of Law Fourteen, the Ohio Supreme Court stated:

> Appellant has raised eighteen propositions of law for our consideration, which we have fully reviewed according to R.C. 2929.05(A). ... However, pursuant to *State v. Poindexter* (1998), 36 Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily reject, without discussing, the merits of a number of appellant's propositions of law, as they involve settled issues. (Propositions of Law Three, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen.)

*McGuire,* 80 Ohio St.3d at 394.

As already noted, in *Poindexter,* the Ohio Supreme Court held that when it has considered and decided an issue of law in a capital case and the issue is raised anew in a subsequent capital case, it is proper for it to summarily dispose of the issue in the subsequent case. 23 Ohio St.3d at 3.

In capital cases where there is a charge for aggravated murder, juries are instructed as to the definition of "purpose" or "intent". Courts are assisted in formulating their jury instructions by referring to the Ohio Jury Instructions ("O.J.I"). Within the context of aggravated murder, the Ohio Jury Instructions state that a person acts purposely, "when it is his/her specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to [commit the crime charged]."

O.J.I. §503.01(2)(B).[23]

In aggravated murder cases, some courts do not use the "purpose" definition found in the "aggravated murder" instruction, but use the definition of "purpose" contained in the "purpose" section of O.J.I.  That instruction reads:

> A person acts purposely when it is his specific intention to cause a certain result.  It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to [commit the unlawful act]

> When the gist of the offense is a prohibition against conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct.

O.J.I §409.01(2)-(3).[24]

As indicated by the above-cited language, the definition of "purpose" generally and the definition of "purpose" within the aggravated murder instruction, contrast.  O.J.I. recommends that courts use the definition of "purpose" as contained in the aggravated murder charge.  *See,* O.J.I. §503.01(2)(Comment).  Courts have used the general definition of "purpose", including the "gist of the offense" language in cases involving aggravated murder.  *See State v. Carter*, 72 Ohio St.3d 545 (1995)(finding it was proper to use the "gist of the offense" language in jury instructions for aggravated murder).

When an objection is raised on appeal as to the undue persuasiveness of a "gist of the offense" jury instruction in an aggravated murder trial, the Ohio Supreme Court will look to

---

[23] O.J.I. §503.01(3)(B) reads the same now as it did at the time of Mr. McGuire's trial.  *See, e.g.,* O.R.C. §2901.22(A).

[24] O.J.I. §409.01(2)-(3) reads the same now as it did at the time of Mr. McGuire's trial.  *See, e.g., State v. Wilson,* 74 Ohio St.3d 381 (1996).

whether, given the evidence, the jury could have based their decision on the "purpose" language in reaching its result. *State v. Wilson*, 74 Ohio St.3d 381, 393 (1996). If the evidence presented at trial would make the "gist of the offense" language irrelevant, then the instruction will be disregarded. *Id.* Furthermore, the "gist of the offense" instruction does not relieve the state from its burden of proving that a defendant possessed the requisite criminal intent. *State v. Price,* 60 Ohio St.2d 136, 141 (1979).

The "gist of the offense" is codified in the Ohio Revised Code within the definition of "purposeful intent":

> A person acts purposely when it is his specific intention to cause a certain result, or, when the *gist of the offense* is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

O.R.C. §2901.22(A)(emphasis supplied).[25]

The Ohio Supreme Court has also found that within the context of aggravated murder, including the "gist of the offense" language does not impute an unconstitutional character unless the jury could have based their decision on such language and at the discount of other "purpose" language. *Wilson,* 74 Ohio St.3d at 393; *see, also, State v. Bailey,* No. 81498, 2003 WL 1849182 (Ohio App. 8th Dist. Apr. 10, 2003)(the use of "gist of the offense" language in jury instructions for a case involving aggravated murder was not improper and did not make it easier for the jury to find that the defendant committed the crime).

### Clearly established federal law

---

[25] The language of O.R.C. §2901.22 is the same today as it was in 1994, at the time of Mr. McGuire's trial. *See* Oh. St. §2901.22 WESTLAW (law effective prior to July 1, 1996).

In *Tison v. Arizona*, 481 U.S. 137, 157-68 (1987), the Court held that a party who has been shown to demonstrate a reckless indifference to human life when committing a murder possesses a mental state that is just as morally shocking as a party who has specific intent to kill. In determining whether a defendant intended to kill the victim, focusing on "specific intent to kill" alone is too narrow and "is a highly unsatisfactory means of definitively distinguishing the most culpable and dangerous of murderers." *Id.* 157. Therefore, a court can authorize jury instructions in an aggravated murder case that instructs the jury on "purpose" in both a specific intent and a grave indifference to human life standard because both types of intent are morally reprehensible mental states that can result in imposition of capital punishment.

