# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DENNIS B. McGUIRE,

                 Petitioner,          :     Case No. 3:99-cv-140

   - vs -                              District Judge Susan J. Dlott
                                          Chief Magistrate Judge Michael R. Merz

BETTY MITCHELL, Warden,

                 Respondent.        :

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

       This capital habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 94) to the Magistrate Judge's Report and Recommendations recommending that the Petition be denied on the merits (Doc. No. 91). Respondent has responded to the Objections (Doc. No. 95) and Petitioner has, with the Court's permission, filed a Reply in support of the Objections (Doc. No. 98).

       The General Order of Reference for the Dayton location of court permits the Magistrate Judge to reconsider decisions or reports and recommendations when objections are filed.

       In the Amended Petition, Mr. McGuire pled twenty-one Grounds for Relief (Doc. No. 28). In his Merit Brief, Mr. McGuire abandoned Grounds 1, 4, 7, and 21(k). He now objects only to the Magistrate Judge's recommended disposition of Grounds 3, 5, 9, 10, and 11; he expressly abandons Grounds 2, 6, 12, 13, 14, 15, 16, 19, 20, and the remainder of 21. Although there is no express abandonment of Grounds 8, 17, and 18, Petitioner has made no objections to the recommended dismissal of these claims and has thus waived any objection. *See United States v. Walters*, 638 F.

1

2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

## Ground Three

Ground Three was pled in the Amended Petition as follows:

> Mr. McGuire was not permitted to introduce evidence showing that the victim's husband had anal intercourse with her and thus the semen could have come [from] two sources rather than a single source. The DNA opinion that Mr. McGuire was the source of the semen depended on the assumption that there was only a single source for the semen. His conviction and sentence violate the Eighth and Fourteenth Amendments.

(Doc. No. 28).

During investigation of the victim, Joy Stewart's, death, her husband told Preble County Coroner's Investigator David Lindloff that he had had anal intercourse with his wife three or four days before she was murdered and ejaculated in her rectum during that act.  Petitioner's attempt to introduce this statement through Mr. Lindloff was denied on the grounds it was hearsay.[1]  The Ohio Supreme Court affirmed and the Magistrate Judge recommended denying relief because the Ohio Supreme Court's decision was not an unreasonable application of clearly established federal law.

Petitioner had argued in his first proposition of law in the Ohio Supreme Court that exclusion of Kenneth Stewart's statement had denied him due process under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).  The Ohio Supreme Court decided:

> Chambers held that the hearsay rule should not be mechanistically applied, and an excessively strict application of the hearsay rule that excludes highly reliable evidence may deny an accused due process. However, unlike Chambers, these facts indicate that the excluded hearsay statement in this case is not highly reliable evidence.

---

[1]By the time of trial, Mr. Stewart was unavailable because he had committed suicide.

2

*State v. McGuire*, 80 Ohio St.3d 390, 400 (1997).

In *Chambers*, a man named Gabe McDonald had admitted committing the murder with which Chambers was charged to three other persons on separate occasions shortly after the victim's death.  He later repudiated these admissions.  The trial court refused to allow Chambers to call McDonald on cross-examination under the common law rule that one may not impeach one's own witness, the so-called vouching rule.  It also refused to allow Chambers to call the three people to whom McDonald had confessed on the grounds their testimony of his confession would have been hearsay.  The United States Supreme Court condemned the witness voucher rule as "archaic, irrational, and potentially destructive of the truth-gathering process," citing Morgan, McCormick, and Wigmore, the three giants of evidence law before Weinstein.  Mississippi common law recognized the hearsay exception for statements against pecuniary interest, but did not extend the exception to statements against penal interest.  The Court noted that most States still accepted that distinction, but that the then-newly-proposed Federal Rules of Evidence would not, i.e., they would allow statements against penal interest.  While it did not go so far as to hold that the exception for statements against penal interest was constitutionally mandated, it held that McDonald's statements should have been admitted:

> The hearsay statements involved in this case were originally  made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. First, each of McDonald's confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other evidence in the case -- McDonald's sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon. The sheer number of independent confessions provided additional corroboration for each. Third,

3

> whatever may be the parameters of the penal-interest rationale, each confession here was in a very real sense self-incriminatory and unquestionably against interest. See United States v. Harris, 403 U.S. 573, 584 (1971); Dutton v. Evans, 400 U.S., at 89. McDonald stood to benefit nothing by disclosing his role in the shooting to any of his three friends and he must have been aware of the possibility that disclosure would lead to criminal prosecution. Indeed, after telling Turner of his involvement, he subsequently urged Turner not to "mess him up." Finally, if there was any question about the truthfulness of the extrajudicial statements, McDonald was present in the courtroom and was under oath. He could have been cross-examined by the State, and his demeanor and responses weighed by the jury. See California v. Green, 399 U.S. 149 (1970). The availability of McDonald significantly distinguishes this case from the prior Mississippi precedent, Brown v. State, supra, and from the Donnelly-type situation, since in both cases the declarant was unavailable at the time of trial. (citations omitted)

410 U.S. at 300-301. The Court concluded that it was establishing "no new principles of constitutional law," but that the exclusion of McDonald's admissions to others, coupled with the refusal to permit Chambers to call McDonald, had deprived Chambers of a fair trial. *Id*. at 302-303.