### Analysis

It is not improper or unconstitutional, under either federal or Ohio law, for an Ohio state court to submit jury instructions that define specific intent to include the "gist of the offense" language. As noted above, the inclusion of such language in the jury instruction is not prejudicial to the defendant unless the jury unjustifiably used the "gist of the offense" language and disregarded other language which addressed specific intent. The issue, then, is whether the jury in Mr. McGuire's case convicted him by relying on the "gist of the offense" language to the *exclusion* of the court's instruction on "specific intent" or whether there was sufficient evidence presented at trial upon which the jury could rely to find that Mr. McGuire possessed a specific intent to kill Ms. Stewart in spite of the "gist of the offense" language. This Court concludes that there was sufficient evidence upon which the jury could rely to find that Mr. McGuire possessed a specific intent to kill Ms. Stewart.

First, as noted above, Mr. Baird testified about his conversation with Mr. McGuire

111

which took place on or about December 24, 1989, and in which Mr. McGuire admitted killing Ms.

Stewart:

> Q.  And, what, if anything, did he tell you about the murder?
>
> A.  That he knew about a murder that had happened in Preble County in February and that it was a girl that had been stabbed in the neck.
>
> Q.  What else did [Mr. McGuire] say about it?
>
> A.  That – I – I at that point told him I didn't know anything about it, and that's when he told me that it was a girl and that she had been stabbed in the neck.  And that – I asked him who did it, and he said that him and Jerry Richardson had done it, and he was going to blame it all on Jerry.
>
> A.  He told you that he was going to blame it all on Jerry.
>
> Q.  Yes, he did.  Yes, he did.

Testimony of Shawn Baird, Transcript of Proceedings, Jury Trial, at582-83.

Secondly, Mr. Reeves testified that while he and Mr. McGuire were in custody at the

Madison Correctional facility, Mr. McGuire told him that he had killed Ms. Steward after  he had

sex with her against her will because he didn't want to go to prison for raping a pregnant woman:

> Q.  What, if anything, did Dennis McGuire tell you about this case?
>
> A.  He told me that – first he started talking about his defense, and later on as we was talking he told me that he killed Joy Stewart.
>
> Q.  Did he tell you how he killed her?
>
> A.  Uh he stabbed her and cut her throat.
>
> Q.  And did he tell you how he came to meet up with her?
>
> A.  Uh yes.  He said he was working and cleaning some gutters out, and she come up and asked him – or asked him about some marijuana.  And she – he said he only had enough for a couple of joints, and that he'd smoke them with her.

So I guess they got in the car and started cruising around and he wanted to have sex with her, and she didn't want to, so he did it anyway and then he got all nervous and paranoid because of the way she was acting – acting hysterical.

And so, that's when he slit her throat.

...
Q.  Did he say anything about her medical condition?

A.  Just that she was pregnant.
...

Q.  What'd he say about how she reacted after the sexual act was done?

A.  He said that us she was real hysterical and he knew that if – if he didn't do what he did that he would be in jail for raping a pregnant woman.

Testimony of Willie Reeves, Transcript of Proceedings, Jury Trial at 738-40.

Finally, Dr. Smith, the forensic pathologist and deputy coroner who performed the autopsy on Ms. Stewart, testified as to the severity of the stab wound to Ms. Stewart's neck which "actually cut in half and carotid artery and jugular vein."  Testimony of David Smith, Transcript of Proceedings, Jury Trial, p. 139.

As noted above, this Court concludes that there was sufficient evidence for the jury to conclude that Mr. McGuire had the specific intent to kill Ms. Stewart regardless of the "gist of the offense" language about which Mr. McGuire complains.  The Ohio Supreme Court's decision rejecting Mr. McGuire's claim that the jury convicted him based on a strict liability standard was not contrary to, or an unreasonable application of, clearly established federal law.  Therefore, Mr. McGuire's Ground 17 should be denied.

**Ground 18**

113

**The trial court's definition of purpose relieved the government of its burden to prove that Mr. McGuire purposely caused the death of Ms. Stewart. This violates the Sixth, Eighth and Fourteenth Amendments.**

The jury instructions which Mr. McGuire challenges in this Ground are as follows:

Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.

The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence.

If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause death may be inferred form the use of the weapon.