In this case, Stewart's statement to Lindloff that he had had completed anal sex with his wife three or four days before she was murdered is readily distinguishable from the statements in *Chambers*.

First of all, Stewart's statements were not in any sense spontaneous. Although relatively close in time to the murder, they were made to a law enforcement investigator who was investigating this offense at a time when, according to Petitioner, Stewart knew he was under suspicion for the crime. (E.g., his truck had been searched, he was formally interrogated, etc.) Contrary to Petitioner's suggestion,[2] mere proximity in time to the offense is not sufficient by itself to prove

_____

[2]See Objections, Doc. No. 94, at 17, n. 89, *citing State v. Spirko*, 59 Ohio St. 3d 1, 30, 570 N.E. 2d 229, 260 (1990). *Spirko* is cited for the proposition that a statement made the day after a murder was spontaneous. The Magistrate Judge is unable to find any such holding in

spontaneity.

The second *Chambers* factor is whether there is other evidence corroborating the statement. In this case there is some such evidence – sperm was found in the victim's rectum and Stewart could not be excluded as **a** donor of that sperm.  However, much of the evidence argued by Petitioner in his Objections as corroborating the statement is merely not inconsistent with Stewart's being the offender, as opposed to being a donor of some of the sperm found.  For example, the evidence that Thomas Fligor thought he saw the victim get into a brown pick-up truck and that Stewart owned a brown pick-up does not corroborate his statement about having anal sex with her.  The evidence that Ms. Stewart's clothing at the death scene was less disheveled than might have been expected in a rape situation is consistent with her having known the offender, but it does not corroborate Stewart's statement.  When the non-corroborating but consistent-with-guilt evidence is put to one side, as it should be in evaluating corroboration, the corroboration evidence here is much less weighty than was available in the *Chambers* case.

The third *Chambers* factor, that the statement be "in a very real sense self-incriminatory and unquestionably against interest," is not present here at all.  Petitioner claims the statement was against Stewart's penal interest because he was a suspect at the time and his admission "tended to show that Stewart was **the source** of the semen that was used to indict McGuire. . . ." (Objections, Doc. No. 94 at 15).  The rationale for admissions against penal interest is that a person would not lie to incriminate himself or herself.  To satisfy that rationale, the person must have perceived that the statement was self-incriminatory, but that is not true for Stewart's statement.  He could well have seen his statement about anal sex three or four days before the murder as exculpatory – explaining

---

*Spirko,* at least at the pages cited by Petitioner's counsel.

why his semen could have been found in her rectum as a result of purely consensual sex.

This is particularly true given the DNA testimony.  No witness testified that McGuire could be excluded as a source of the sperm.[3]  The only testimony about Stewart or Richardson (the person whom McGuire tried to implicate) was that they could not be excluded if there was more than one source of the semen.  Petitioner's argument that the statement tended to show Stewart was **the** source is simply not correct; at best, it tended to show he was **a** source (and an innocent one).

Finally, Petitioner claims he satisfies the fourth *Chambers* factor because Stewart was not present to be called to testify.  That formulation turns the fourth *Chambers* factor on its head.  There the Supreme Court relied in part on the fact that McDonald was present and so could be examined about the truthfulness of his prior admissions.  (See quotation from *Chambers, supra.*)

In sum, the Ohio Supreme Court decision here is not an unreasonable application of *Chambers* and therefore Petitioner's objection on this basis is not well taken.

Petitioner also asserts that exclusion of the Lindloff testimony violated his constitutional right to present a defense as guaranteed by *Gardner v. Florida*, 430 U.S. 349 (1977).  *Gardner* provides no analysis or basis different from *Chambers* for admitting evidence in defense which is otherwise excludeable under the usual rules of evidence.

Petitioner's Objection on Ground Three is not well taken.

## Ground Five

---

[3]In an effort to prove in this Court that he was not a source of the semen found in Ms. Stewart's rectum, Petitioner requested and the Court granted new DNA testing (Doc. Nos. 39, 50, 69, 72, 73).  The results of the testing have not been admitted in evidence in this proceeding.

Petitioner's Fifth Ground for Relief was pled as follows:

> The jury was not instructed in a manner that allowed them to take
> into consideration McGuire's history, character and background.
> Thus his sentence violates the Eighth and Fourteenth Amendments.