Proof of motive is not required. The presence or absence of motive is one of the circumstances bearing on purpose.

No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another.

Transcript of Proceedings, Jury Trial, p. 1040.

**State court opinion**

Again, Mr. McGuire raised this issue as Proposition of Law No. XVI on direct appeal and the Ohio Supreme Court rejected his argument without discussion:

Appellant has raised eighteen propositions of law for our consideration, which we have fully reviewed according to R.C. 2929.05(A). ... However, pursuant to *State v. Poindexter* (1998), 36 Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily reject, without discussing, the merits of a number of appellant's propositions of law, as they involve settled issues. (Propositions of

114

Law Three, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen,
Seventeen, and Eighteen).

*McGuire,* 80 Ohio St.3d at 394.

As noted *supra*, in *Poindexter,* the Ohio Supreme Court held that when it has
considered and decided an issue of law in a capital case and the issue is raised anew in a subsequent
capital case, it is proper for it to summarily dispose of the issue in the subsequent case.  23 Ohio
St.3d at 3.

Ohio law provides that "[a] single instruction to a jury may not be judged in artificial
isolation but must be viewed in the context of the overall charge."  *State v. Jones,* 91 Ohio St.3d 335,
348-49, *cert. denied,* 534 U.S. 1004 (2001),  *quoting State v. Price,* 60 Ohio St.2d 136 (1979), *cert.
denied,* 446 U.S. 943 (1980).

The Ohio Supreme Court has, on several occasions, rejected challenges similar to the
one Mr. McGuire has made.

Ohio's standard "purpose" instruction does not create a mandatory rebuttable
presumption of guilt.  *See, State v. Leonard,* 104 Ohio St.3d 54, 77 (2004), *citing State v. Phillips,*
74 Ohio St.3d 72 (1995), *cert. denied,* 517 U.S. 1213 (1996) and *State v. Wilson,* 74 Ohio St.3d 381,
*cert. denied,* 519 U.S. 845 (1996).

A trial court may properly instruct a capital jury that "[a] person acts purposely when
it is the specific intention to cause a certain result.  To do an act purposefully is to do it intentionally
and not accidentally."  *State v. Jackson,* 92 Ohio St.3d 436, 445 (2001).

A trial court may properly instruct a capital jury as follows:

The purpose with which a person does an act or brings about a result
is determined from the manner in which it is done, the means or
weapon used, and all the other facts and circumstances in evidence.

115

> If wound is inflicted upon a person with a deadly weapon in the manner calculated to destroy life or inflict great bodily harm, the purpose to cause the death may be inferred from the use of the weapon.

*State v. Stallings,* 89 Ohio St.3d 280, 291 (2000), *cert. denied,* 534 U.S. 836 (2001).

### Clearly established federal law

A jury instruction may be unconstitutional if it creates a mandatory presumption of guilt if the jury finds that the defendant engaged in certain behavior. *Sandstrom v. Montana,* 442 U.S. 510, 515 (1979). An instruction creates a mandatory presumption when it requires the jury to infer a presumed fact if the state proves certain predicate facts and if the presumed fact is an essential element of the offense charged. *Id.* In determining whether there was a mandatory presumption created, the jury charge must be considered in its entirety. *Cupp v. Naughten*, 414 U.S. 141, 146-47(1973). The potential unconstitutionality of a jury instruction is not dispositive if the instruction is considered in isolation; the unconstitutional character is only conclusive it if remains after consideration of the "context of the charge as a whole." *Francis v. Franklin,* 471 U.S. 307, 315 (1985). The effect of a mandatory presumption could lead a reasonable jury to ignore the prohibition of presumption as to finding reasonable doubt and simply "abide by the mandatory presumption." *Id.* at 322. Thus, the question is "whether the jury charge, considered as a whole, advised a reasonable juror that the prosecution had the burden of proof of the essential elements of the crime of aggravated murder according to Ohio law." *Clark v. Jago*, 676 F.2d 1099, 1102 (6th Cir. 1982), *cert. denied sub nom., Marshall v. Clark,* 466 U.S. 977 (1984).

### Analysis

Mr. McGuire contends that the trial court's instructions created a mandatory presumption by relieving the prosecution of the burden of proof on the scienter element of the

aggravated murder charge.