(Quoted in Objections, Doc. No. 94, at 20.)

In the Report and Recommendations, the Magistrate Judge found this claim was procedurally defaulted because it was available but had not been raised on direct appeal to the Ohio Court of Appeals and that Petitioner also had not presented excusing cause and prejudice (Report and Recommendations, Doc. No. 91, at 38-39).

In his Objections, Petitioner essentially admits that the merits claim – failure to give the proper jury instruction – was not raised on direct appeal. He asserts, however, that it was ineffective assistance of appellate counsel not to raise this issue. He also asserts, in the alternative, that he can show other cause for omitting this claim on direct appeal and prejudice resulting from that omission. However, no other cause – aside from ineffective assistance of appellate counsel – is ever suggested in the Objections.

Ineffective assistance of appellate counsel can be an excusing cause to avoid a state procedural default rule, but only if the ineffective assistance of appellate counsel claim is properly presented to the state courts in the first instance. *Edwards v. Carpenter,* 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000). The record shows that Mr. McGuire did appropriately present this claim of ineffective assistance of appellate counsel to the Ohio Supreme Court which ruled on it as follows:

> McGuire also complains that appellate counsel did not assign as error
> the trial court's failure to instruct the jury in mitigation on the nature

7

and circumstances of the offense;  the history, character, and background of the offender;  and any other relevant factors.  The court erred in not giving this instruction.  The court did, however, give a list of specific factors for the jury to consider under R.C. 2929.04(B)(7).  The only particular factor McGuire now claims that the jury could not consider under this list is McGuire's history of marijuana use.  Under the circumstances of this case, reasonable appellate counsel could have decided that a history of marijuana use was of such little mitigation that the error in instructing the jury was harmless.

*State v. McGuire*, 80 Ohio St. 3d 390, 398, 686 N.E. 2d 1112, 1119 (1997).

The test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)(constitutionally deficient performance plus prejudice) applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259 (2000); *Burger v. Kemp,* 483 U.S. 776, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987).  An appellate attorney need not advance every argument, regardless of merit, urged by the appellant.  *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made.  *See Smith v. Murray*, 477 U.S. 527, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986).  However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F. 3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F. 3d 430, 441 (6th Cir. 2003);  *Lucas v. O'Dea*, 179 F. 3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F. 3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those

errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F. 3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F. 3d 155, 161-62 (6th Cir. 1994). Counsels' failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F. 3d 688 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F. 3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F. 3d 854, 880 (6th Cir. 2000)(*citing Strickland*). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented. *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F. 2d 644, 646 (7th Cir. 1986).

For cases filed after adoption of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), as this one was, a federal court reviewing a state court decision on a federal constitutional question must defer to the state court decision unless it is contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. §2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Bell v. Cone*, 535 U.S. 685, 122 S. Ct. 1843, 1849-50, 152 L. Ed. 2d 914 (2002); *Brown v. Payton,* 544 U.S. 133, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005).

Thus the question before this Court on the Fifth Ground for Relief is whether the Ohio Supreme Court's determination that failure to raise the improper jury instruction on direct appeal was not ineffective assistance of appellate counsel is an unreasonable application of clearly established federal law.  Petitioner does not argue his Objection in these terms.  He points to no United States Supreme Court precedent holding that failure to argue error in not instructing a jury

that it could consider a history of drug abuse constitutes ineffective assistance of counsel. He also points to no Ohio law holding that such an assignment of error would have been a "dead-bang winner." He also does not attempt to show why this assignment of error would have been stronger than the assignments of error actually raised on direct appeal. *Compare Smith v. Robbins, supra.*

Instead, Petitioner argues at length what amounts to the merits of this assignment of error – how mitigating the history of marijuana use would have been if the jury had been able to consider it.[4] That is material to determine whether omission of this assignment of error was prejudicial, but not to show the first prong of *Strickland* – that the omission was constitutionally deficient.

Petitioner notes that "[t]he Sixth Circuit recently affirmed relief on the merits of a claim raised in the state courts as ineffective assistance of appellate counsel," citing *Franklin v. Anderson*, 434 F 3d 412 (6th Cir. 2006). In *Franklin*, this Court found that the timeliness provisions Ohio App. R. 26(B) were not an adequate and independent state ground of decision so as to preclude an ineffective assistance of counsel claim, relied upon a finding of ineffective assistance of appellate counsel to excuse default in presenting a biased juror claim on direct appeal, and then found that allowing the biased juror to sit was a structural error requiring the writ. The Sixth Circuit affirmed. It is important to note, however, that *Franklin* was a pre-AEDPA case and therefore deference to the state court decisions of constitutional questions was not required. *See Franklin*, 434 F. 3d at 417.