When viewed in the context of the jury charge as a whole, the instruction which Mr. McGuire challenges did not create a mandatory presumption that would shift the burden of proof. Specifically, the court instructed the jury that "no person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another." Transcript of Proceedings, Jury Trial, p. 1040. In addition, the court instructed the jury that before it could convict Mr. McGuire, it must find that the state proved beyond a reasonable doubt each element of the crime of aggravated murder. *Id.* at 1041. Finally, when the trial court instructed the jury as to "inferences", it explained the permissive nature of any inferences the jury chose to make:

> To infer or to make an inference is to reach a reasonable conclusion of the fact which you may, but are not required to make from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely with you.

*Id.* at 1033.

The Ohio Supreme Court's decision that the trial court's instructions relieved the State of its burden to prove that Mr. McGuire purposely caused Ms. Stewart's death is not contrary to or an unreasonable application of federal law. Mr. McGuire's Ground Eighteen should be denied.

### Ground 19

**The defendant was convicted of an aggravating circumstance that merely repeated the elements of a substantive offense. This violates the Eighth and Fourteenth Amendments.**

#### State court opinion

Mr. McGuire raised this issue in the Ohio Supreme Court as Proposition of Law Seventeen, *McGuire*, 80 Ohio St.3d at 408, and that court rejected his claim without comment:

> Appellant has raised eighteen propositions of law for our

117

> consideration, which we have fully reviewed according to R.C.
> 2929.05(A). ... However, pursuant to *State v. Poindexter* (1998), 36
> Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily
> reject, without discussing, the merits of a number of appellant's
> propositions of law, as they involve settled issues. (Propositions of
> Law Three, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen,
> Seventeen, and Eighteen.)

*McGuire,* 80 Ohio St.3d at 394.

In his direct appeal to the Ohio Supreme Court, Mr. McGuire raised this issue in

Proposition of Law No. XVII. Pursuant to *Poindexter,* when the Ohio Supreme Court has previously

considered and decided an issue of law in a capital case and the issue is raised anew in a subsequent

capital case, it is proper for it to summarily dispose of the issue in the subsequent case. 23 Ohio

St.3d at 3.

In *State v. Jenkins,* 15 Ohio St.3d 164 (1984), *cert denied.,* 472 U.S. 1032 (1985),

the Ohio Supreme Court addressed the question of whether a defendant could be charged with

aggravated murder under Section 2903.01(B) of the Ohio Revised Code accompanied with a capital

specification based upon the aggravating circumstances found in Section 2929.04(A)(7) of the Ohio

Revised Code. The Court reasoned that a Section 2929.04(A)(7) specification would narrow the

class of offenders who had violated Section 2903.01(B) because Section 2929.04(A)(7) does not

contain certain underlying offenses contained in Section 2903.01(B) and requires the State to prove

that the defendant was the principal offender, or if not the principal offender, committed the felony

murder with prior calculation and design. *Id.* n. 17. A defendant need not be the principal offender

and need only act purposely, rather than with prior calculation and design, to be convicted of felony

murder. A broader class of offenders may be convicted of felony murder, therefore, than may be

convicted of a capital specification based on Section 2929.04(A)(7). The Ohio Supreme Court

stated that even if it were to "construe the aggravated conduct of felony murder set forth within R.C. 2903.01(B) as functionally equivalent to the aggravating circumstances under R.C. 2929.04(A)(7), no constitutional infirmities would arise." *Id.* at 178.

After the United States Supreme Court decided *Lowenfeld v. Phelps*, 484 U.S. 231 (1988), the Ohio Supreme Court revisited the issue of whether a capital specification based upon Section 2929.04(A)(7) narrows the class of those charged with felony murder under Section 2903.01(B) who would be eligible for the death penalty. In *State v. Benner*, 40 Ohio St.3d 301 (1988), *cert. denied,* 494 U.S. 1090 (1990)[26], the Ohio Supreme Court specifically reaffirmed its holding in *Jenkins, supra,* and stated that "the aggravating circumstances of R.C. 2929.04(A)(7) and the elements of aggravated murder under Section 2903.01(B) are not duplicative" and, therefore, not constitutionally infirm. *Id.* at 306-07.

**Controlling federal law**

In *Lowenfield, supra,* the United States Supreme Court reaffirmed the proposition that a state's capital sentencing scheme must genuinely narrow the class of individuals eligible for the death penalty as compared to those found guilty of an underlying offense. Additionally, the *Lowenfield* Court determined that "aggravating factors" may be contained in the definition of the crime or in a separate sentencing factor or both. *Lowenfield,* 462 U.S. at 244-46; *see also, Tuilaepa v. California,* 512 U.S. 967, 971-72 (1994)(A trier of fact may sentence a defendant to death after finding an aggravating circumstance at either the guilt or the penalty phase.)