Because Petitioner has not shown that the Ohio Supreme Court's decision on his ineffective assistance of counsel claim as it relates to this omitted assignment of error on direct appeal is an

---

[4]The Court notes that all of the history of marijuana use relied on was in fact in evidence and the jury was not instructed to disregard it. Instead, the claim is that the jury was not specifically instructed to consider it.

unreasonable application of clearly established federal law, this Court must defer to it.  Therefore

Petitioner's Fifth Ground for Relief remains procedurally defaulted.


### Ground 9

Petitioner's Ninth Ground for Relief was pled as follows:

> The court made numerous improper evidentiary rulings: the government was permitted to introduce gruesome and cumulative photographs, improper opinion testimony, improper rebuttal testimony; and Mr. McGuire was not permitted to present evidence that someone else may have committed this offense, and finally the jury was permitted to have an audio tape during its deliberations. These cumulatively violate the Fifth, Sixth, Eighth and Fourteenth Amendments.

(Quoted in Objections, Doc. No. 94, at 36.)

In the Report and Recommendations, the Magistrate Judge recommended dismissing the

various sub-claims made under this Ground for Relief as follows:

1.    Admission of testimony of Willie Reeves - procedurally defaulted.

2.    Admission of testimony of Nancy Dinkins - procedurally defaulted.

3.    Failure to allow Joseph Goodwin to testify that Kenneth Stewart knew his wife, the victim, was smoking marijuana and that he didn't want her doing that while she was pregnant - testimony properly excluded as hearsay; alternatively, any error in excluding it was harmless.

4.    Allowing the jury to hear the audiotape of McGuire's statements to Deputy Swihart - no error.

The Magistrate Judge has no additional analysis to offer on this Ground for Relief beyond

what is already in the original Report and Recommendations.

11

**Ground Ten**

Petitioner's Tenth Ground for Relief is pled as follows:

> Mr. McGuire's intermediate-appellate counsel's conduct of the case
> fell below the standard of care. This violates the Sixth, Eighth, and
> Fourteenth Amendments.

(Quoted in Objections, Doc. No. 94, at 53.)

The standard for deciding an ineffective assistance of appellate counsel claim is set forth

above under Ground Five.

Petitioner raised twelve sub-claims in this Ground for Relief.  He had previously raised

ineffective assistance of intermediate appellate counsel in the Ohio Supreme Court; that court's

disposition of the claim is set forth verbatim in the Report and Recommendations (Doc. No. 91 at

64-68.)  All twelve sub-claims were rejected on the merits, mostly because the asserted underlying

error would have been unlikely to be successful on appeal. *Id*. at 68-78.

In his Objections, Petitioner focuses on four of the sub-claims.

First of all, he asserts counsel were ineffective for failing to argue that the evidence was

constitutionally insufficient.  An allegation that a verdict was entered upon insufficient evidence

states a claim under the Due Process Clause of the Fourteenth Amendment to the United States

Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *In re

Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368  (1970); *Johnson v. Coyle*, 200 F. 3d 987,

991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F. 2d 792, 794 (6th Cir. 1990)(en banc).  In order for a

conviction to be constitutionally sound, every element of the crime must be proved beyond a

reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319.  Petitioner told law enforcement officers facts about the crime which were very unlikely to be known to someone who was not present, e.g., how the wounds were inflicted and where the murder weapon could be found.  In addition, he semen was found in the victim's rectum.  There is absolutely no doubt that someone stabbed Joy Stewart to death.  Since the jury knew all those facts, it is very unlikely the Court of Appeals would have found the evidence insufficient.

Aside from this first claim, Petitioner asserts as ineffective assistance of appellate counsel the failure to raise the underlying claims which are made in his Fifth, Ninth, and Third Grounds for Relief.  No additional analysis is needed here beyond what is given above.

Petitioner's Objections on Ground Ten are not persuasive.

## Ground Eleven

> The government failed to introduce sufficient evidence of Rape. Thus Mr. McGuire was ineligible for consideration for a death sentence. This violates the Eighth and Fourteenth Amendments.

(Quoted in Objections, Doc. No. 94, at 56.)

The Ohio Supreme Court decided this claim on the merits, applying the correct standard enunciated in *Jackson v. Virginia, supra*.  For the reasons set forth at length in the original Report

13

and Recommendations (Doc. No. 91 at 78-85), that court's decision was not an unreasonable application of *Jackson v. Virginia.*

## Conclusion

Having reconsidered the case in light of Petitioner's Objections, the Magistrate Judge again concludes that Petitioner has not been sentenced to death in violation of the United States Constitution and again respectfully recommends the Petition be denied with prejudice.

April 25, 2006.

s/ Michael R. Merz
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).