It is entirely within constitutional bounds for Ohio to provide similar definitions for

---

[26] Subsequently, the Sixth Circuit Court of Appeals granted in part and denied in part Mr. Benner's petition for a writ of *habeas corpus. Benner v. Coyle,* Case No. 99-3570, 39 Fed.App. 988 (July 26, 2002). The court granted the writ on Mr. Benner's ineffective assistance of counsel claim.

both "aggravated murder" (in O.R.C. §2903.01(B)) and aggravating circumstances" (in O.R.C. §2929.04(A)(7)).  *Cooey v. Coyle,* 289 F.3d 882, 901 (6th Cir. 2002), *cert. denied,* 538 U.S. 947 (2003).

### Analysis

In his Merit Brief, Mr. McGuire acknowledges that the Sixth Circuit has rejected his position on this issue.  (Doc. 87 at 162).  Accordingly, on the authority of *Cooey, supra,* as well as Mr. McGuire's concession, this Court concludes that the Ohio Supreme Court's decision that the use of an aggravating circumstance which merely repeats an element of the substantive offense does not violate the Eighth and Fourteenth Amendments was not contrary to, or an unreasonable application of, clearly established federal law.  Therefore, Mr. McGuire's Ground 19 should be denied.

### Ground 20

**A trial court must review the entire record and not just the pleadings to complete the review of a petition filed pursuant to Ohio Rev. Code §§2953.21 to 2953.23.**

The Sixth Circuit has expressly held that federal habeas corpus is not the proper place to challenge a state's scheme of post-conviction relief. *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986).  When a prisoner challenges errors or deficiencies in state post-conviction proceedings such claims address collateral matters rather than the underlying state conviction giving rise to the prisoner's incarceration. *Id*. at 247.  Furthermore, the Supreme Court of the United States has held that there is no obligation on the part of the states to provide post-conviction relief remedies. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *United States v. MacCollom*, 426 U.S. 317, 323 (1976).  Stated differently, federal habeas corpus cannot be used to mount challenges to a state's

scheme of post-conviction relief.  *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001), *cert denied,* 535 U.S. 940 (2002). As such, the claim is not cognizable in federal habeas corpus proceedings.

Mr. McGuire's request for relief based on Ground 20 should be denied.

## Ground 21

**The Ohio Death Penalty Scheme Violates the Prohibition Against Cruel and Unusual Punishment in the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.**

Mr. McGuire alleges that the Ohio Death Penalty Scheme is unconstitutional for several reasons:

a.  The Ohio Death Penalty Scheme is applied in an arbitrary and unequal manner;

b.  The Ohio Death Penalty Scheme utilizes unreliable sentencing procedures;

c.  The Ohio Death Penalty Scheme has a lack of individualized sentencing;

d.  The Ohio Death Penalty Scheme bases the death penalty on a lack of felonious intent;

e.  The Ohio Death Penalty Scheme burdens Defendant's right to a jury trial by giving defendants who waive a jury trial a judge with the power to dismiss the specifications in the interest of justice;

f.  The Ohio Death Penalty Scheme mandates the submission of reports and evaluations to the jury;

g. The Ohio Death Penalty Scheme has a defective proportionality review;

h.  The Ohio Death Penalty Scheme provides for a mandatory death sentence;

i.  The Ohio Death Penalty Scheme is vague;

j.  The Ohio Death Penalty Scheme violates international law.

**State court opinion**

Mr. McGuire raised the issue of the constitutionality of Ohio's death penalty scheme in his Proposition of Law Eighteen. *McGuire,* 80 Ohio St.3d at 408. Again, the Ohio Supreme Court rejected that claim without discussion:

> Appellant has raised eighteen propositions of law for our consideration, which we have fully reviewed according to R.C. 2929.05(A). ... However, pursuant to *State v. Poindexter* (1998), 36 Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily reject, without discussing, the merits of a number of appellant's propositions of law, as they involve settled issues. (Propositions of Law Three, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen.)

*McGuire,* 80 Ohio St.3d at 394.

With respect to Mr. McGuire's sub-claim (a), the Ohio Supreme Court has rejected the arguments that the Ohio Death Penalty scheme is applied in an arbitrary and unequal manner on the basis that prosecutors have uncontrolled discretion in seeking the death penalty and because it is applied in a racially discriminatory manner. *State v. Jenkins,* 15 Ohio St.3d 164 (1984), *cert. denied,* 472 U.S. 1032 (1985)[27](prosecutors' discretion); *State v. Steffen*, 31 Ohio St.3d 111 (1987), *cert. denied,* 485 U.S. 916 (1988)(racial discrimination); *see also, State v. Raglin,* 83 Ohio St.3d 253 (1998), *cert. denied,* 525 U.S. 1180 (1999). That court has also rejected the claim that the death penalty is unconstitutional because it is neither the least restrictive punishment nor an effective deterrent. *Jenkins,* 15 Ohio St.3d at 168.

In *Jenkins, supra,* the Ohio Supreme Court rejected the claim that Mr. McGuire raises in sub-claim (b) of this Ground, to wit: that the Ohio death penalty scheme is unconstitutional

---

[27] *Jenkins* was called into question by *Williams v. Coyle,* 260 F.3d 684 (6th Cir. 2001), *cert .denied,* 536 U.S. 947 (2002) on the issue of jury unanimity as to the recommendation of a life sentence.

because it has impermissibly devalued the importance of mitigation in that the scheme does not require the state to prove the absence of mitigating factors.  *See also, State v. Lawrence,* 44 Ohio St.3d 24 (1989).

In sub-claim (c), Mr. McGuire alleges that the Ohio death penalty scheme is unconstitutional because it lacks a process for individualized sentencing by requiring proof of aggravating specifications simultaneously with proof of guilt.   The Ohio Supreme Court has rejected that argument.  *Jenkins,* 15 Ohio St.3d at 178.

Next, Mr. McGuire argues, in sub-claim (d), that the Ohio death penalty scheme is unconstitutional because it does not require that the intent to commit a felony precede the murder. The Ohio Supreme Court has rejected this argument in *State v. Biros,* 78 Ohio St.3d 426, *cert. denied,* 522 U.S. 1002 (1997); *see also, State v. Williams,* 74 Ohio St.3d 569, *cert. denied,* 519 U.S. 835 (1996).

Mr. McGuire argues in sub-claim (e) that the Ohio death penalty scheme is unconstitutional because it burdens a defendant's right to a jury trial by giving defendants who waive a jury trial a judge with the power to dismiss the specifications in the interest of justice.  In *State v. Buell,* 22 Ohio St.3d 124, *cert. denied,* 479 U.S. 871 (1986), the Ohio Supreme Court rejected this argument; *see also, State v. Bedford,* 39 Ohio St.3d 122 (1988), *cert. denied,* 489 U.S. 1072 (1989).

In sub-claim (f), Mr. McGuire argues that the Ohio death penalty scheme is unconstitutional because it mandates the submission of reports and evaluations to the jury. Specifically, Mr. McGuire takes issue with O.R.C. §2929.03(D)(1) requiring the submission of the pre-sentence investigation report and mental evaluation to the judge or jury once requested by a

capital defendant.  The Ohio Supreme Court rejected this argument in *State v. Williams,* 23 Ohio St.3d 16 (1986), *cert. denied,* 480 U.S. 923 (1987); *see also,  Buell*, *supra.*

Mr. McGuire argues in sub-claim (g) that Ohio's death penalty scheme is unconstitutional because it provides for a defective proportionality review.  Mr. McGuire's position is that the system is flawed because it does not provide for a written life recommendation report, because there are substantial doubts as to the adequacy of the information received after guilty pleas to lesser offenses or after charge reductions at trial, because it does not require the jury or sentencing panel to identify mitigating factors, and because it does not provide for a meaningful manner in which to distinguish those capital defendants who are deserving of the death penalty and those who are not.  The Ohio Supreme Court has rejected this argument in *State v. Steffen,* 31 Ohio St.111 (1987), *cert. denied,* 485 U.S. 916 (1988); *see also, State v. LaMar*, 95 Ohio St.3d 181, *cert. denied*, 537 U.S. 1057 (2002).

Next, Mr. McGuire argues in sub-claim (h) that Ohio's death penalty scheme is unconstitutional because it provides for a mandatory death sentence.  Mr. McGuire's position is that the scheme fails to provide the sentencing authority with an option to choose a life sentence when there are only aggravating circumstances.  Mr. McGuire's argument has been rejected by the Ohio Supreme Court in *Buell, supra.*; *see also, Jenkins,* 15 Ohio St.3d at 167-69.

Mr. McGuire alleges in sub-claim (i) that the Ohio death penalty scheme is unconstitutional because O.R.C. §2929.03(D)(1) renders O.R.C. §2929.04(A) and (B) facially vague.  Mr. McGuire's position is that the statutory scheme gives the sentencer open-ended discretion to rely on the nature and circumstances of the offense to impose the death penalty when the nature and circumstances of the offense are statutory mitigating factors under O.R.C.

124

§2929.04(B). The Ohio Supreme Court rejected this argument in *State v. McNeill*, 83 Ohio St.3d 438 (1998), *cert. denied,* 526 U.S. 1137 (1999); *see also, State v. Gumm,* 73 Ohio St.3d 413 (1995), *cert. denied,* 516 U.S. 1177 (1996).

In sub-claim (j), Mr. McGuire claims that the Ohio death penalty scheme is unconstitutional because it violates international law. The Ohio Supreme Court rejected that argument in *State v. Phillips,* 74 Ohio St.3d 72 (1995), *cert. denied,* 517 U.S. 1213 (1996); *see also, State v. Ashworth,* 85 Ohio St.3d 56 (1999), *cert. denied,* 517 U.S. 1213 (1996).

### Clearly established federal law and Analysis

In *United States v. Armstrong,* 571 U.S. 456, 464 (1996), the Court determined that if a prosecutor has probable cause to believe that an accused committed an offense, the decision whether to prosecute and what charges to file or bring before the grand jury generally rests entirely within the prosecutor's discretion. Pursuant to the equal protection application of the Due Process Clause of the Fifth Amendment, a prosecutor's decision whether to prosecute may not be based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *Id.* at 457 (citation omitted). In order to prove a selective prosecution claim, the claimant must show that the prosecutorial policy had a discriminatory effect and was motivated by a discriminatory purpose. *Id.* To establish discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted. *Id.*(citations omitted). The fact that a prosecutor has the power not to charge capital felonies does not indicate that the prosecutor exercised his discretion in a standardless manner that violates the Constitution. *See Gregg v. Georgia,* 428 U.S. 153, 187 (1976). In addition, the United States Supreme Court has determined that a death penalty scheme is not unconstitutional on the basis that it is neither the least restrictive not an effective

means of deterrence. *Gregg, supra*. Based on the authority of *Armstrong* and *Gregg,* the arguments that Mr. McGuire raises in sub-claim (a) are not well taken.

The United States Supreme Court has never held that the state must affirmatively structure in a particular way the manner in which juries consider mitigating evidence. *Buchanan v. Angelone,* 522 U.S. 269, 276 (1998). In addition, this Court notes that the Ohio statutory scheme, specifically O.R.C. §2929.03(D)(1), clearly places the burden of proving by a preponderance of the evidence the existence of any mitigating factors on the defendant in a capital case. This does not offend the federal constitution. *See, Walton v. Arizona,* 497 U.S. 636, 649-51 (1990). Based on the authority of *Buchanan* and *Walton,* Mr. McGuire's arguments in sub-claim (b) are not well taken.

The argument that Mr. McGuire raises in sub-claim (c) was rejected by this Court in *Zuern v. Tate,* 101 F.Supp. 948 (S.D. Ohio 2000), *rev'd in part and aff'd in part,* 336 F.3d 478 (2003)[28] on the authority of *Tuilaepa, supra.*

The federal constitution does not require either a conscious desire to kill or premeditation before capital punishment may be imposed. *See Tison,* 481 U.S. at 158. On the authority of *Tison*, Mr. McGuire's argument that he raises in sub-claim (d) fails.

The Supreme Court as a whole has held that a guilty plea is not invalid merely because it is induced by avoidance of a more serious penalty, including death, which could occur after trial. *Brady v. United States*, 397 U.S. 742 (1970); *see also, Corbitt v. New Jersey,* 439 U.S. 212 (1978). The argument that Mr. McGuire raises in sub-claim (e) is rejected on the authority of *Brady*, *supra,* and *Corbitt, supra.*

In *Jamison v. Collins*, 100 F.Supp.2d 647 (S.D. Ohio 2000), *aff'd,* 291 F.2d 200 (6th

---

[28] The Sixth Circuit reversed the Court's granting of Mr. Zuern's Petition for a Writ of *Habeas Corpus* on a *Brady* [*v. Maryland,* 373 U.S. 83 (1963)] issue.

Cir. 2002), the court addressed the issue which Mr. McGuire raises in sub-claim (f):

> Under Ohio law, the right to present mitigating evidence during the penalty phase of a capital trial belongs to the capital defendant. *See* Ohio Rev. Code § 2929.04(B). Neither the trial court nor the prosecutor may comment on the mitigating factors listed in § 2929.04(B) that the defendant does not raise during the penalty phase. *See State v. DePew*, 38 Ohio St.3d 275, 289, 528 N.E.2d 542, 557 (1988). Nonetheless, if a defendant relies on § 2929.03(D)(1) to gather mitigating evidence, the reports thereby prepared are presented to the jury and the judge without any redaction of irrelevant or prejudicial information. Use of this provision, then, essentially takes away from the defendant the right to channel the mitigating evidence described in § 2929.04(B).
>
> Although the provision is troubling to this Court, we cannot hold that Ohio's death penalty scheme is unconstitutional because of it. We reach this conclusion based on the fact that a defendant is not required to request a pre-sentence investigation report or a mental examination. *See* Ohio Rev. Code § 2929.03(D)(1); *Buell*, 22 Ohio St.3d at 138, 489 N.E.2d at 808-809. In addition, the Court notes that Ohio Revised Code § 2929.024 allows a trial court to provide funds to an indigent defendant for investigative services, experts, and other services necessary in the preparation of a defense. Therefore, an indigent defendant is not required to resort to § 2929.03(D)(1). *Cf. State v. Esparza*, 39 Ohio St.3d 8, 16-18, 529 N.E.2d 192, 200-203 (1988) (Brown J., dissenting). For these reasons, we conclude that § 2929.03(D)(1) is not unconstitutional.

*Id.* at 764. The Sixth Circuit rejected the same argument in *Byrd v. Collins,* 209 F.3d 486 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001). Therefore, on the authority of *Jamison, supra,* and *Byrd, supra,* this Court rejects the arguments that Mr. McGuire has raised in sub-claim (f).

In *Coleman v. Mitchell,* 268 F.3d 417 (6th Cir. 2001), *cert. denied sub nom Coleman v. Bagley,* 535 U.S. 1031 (2002), on the authority of, *inter alia*, *McClesky v. Kemp*, 481 U.S. 270 (1987), the Sixth Circuit rejected a challenge to Ohio's proportionality review scheme similar to the one Mr. McGuire raises on sub-claim (g). On the authority of *Coleman* and *McClesky*, Mr. McGuire's claim in sub-claim (g) is not well taken.

127

The claim that Mr. McGuire raises in sub-claim (h), that Ohio's death penalty scheme is unconstitutional because it fails to provide the sentencer with a "life sentence" option when there are only aggravating circumstances, fails under *Blystone v. Pennsylvania*, 494 U.S. 299, 305 (1990), and *Boyde v. California*, 494 U.S. 370, 377 (1990).  Similarly, this Court has stated that "there is no constitutional impediment to a state enacting a capital punishment statute which mandates the imposition of the death penalty, when the state has proved, beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating factors." *Zuern*, 101 F. Supp.2d at 987.

In *Tuilaepa,* 512 U.S. at 973-80, the Court rejected a claim of unconstitutional vagueness similar to the one that Mr. McGuire raises in sub-claim (i).  Therefore, on the authority of *Tuilaepa*, and the cases cited therein, Mr. McGuire's claim in sub-claim (i) is not well taken.

Mr. McGuire's arguments in support of sub-claim (j) relate to international treaties to which the United States is a party.  The Supremacy Clause provides, in part, that "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land, and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const, art VI, cl.2.  The United States, however, is not party to any treaty that prohibits capital punishment, *per se*, and total abolishment of capital punishment has not yet risen to the level of customary international law.  *See United States v. Bin Laden*, 126 F.Supp. 290, 294 (S.D.N.Y. 2001).  To the extent that these agreements ban cruel and unusual punishment, the United States has included express reservations preserving the right to impose the death penalty within limits of the United States Constitution.  *See Buell v. Mitchell*. 274 F.3d 337, 372 (6th Cir. 2001); *Jamison,* 100 F.Supp.2d at 766.  Stated differently, international law does not preclude the State of Ohio from establishing and carrying out a capital punishment

scheme and therefore its death penalty is not unconstitutional as a violation thereof. *See Buell,* 274 F.3d at 371-76.  Mr. McGuire's claim is sub-claim (j) fails.

The Ohio Supreme Court's determination that the Ohio death penalty scheme is not unconstitutional is not contrary to, nor an unreasonable application of, clearly established federal law and therefore Mr. McGuire's Ground 21 should be overruled.

**Conclusion**

It is therefore recommended that Petitioner Dennis McGuire's Amended Petition for *Writ of Habeas Corpus,* (Doc. 28), be dismissed with prejudice

November 5, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d

435 (1985).