IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dennis McGuire,                          :
                                          :   Case No. 3:99-CV-140
                   Petitioner,            :
                                          :   District Judge Susan J. Dlott
         v.                               :
                                          :   ORDER DENYING AMENDED
Betty Mitchell,                           :   PETITION FOR *WRIT OF HABEAS*
                                          :   *CORPUS*
                   Respondent.            :

In this case, Chief Magistrate Judge Michael R. Merz has recommended that Petitioner

Dennis McGuire's Amended Petition for *Writ of Habeas Corpus* (doc. 28) be dismissed with

prejudice.  Pending before the Court are Chief Magistrate Judge Michael R. Merz's Report and

Recommendations ("the R&R") (doc. 91), Petitioner's Objections to the R&R (doc. 94),

Petitioner's Reply Objections to the R&R (doc. 96, doc. 98 ), Chief Magistrate Judge Merz's

Supplemental Report and Recommendations ("the Supp. R&R") (doc. 99), and Petitioner's

Objections to the Supp. R&R (doc. 100).  Respondent has filed Memoranda Opposing the

Objections (docs. 95 and 101).  For the reasons that follow, the Court will **OVERRULE**

Petitioner's Objections and **DENY** the Amended Petition for *Writ of Habeas Corpus*.

I.      FACTUAL AND PROCEDURAL HISTORY

A.      Factual Background of the Crime

The Ohio Supreme Court described the facts and circumstances leading to Petitioner

McGuire's indictment, trial, convictions, and sentence of death as follows:

> Dennis McGuire, appellant, was convicted of the kidnapping, rape and aggravated
> murder of twenty-two-year-old Joy Stewart of West Alexandria, Ohio.  He was
> sentenced to death.

1

Joy Stewart was last seen alive on February 11, 1989. That morning, she had breakfast with her neighbors between 9 and 10. She went there alone that morning because her husband, Kenny Stewart, a truck driver, worked that day from approximately 7:00 a.m. to 5:00 p.m. After breakfast, Joy went to visit Juanita Deaton, the mother of her friend Chris Deaton. Mrs. Deaton and her son lived next to each other in a duplex in West Alexandria.

McGuire had been hired by Chris Deaton to clean the ice out of his gutters that day. According to Chris, McGuire started around 9 or 10 a.m., and finished around noon. Mrs. Deaton testified that Joy arrived at around 9:30 or 10:00, while McGuire was working.

Mrs. Deaton saw Joy talking to two unidentified males in a dark-colored car before she left. As Joy was leaving, she told Mrs. Deaton that "she was going to catch a ride somewhere," although Mrs. Deaton did not actually see Joy leave in the car. Mrs. Deaton was unsure whether McGuire was one of the men in the car. A few minutes later, however, Mrs. Deaton asked whether McGuire had finished working on the gutters, and her son stated that McGuire had been paid and left.

Jerry Richardson, McGuire's brother-in-law, testified that McGuire later came over to his house that afternoon. While they were in Richardson's garage, Joy came in and said she wanted some marijuana. Richardson further testified that McGuire offered to get her some, and the two left in McGuire's car.

The following day, February 12, two hikers found the body of Joy Stewart in some woods near Bantas Creek. The front of her shirt was saturated with blood. One deputy sheriff at the scene, Larry Swihart, also noted that there appeared to be a "blood wipe mark" on her right arm. The body was taken to the Montgomery County Coroner's Office, where an autopsy was performed. The autopsy revealed that Joy had been stabbed twice. One wound, located above the left collarbone, caused no significant injury. The critical wound was a four-and-a-half-inch-deep cut in the throat, which completely severed the carotid artery and jugular vein. The doctor determined that Joy was alive when she received the wound, and that such a wound could have been caused by a single-edged blade shorter than four and a half inches, due to "how soft and moveable the tissues are in the neck." The autopsy also revealed abrasions around the neck, impressed with the cloth pattern of Joy's shirt.

The coroner's office also took vaginal, oral, and anal swabs. The coroner found an abundant amount of sperm on the anal swab, some sperm on the vaginal swab, and none on the oral swab. The coroner indicated that sperm could be detected in the vagina for days or sometimes weeks after ejaculation; however, sperm in the rectum could be detected for a lesser time "because the environment is fairly hostile for sperm, and * * * a bowel movement * * * usually will purge the

rectum of any sperm."

Investigator David Lindloff of the Preble County Prosecutor's Office investigated the murder, but to no immediate avail. However, in December 1989, Lindloff was notified that McGuire wanted to talk to him about information concerning a murder in Preble County. McGuire was in jail at the time on an unrelated offense and told a corrections officer that he needed to talk to Investigator Lindloff and Deputy Swihart.

Joseph Goodwin, the corrections officer McGuire initially talked to, took appellant to a private room to talk, where McGuire told him that he knew who had killed Joy Stewart. McGuire stated that Jerry Richardson, McGuire's brother-in-law, had killed Joy with a knife, and appellant could lead investigators to it. McGuire explained to Officer Goodwin that Richardson had wanted to have sex with Joy, but she had refused. McGuire claimed that Richardson then pulled a knife on her, and forced her to have oral sex with him. McGuire then said Richardson anally sodomized her because he "couldn't have regular sex with her because she was pregnant." He also said Richardson stabbed her "in the shoulder bone" and "cut her throat."

Based on these details, Goodwin contacted Investigator Lindloff, who talked to McGuire on December 22, 1989. McGuire told Lindloff that Richardson committed the murder, that he stabbed Joy twice in the neck, and that "the first time it didn't go in. He pulled the knife back out and stuck her again." Lindloff was interested, since the fact that Joy had been stabbed twice in the neck and anally sodomized had not been revealed to the public at that time. The appellant also described in detail the area where Joy's body had been found.

McGuire then led Lindloff and deputies to the murder weapon, on a local farm where he and Richardson had occasionally worked. McGuire led the officers to the hayloft and showed them where a knife was hidden behind a beam.

A subsequent audiotaped interview by Deputy Swihart elicited further details from McGuire. McGuire claimed that Richardson choked Joy before stabbing her and wiped his bloody hands off on her, both of which actions were consistent with the state of Joy's body at the crime scene. Again, Swihart felt that these details were significant, since they had never become a matter of public knowledge. Furthermore, McGuire stated that he was pretty sure that Richardson was driving his mother's blue Ford Escort the day of the murder. However, Richardson's mother later testified at trial that she had traded that car in 1988, a year before the murder, and Richardson did not have access to her car on the day of the murder, since she had driven it to work.

While in prison on December 24, 1989, McGuire received a visit from his

3

childhood friend Shawn Baird.  At the time, McGuire told Baird that he knew about a murder that happened in Preble County in February.  When Baird asked who did it, the appellant stated that he and Jerry Richardson had done it, and he was going to blame it all on Jerry.

A fellow inmate at the Preble County Jail, Jack Stapleton, testified that he had overheard a conversation between McGuire and another inmate, in which McGuire claimed that he had seen his brother-in-law rape and murder Joy. However, at one point, McGuire apparently slipped and implicated himself when telling the story.  While describing the murder, Stapleton testified that McGuire "had his hand like this describing [*sic*], telling the guy how she was killed.  And he said I--he goes I mean he.  Stabbed her like this.  Hit a bone.  It didn't kill her. So he stabbed her again."

McGuire was later transferred to Madison Correctional Institute.  An inmate there, Willie Reeves, testified that McGuire told him that while he was cleaning gutters, Joy showed up asking whether McGuire had any marijuana. McGuire offered to share some with her, and they left in his car.  At one point McGuire asked whether she wanted to have sex, and she refused.  McGuire then told Reeves he did it anyway.  He then explained that because she was so pregnant, it was difficult to engage in sex with her, so instead he anally sodomized her.  Joy then became "hysterical," which made McGuire nervous.   He ended up killing Joy for fear that he would go to jail for raping a pregnant woman.

In June 1992, the Montgomery County Coroner's Office sent the vaginal, anal, and oral swabs collected from Joy's body, along with a cutting from her underpants, to Forensic Science Associates, a private laboratory, for DNA testing using the PCR technique. [FN1].  A forensic scientist there compared DNA extracted from the samples with blood samples taken from Dennis McGuire, Jerry Richardson, Joy Stewart, and Joy's husband, Kenny Stewart.  The scientist determined that McGuire could not be eliminated as a source of the sperm. Kenny Stewart and Richardson, however, could be eliminated, unless there were two sperm sources, *e.g.,* multiple assailants.  This was because the sperm analyzed contained a DQ Alpha type 3, 4, with a trace amount of DQ Alpha type 1.1, 2.  McGuire's DNA was the DQ Alpha type 3, 4, whereas Richardson, Stewart, and the victim's DNA was the DQ Alpha type 1.1, 2.  The forensic scientist testified that the trace amount of 1.1, 2 could have resulted either from Joy's epithelial cells taken in the swab, or from a secondary sperm source.  The sperm DNA analyzed had characteristics that appear in about one in one hundred nineteen males in the white population.

> FN1. The FBI crime laboratory had tried to perform testing in 1989.  However, the FBI at the time used the RFLP technique, which requires a greater

4

amount of genetic material.   The FBI was unable to
extract sufficient DNA from the sperm cells for
RFLP testing.

On December 22, 1993, McGuire was indicted on one count of aggravated
murder under R.C. 2903.01(B) with one felony-murder specification for rape
under R.C. 2929.04(A)(7).  McGuire was also indicted on two counts of rape
(vaginal and anal) and one count of kidnapping.

On December 8, 1994, the jury returned a guilty verdict on the aggravated murder
and specification charge.  McGuire was also convicted of anal rape and
kidnapping.  After a sentencing hearing, the jury recommended a sentence of
death for the aggravated murder.  The trial judge sentenced the appellant to death,
and the court of appeals affirmed.

Ohio v. McGuire, 80 Ohio St.3d 390, 391-94, 686 N.E.2d 1112 (1997).

**B.     State Court Proceedings**

As noted above, on December 22, 1993, the Preble County, Ohio, grand jury indicted

McGuire on one count of aggravated murder under Ohio Revised Code ("O.R.C.") § 2903.01(B),

with one felony-murder specification for rape under O.R.C. § 2929.04(A)(7).  (Doc. 17 ex. 1.)[1]

The grand jury also indicted McGuire on two counts of rape (vaginal and anal) and one count of

kidnapping.  Id.

The guilt phase of the trial began on November 28, 1994, and the jury heard closing

arguments on December 7, 1994.  (T.p., Voir Dire at 1; id., Jury Trial at 953-1030.)  After being

instructed by the trial judge, the jury began its deliberations.  (T.p., Jury Trial at 1058.)  On

December 8, 1994, the jury returned its verdict finding McGuire guilty of aggravated murder in

violation of O.R.C. § 2903.01(B) and of committing aggravated murder while he was

_____

[1]  Although Respondent filed an Amended Return of Writ (doc. 32), she did not re-file
the Exhibits which she initially filed with the original Return of Writ (doc. 17).  Therefore, the
relevant exhibits are attached to docket number 17.

committing, attempting to commit, or fleeing immediately after committing rape and as the principal offender of the aggravated murder.  (Id. at 1067-68.)  The jury also found McGuire guilty of anal rape and kidnapping, but not guilty of vaginal rape.  (Id. at 1068.)

The penalty phase of the trial commenced on December 12, 1994, and the jury began its deliberations on that same day.  (T.p., Jury Trial Penalty Phase at 1, 141.)  The jury completed its deliberations on December 13, 1994, and returned its verdict recommending that the sentence of death be imposed.  (Id. at 159.)

On December 23, 1994, the court merged the kidnapping charge into the rape charge and sentenced McGuire to an indeterminate term of imprisonment of not less than ten (10) nor more than twenty-five (25) years on the conviction of rape.  (T.p., Misc. Hearings at 23-24.)  In addition, the court imposed upon McGuire the sentence of death.  (Id. at 24-25.)  On that same date, the court filed its written Sentencing Opinion in which it engaged in an independent weighing of the aggravating circumstances and mitigating factors.  (Doc. 17 ex. 68.)

McGuire appealed to the Ohio Twelfth District Court of Appeals, and he raised eleven (11) assignments of error.  Ohio v. McGuire, Case No. CA95-01-001, 1996 WL 174609 at *4 (Ohio App. 12th Dist. April 15, 1996).  On April 15, 1996, the court of appeals affirmed McGuire's convictions for aggravated murder and rape as well as his death sentence.  McGuire, 1996 WL 174609 at *14.

McGuire appealed to the Ohio Supreme Court raising eighteen (18) propositions of law. McGuire, 80 Ohio St.3d at 394.  On December 10, 1997, the Ohio Supreme Court affirmed McGuire's conviction.  Id. at 404.  The court also independently reviewed McGuire's death sentence as required by O.R.C. § 2929.05(A) and affirmed the death sentence.  Id. at 402-04.

McGuire filed a motion for reconsideration on December 22, 1997 which the Ohio

Supreme Court denied.  Ohio v. McGuire, 81 Ohio St.3d 1433, 689 N.E.2d 52 (1998) (Table).

On October 5, 1998, the United States Supreme Court denied certiorari.  McGuire v. Ohio, 525

U.S. 831 (1998).

During this period of time, specifically on October 21, 1996, McGuire filed his Petition

to Vacate or Set Aside Sentence pursuant to O.R.C. § 2953.21.  (Doc. 17 ex. 81.)  In that Petition

for post-conviction relief, McGuire raised eighteen (18) causes of action.  (Id.)  In a decision

issued on May 15, 1997, the common pleas court granted the state's motion for summary

judgment and denied McGuire's petition for post-conviction relief.  (Doc. 17 ex. 92.)

McGuire appealed the denial of his post-conviction petition and raised ten (10)

assignments of error.  Ohio v. McGuire, Case No. CA97-06-015, 1998 WL 191415 (Ohio App.

12th Dist. Apr. 20, 1998).  The Court of Appeals affirmed the trial court, id., and the Ohio

Supreme Court did not allow the appeal, Ohio v. McGuire, 83 Ohio St.3d 1428, 699 N.E.2d 945

(1998) (Table).

McGuire filed a second or successive post-conviction petition in the trial court on July

20, 2000.  (Doc. 62, ex. A.)  In that petition, McGuire brought a claim of ineffective assistance of

trial counsel based on the failure to properly investigate and present mitigation evidence.  (Id.)

On September 29, 2000, the trial court denied McGuire's second petition for post-conviction

relief.  (Doc. 62, ex. C.)

McGuire appealed the denial of his second post-conviction relief petition raising two (2)

assignments of error. Ohio v. McGuire, Case No. CA2000-10-011, 2001 WL 409424 at *4, 9

(Ohio App. 12th Dist. Apr. 23, 2001).  The court of appeals affirmed the trial court's dismissal of

McGuire's second petition for post-conviction relief. Id. at *10. The Ohio Supreme Court did not allow the appeal. Ohio v. McGuire, 93 Ohio St.3d 1411 (2001).

**C.    District Court Proceedings**

McGuire filed his Notice of Intention to file his habeas Petition on January 27, 1999. (Doc. 2.) He filed his Petition on March 30, 1999. (Doc. 8.) On October 5, 1999, McGuire filed an Amended Petition raising twenty-one (21) Grounds for Relief. (Doc. 28.)

On August 16, 2000, Chief Magistrate Judge Merz granted McGuire's Motion for Appointment of Kathleen Burch as a neuropsychologist and his Motion for Appointment of Cellmark Diagnostics as a DNA expert. (Doc. 50.) In addition, the Chief Magistrate Judge granted in part and denied in part McGuire's Amended Motion for Discovery. (Id.) On March 14, 2002, Chief Magistrate Judge Merz granted McGuire's Motion to Expand the Record to include the state court pleadings with respect to McGuire's second or successive post-conviction petition. (Doc. 70; Doc. 62 and Exhibits thereto.) On February 3, 2003, Chief Magistrate Judge Merz denied McGuire's second Motion to Expand the Record and his Motion for Evidentiary Hearing. (Doc. 81.) On December 15, 2003, this Court overruled McGuire's Objections to the Chief Magistrate Judge's denials of his second Motion to Expand the Record and his Motion for Evidentiary Hearing. (Doc. 85.) Pursuant to the Court's December 16, 2003 Briefing Schedule, McGuire filed his Trial Brief (doc. 87) on March 15, 2004 and the Respondent filed her Brief (doc. 88) on April 14, 2004.

In his Merit Brief, McGuire abandoned Grounds for Relief 1, 4, 7, and 21(k). (Doc. 87.) He further abandoned Grounds 2, 6, 12, 13, 14, 15, 16, 19, 20, and the remainder of 21 in his Objections to the R&R. (Doc. 94.) Additionally, McGuire made no argument concerning Chief

8

Magistrate Judge Merz's recommended disposition of his claims in Grounds 8, 17, and 18 in his Objections to the R&R or the Objections to the Supp. R&R.  He has waived objections, therefore, as to these Grounds.  Accordingly, the only remaining Grounds this Court must address are Grounds 3, 5, 9, 10, and 11.  Chief Magistrate Judge Merz has recommended overruling Grounds for Relief 3, 5, 9, 10, and 11.

## II.    STANDARD FOR HABEAS CORPUS PETITIONS

McGuire's petition was filed after April 24, 1996 so it is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Hamilton v. Morgan, 474 F.3d 854, 857 (6th Cir. 2007).  A habeas petitioner must exhaust all remedies available to him in state court before filing a habeas petition.  28 U.S.C. § 2254(b)(1)(A).  The AEDPA requires federal courts to respect any determination on the merits made by a state court unless it: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. §§ 2254(d)(1)- (2); see also Williams v. Taylor, 529 U.S. 362, 402-03 (2000).  In Williams, the Supreme Court further explained the meaning of § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13.  An unreasonable application is more than simply incorrect; it must be objectively unreasonable.  Id. at 409, 411; see also Rompilla v. Beard, 545 U.S. 374, 380 (2005).

"Clearly established Federal law" under § 2254(d)(1) means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "Under [the] AEDPA, if there is no clearly established Federal law, as determined by the Supreme Court, that supports a habeas petitioner's legal argument, the argument must fail." Miskel v. Karnes, 397 F.3d 446, 453 (6th Cir. 2005) (internal citation omitted).

Pursuant to 28 U.S.C. § 2254(e)(1), a determination of a factual issue by a state court shall be presumed correct and the applicant shall have the burden of rebutting the presumption by clear and convincing evidence. McAdoo v. Elo, 365 F.3d 487, 493-94 (6th Cir. 2004). This presumption does not apply to mixed questions of law and fact. Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003). Instead, the "unreasonable application" prong of § 2254(d)(1) applies to mixed questions of law and fact. Id.

A federal court will not review a question of federal law decided by an Ohio court if the decision rests "on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). This is true whether the state law ground is substantive or procedural. Id. If a state law prisoner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750.

10

## III.    ANALYSIS

**Third Ground for Relief:**

> **McGuire was not permitted to introduce evidence showing that the victim's husband had anal intercourse with her and thus the semen could have come [from] two sources rather than a single source.  The DNA opinion that Mr. McGuire was the source of the semen depended on the assumption that there was only a single source for the semen.  His conviction and sentence violate the Eighth and Fourteenth Amendments.**

(Doc. 28 at 43.)

### A.    State Court Proceedings

In this Ground for Relief, McGuire asserts that the trial court erred in not allowing him to present evidence in the form of a hearsay statement by David Lindloff, an investigator with the Preble County Coroner's Office, that the victim's husband, Kenny Stewart, told Lindloff that he had anal intercourse with the victim three or four days before her death.  McGuire asserts that this evidence is relevant because, construed broadly in his favor, it suggests that Kenny Stewart, and not McGuire, might have had intercourse with and murdered his wife.  McGuire also asserts that Kenny Stewart's statement might have cast doubt as to the reliability of the DNA evidence presented at trial.

To understand McGuire's argument, a review of the DNA testimony is appropriate. Jennifer Mihalovich, the State's criminologist, testified at trial that assuming there was a single semen source, the DNA results demonstrated that Kenny Stewart and Jerry Richardson, McGuire's brother-in-law, could be excluded as the sources of the semen taken from Joy Stewart's rectum, but that McGuire could not be excluded as the source.  (T.p., Jury Trial at 529-32.)  Mihalovich also testified that if there was more than one source of the semen in the rectal sample, then neither Richardson or Kenny Stewart could be eliminated as a potential donor of

11

that second source of semen.  (Id. at 532.)  Likewise, the defense's expert, Dr. Dan Krane,

testified that a semen sample taken from a victim's rectum is sensitive and easily contaminated,

and that if Joy Stewart's sample had been  contaminated, then Kenny Stewart could not be

excluded as a source of the semen.  (Id. at 815-21, 825.)  However, Dr. Krane also testified that

assuming that there was a single donor of the semen and that there was no contamination of the

sample, the analyses described by Mihalovich were performed correctly.  (Id. at 845.)

 The trial court prohibited Lindloff from testifying as to what Kenny Stewart had said on

the grounds that it was hearsay.  (Id. at 890.)  McGuire had contended then, and contends now,

that the hearsay evidence was admissible as a statement against penal interest under Ohio R.

Evid. 804(B)(3).  The trial court rejected that contention.  (Id. at 889-90.)

 On appeal, the Ohio Supreme Court affirmed that the Kenny Stewart's statement was

inadmissible hearsay.  It also held that exclusion of the statement did not deny McGuire due

process under the decision of Chambers v. Mississippi, 410 U.S. 284 (1973), because the

statement was not highly reliable evidence.  McGuire, 80 Ohio St.3d at 399-400.

**B.** **Clearly Established Federal Law**

 McGuire asserts that the Kenny Stewart statement was admissible pursuant to Supreme

Court precedent whether or not it was technically hearsay under the Ohio Rules of Evidence.  In

Chambers, a man named Gabe McDonald had admitted to three persons on separate occasions

that he committed the murder with which Chambers was charged.  410 U.S. at 287.  He later

repudiated these confessions.  Id. at 288.  The trial court allowed Chambers' counsel to call

McDonald and solicit the facts that he had confessed and then repudiated his confession.  Id. 410

U.S. at 291.  The trial court refused to allow defense counsel to question McDonald as if on

12

cross-examination under the common law rule that one may not impeach one's own witness, the

so-called vouching rule.  Id.  It also refused to allow defense counsel to call the three people to

whom McDonald had confessed on the grounds their testimony about his confessions would

have been hearsay.  Id. at 292.  The Supreme Court ruled that these decisions cumulatively

denied Chambers the right to a fair opportunity to assert a defense.  Id. at 294, 302.

Regarding the three corroborating witnesses who would have testified that McDonald

made separate confessions to each of them, the Supreme Court stated:

> The hearsay statements involved in this case were originally made and
> subsequently offered at trial under circumstances that provided considerable
> assurance of their reliability.  *First*, each of McDonald's confessions was *made
> spontaneously* to a close acquaintance shortly after the murder had occurred.
> *Second*, each one was *corroborated by some other evidence in the case --*
> McDonald's sworn confession, the testimony of an eyewitness to the shooting, the
> testimony that McDonald was seen with a gun immediately after the shooting, and
> proof of his prior ownership of a .22-caliber revolver and subsequent purchase of
> a new weapon.  The sheer number of independent confessions provided additional
> corroboration for each.  *Third*, whatever may be the parameters of the
> penal-interest rationale, *each confession here was in a very real sense
> self-incriminatory and unquestionably against interest*.  McDonald stood to
> benefit nothing by disclosing his role in the shooting to any of his three friends
> and he must have been aware of the possibility that disclosure would lead to
> criminal prosecution.  Indeed, after telling Turner of his involvement, he
> subsequently urged Turner not to "mess him up."  *Finally*, if there was any
> question about the truthfulness of the extrajudicial statements, *McDonald was
> present in the courtroom and was under oath*.  He could have been
> cross-examined by the State, and his demeanor and responses weighed by the
> jury.

Id. at 300-01 (emphasis added and citations omitted).  The Supreme Court concluded that "[i]n

these circumstances, where constitutional rights directly affecting the ascertainment of guilt are

implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."

Id. at 302.  The Court stated that it was establishing "no new principles of constitutional law,"

but that the exclusion of McDonald's admissions to others, coupled with the refusal to permit

Chambers to call McDonald, had deprived Chambers of a fair trial.  Id. at 302-03.

More than 20 years later, in Holmes v. South Carolina, 547 U.S. 319, 126 S.Ct. 1727 (2006), the Supreme Court again reiterated that evidentiary rules cannot be applied to defeat the ends of justice.  "The Constitution . . .  prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." 126 S.Ct. at 1732.

**C.     Analysis**

This Court begins with an examination of whether the Kenny Stewart statement was hearsay under the Ohio Rule of Evidence.  Ohio R. Evid. 804(B)(3) provides that a statement is not excluded by the hearsay rule if the declarant is unavailable to testify as a witness and it is "[a] statement that was at the time of its making . . . so far tended to subject the declarant to civil or criminal liability, . . .  that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true."  Ohio R. Evid. 804(B)(3).  The Rule further specifies that a statement "tending to expose the declarant to criminal liability . .  is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement."  Id.  Applying the Rule, Kenny Stewart was not available to testify because he had died in the time between Stewart's murder and McGuire's trial.  The relevant evidentiary issues, therefore, were whether the statement was against Kenny Stewart's penal interest at the time he made it and whether there were corroborating circumstances to establish the trustworthiness of the statement.

First, this Court agrees with the state courts that Kenny Stewart's statement was not necessarily against his penal interest when he made it.  McGuire contends that Kenny Stewart

knew he was a suspect when he admitted to having anal sex with his wife. Even if true, Kenny Stewart may have believed his statement tended to exonerate him because it provided an innocent explanation for why his semen might be found in his wife's body after she was murdered. Kenny Stewart's statement that he had intercourse with his wife three or four days before her murder is not, as McGuire seems to suggest, an admission that he had intercourse with her on the day of the murder. It certainly is not an admission that he raped her, and then stabbed her, on the day she died.[2]

Likewise, this Court finds that there were not corroborating circumstances indicating the trustworthiness of the statement. McGuire cites to several facts that he posits corroborate Kenny Stewart's statement, but the Court cannot agree. He contends that there is evidence that suggests that (a) Stewart may have had the opportunity to murder his wife because his job as a truck driver did not require him to check in with other workers at the time of the murder; (b) the physical evidence at the scene was consistent with consensual intercourse; (c) a witness thought he saw Joy Stewart get into a brown pickup truck on the day of the murder and Stewart owned a brown pick-up truck; (d) there was evidence of discord in the Stewarts' marriage. However, none of these alleged facts about *the day of the murder* and the Stewarts' marriage is relevant to corroborate the hearsay statement that Kenny Stewart had anal sex with this wife three or four *days before* she was murdered. In sum, the Ohio court correctly concluded that the statement was inadmissible hearsay.

_____

[2] Nor does his statement in any way exonerate McGuire. Mihalovich testified that McGuire could not be eliminated as a source for the semen regardless of whether there were one or two sources for the semen. Thus, the DNA evidence allows for the fact that both McGuire and Kenny Stewart might have had intercourse with Joy Stewart before she was murdered.

15

Moreover, this Court agrees with Chief Magistrate Judge Merz that the state court decision to disallow Kenny Stewart's hearsay statement was consistent with, and not an unreasonable application of, the clearly established law of <u>Chambers</u>. <u>Chambers</u> set forth four factors to consider when examining whether an out-of-court confession made by a person other than the defendant was reliable and admissible to help a defendant establish a defense. (1) Was the statement made spontaneously? (2) Was the statement corroborated by other evidence? (3) Was the statement self-incriminatory and against interest? (4) Was the declarant available to testify? 410 U.S. at 300-01.

These <u>Chambers</u> factors counsel against the admission of Kenny Stewart's statement. First, Kenny Stewart's statement was not spontaneous as it was made to a law enforcement official investigating the crime at a time when Kenny Stewart might have believed he was a suspect. Second, as discussed earlier, there is no significant evidence corroborating that Kenny Stewart had anal sex with his wife three or four days before the murder. Third, there was nothing inherently incriminating about Kenny Stewart's statement that he had anal sex with his wife several days before she died. Finally, Kenny Stewart was deceased at the time of trial and could not testify nor have his credibility judged by the jury. The Court concludes that the facts in this case are distinguishable in material respects from those in <u>Chambers</u>. The state court decision to exclude the evidence at the culpability and penalty phases was not an unreasonable application of federal law.

Turning next to the <u>Holmes</u> decision, the second Supreme Court precedent relied upon by McGuire, the Supreme Court reiterated in this 2006 case that state rules of evidence which act to exclude evidence from criminal trials cannot arbitrarily impede on a defendant's right to present

16

a defense.  547 U.S. 319, 126 S.Ct. at 1731.  This recent decision simply is not relevant to the

issue at hand.  The standard is whether the Ohio Supreme Court's decision was contrary to or an

unreasonable application of the law as it existed at the time the state court rendered its decision.

Carey v. Musladin,--- U.S. ----, ----, 127 S.Ct. 649, 653, (2006); Lockyer, 538 U.S. at 71-72.

Holmes was not decided until many years after the state court proceedings were completed.

      For all these reasons, the Court finds it was not an unreasonable application of federal

law for the state court to have prohibited the Kenny Stewart hearsay statement during culpability

and sentencing phases of trial.  The Third Ground for Relief is **DENIED**.

**Fifth Ground for Relief:**

> **The jury was not instructed in a manner that allowed them to take into consideration Mr. McGuire's history, character, and background.  Thus his sentence violates the Eighth and Fourteenth Amendments.**

(Doc. 28 at 54.)

**A.**     **Relevant State Law**

      O.R.C. § 2929.04(B)[3] provides that in a capital case the jury shall weigh the aggravating

circumstances proved beyond a reasonable doubt against "the nature and circumstances of the

offense, the history, character, and background of the offender," plus a list of specific factors

when determining whether to recommend a sentence of death.  Id.  One of the specified factors is

a catch-all provision: "Any other factors that are relevant to the issue of whether the offender

should be sentenced to death."  O.R.C. § 2929.04(B)(7).[4]   The trial court, and the appellate

---

[3] The Court's citations to the Ohio Revised Code are to the Code as it was enacted at the time of the state court trial proceedings.

[4] The other specific factors are the following:

17

courts that follow, cannot impose a sentence of death under Ohio law if the jury votes for life.

See O.R.C. § 2929.03.  However, if the jury recommends and the trial court imposes a sentence

of death, then the appeals court and the Ohio Supreme Court are to review a sentence of death

and "independently weigh all of the facts and other evidence disclosed in the record in the case

and consider the offense and the offender to determine whether the aggravating circumstances

the offender was found guilty of committing outweigh the mitigating factors in the case, and

whether the sentence of death is appropriate."  O.R.C. § 2929.05(A).

**B.**     **State Court Proceedings**

At the sentencing phase of trial, defense counsel presented evidence about McGuire's

history and character through the testimony of his mother, his half-sister, a licensed psychologist,

and McGuire's own unsworn statements to the jury.  Relevant to this Ground for Relief, the jury

heard that McGuire started abusing marijuana at the age of nine years old, that he smoked

marijuana with teenagers twice his age, and that he had a habit of smoking marijuana until the

time he was incarcerated.  The jury also heard about McGuire's unstable childhood, including

---

(1) Whether the victim of the offense induced or facilitated it;
(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;
(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;
(4) The youth of the offender;
(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; [and]
(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim.

O.R.C. § 2929.04(B)(1)-(6).

that his mother endured several abusive relationships which McGuire witnessed, and that his

father and older brother were largely absent from his life.  Finally, they heard about McGuire's

difficulties in school, including that he dropped out of school days after starting the tenth grade,

that he could not read or write well, and that he stuttered as a child.  (T.p., Jury Trial–Penalty

Phase at 14-102.)

After defense counsel presented the mitigation testimony, the trial court instructed the

jury as follows:

> Now, you are going to proceed to weigh the aggravating circumstances which you have already found, against the mitigating factors which you will consider and find.
>
> The aggravating circumstances which you have already found is as follows:  The offense was committed while the Defendant was committing, or attempting to commit, or fleeing immediately after committing or attempting to commit rape and was the principal offender in the commissioner of the aggravated murder.
>
> Now, weighing against the aggravating circumstance will be the following mitigating factors:
>
> 1)  Any residual or lingering doubts about the Defendant's guilt of the offense charged or an aggravating circumstance.
> 2)  The Defendant's potential for rehabilitation.
> 3)  The Defendant's ability to make a well-behaved and peaceful adjustment to life in prison.
> 4)  The Defendant's ability to lead a useful life behind bars if sentenced to life imprisonment.
> 5)  The Defendant's devotion to, and care of, his family members.
> 6)  Whether the Defendant was the victim of childhood abuse.
> 7)  The Defendant was deprived of parental nurturing.
>
> Now, before you can recommend death, you must unanimously agree that the prosecution has proved to you beyond a reasonable doubt that the aggravating circumstance outweighs all of the mitigating factors.

(Id. 133-34.)  The jury recommended a sentence of death following sentencing arguments and

instructions.  (Id. at 159.)  McGuire asserts that the trial court erred by not specifically

19

instructing the jury that, in addition to the factors delineated above, it should have considered "the history, character, and background of the offender" and "any other factors that are relevant to the issue of whether the offender should be sentenced to death." O.R.C. § 2929.04(B).

Trial counsel objected to the instructions given during the penalty phase of the trial. The trial court overruled the objection. However, in its sentencing opinion, the trial court did independently re-weigh the mitigating factors correctly applying the specific statutory elements of O.R.C. § 2929.04(B) in light of the mitigation testimony. (Doc. 17 ex. 68.) The trial court expressly considered McGuire's marijuana use, educational level, and other factors that the jury might not have considered given the sentencing instruction error. (Id.)

McGuire's appellate counsel did not raise the issue on direct appeal, but they did raise the issue to the Ohio Supreme Court as support for his claim for ineffective assistance of appellate counsel. The Ohio Supreme Court held that the trial court had erred in not giving the instruction McGuire's counsel had requested. McGuire, 80 Ohio St.3d at 398. However, the Ohio Supreme Court stated that the only specific mitigating factor that McGuire pointed out that the jury could not have considered based on the instruction given was McGuire's history of marijuana use. Id. "Under the circumstances of this case, reasonable appellate counsel could have decided that a history of marijuana use was of such little mitigation that the error in instructing the jury was harmless." Id. Significantly, the Ohio Supreme Court also independently re-weighed the aggravating circumstance against the statutory mitigating factors. It specifically considered factors such as McGuire's marijuana use, poor education, and unstable family environment during childhood when it determined that the mitigating factors did not outweigh the aggravating circumstances. Id. at 404.

20

### C.    Analysis

In these district court proceedings, the Chief Magistrate Judge held in the R&R and the Supp. R&R that this claim was procedurally defaulted because it was available but had not been raised on direct appeal to the Ohio Court of Appeals and that Petitioner also had not presented cause and prejudice to excuse the default.

In his final Objections, McGuire argues that his appellate counsel's deficient performance in failing to raise the issue to the state intermediate appellate court provides the cause and prejudice necessary to excuse the procedural default.[5]  He also asserts, regarding the merits, that the Ohio Supreme Court decision was an unreasonable application of federal law because it was contrary to the Supreme Court's decision in Lockett v. Ohio, 438 U.S. 586 (1978).  In Lockett, the Court held that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."  Id. at 604; see also Davis v. Coyle, 475 F.3d 761, 771 (6th Cir. 2007).  The Lockett decision was reinforced in Eddings v. Oklahoma, 455 U.S. 104 (1982), wherein the Court held that "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence."  Id. at 113-14 (evidence in the original).

---

[5] Ineffective assistance of appellate counsel can be an excusing cause to avoid a state procedural default rule, but only if the ineffective assistance of appellate counsel claim is properly presented to the state courts in the first instance.  Edwards v. Carpenter, 529 U.S. 446 (2000).

Upon examination, this Court agrees that the jury instruction was in error and that appellate counsel should have raised the issue on appeal.  The problem is that by specifying seven specific non-statutory factors the jury could consider, the trial instruction by inference forbade the jury to consider as mitigation in its deliberations other evidence concerning McGuire's background and history which had been presented during the sentencing phase. However, the Court need not determine whether appellate counsel's deficiency prejudiced McGuire so as to excuse his procedural default.  The Court also need not examine whether the Ohio Supreme Court's conclusion that the trial court's jury instruction was harmless error was an unreasonable application of Lockett.  Instead, the Court will look at the merits of the Fifth Ground for Relief from a different perspective.  The Court holds that the Ohio Supreme Court decision was not an unreasonable application of federal law, nor an unreasonable determination of the facts, because the Ohio Supreme Court cured the trial court's error and obviated any prejudice caused thereby when it conducted an independent re-weighing of the aggravating circumstances and mitigating factors pursuant to O.R.C. § 2929.05(A).

In Clemons v. Mississippi, 494 U.S. 738, 745-46 (1990), the U.S. Supreme Court upheld a death sentence where the state appeals court had invalidated one or more of the aggravating circumstances found by the jury, but then itself concluded that the remaining aggravating circumstances outweighed the mitigating factors.  The Court rejected the petitioner's argument that his due process rights were violated because Mississippi statutory law provided only juries with the authority to impose death sentences.  Id.  "Any argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence has been soundly rejected by prior decisions of [the Supreme] Court."  Id. at 745.  The

22

Supreme Court instructed that if a reviewing court decides to re-weigh the aggravating and mitigating circumstances, the court must "give each defendant an individualized and reliable sentencing determination based on the defendant's circumstances, his background, and the crime." Id. at 749.

Following Clemons, the Sixth Circuit has held that the Ohio Supreme Court is permitted to correct weighing errors made below and independently re-weigh the aggravating circumstances and mitigating factors. See Cooey v. Coyle, 289 F.3d 882, 891-92 (6th Cir. 2002). The Ohio Supreme Court had determined in Cooey that the three-judge panel trial court had made several errors in its weighing process, including a failure to merge the murder specifications. See id. at 889-90. The Ohio Supreme Court further had found, however, that none of the trial court's errors were plain error. It then independently had determined that the aggravating circumstances outweighed the mitigating factors after looking at the petitioner's physical and mental history and his background. See id. at 890-91. The Sixth Circuit held that the Ohio Supreme Court properly considered the Clemons factors during its re-weighing analysis. See id. at 891-92. Accordingly, the Sixth Circuit held that the state decision was not contrary to or an unreasonable application of federal law, nor was it an unreasonable determination of the facts in light of the evidence provided in state court. See id.; cf. Fox v. Coyle, 271 F.3d 658, 667 (6th Cir. 2001) (stating that no constitutional claim is stated when the state's highest court independently re-weighs aggravating and mitigating circumstances without reference to the extra-statutory factor relied on by a trial court).

The principles of Clemons and Cooey apply to trial court errors regarding the weighing of mitigating factors also, not just to the weighing of aggravating circumstances. In fact, the

Sixth Circuit explicitly has rejected an argument that "the failure to properly consider mitigating factors . . . cannot be cured by re-weighing, even after Clemons."  Baston v. Bagley, 420 F.3d 632, 638 (6th Cir. 2005) cert denied 126 S.Ct. 2294 (2006).  The Sixth Circuit explained as follows:

> Weighing aggravating and mitigating factors against each other requires considering both sets of factors. Thus, there is no reason that an appellate court could properly reweigh after removing an aggravating factor from consideration, but could not do so after adding an additional mitigating factor. Clemons, 494 U.S. at 750, 110 S.Ct. 1441 ("We accordingly see nothing in appellate weighing or reweighing of the *aggravating and mitigating* circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence.") (emphasis added).

Id. [6]

_____

[6] The Court is aware of language from the more recent Davis opinion, which when read out of context, might seem to suggest that McGuire is entitled to be resentenced.  The Sixth Circuit stated in Davis that "when a trial court improperly excludes *mitigating* evidence or limits the fact-finder's consideration of such evidence, the case must be remanded for a new sentencing hearing."  475 F.3d at 774-75.  Important factual and procedural aspects limit the precedential value of Davis and render it immaterial here.  Davis concerned a prisoner who had been sentenced to death, and then re-sentenced to death after the Ohio Supreme Court vacated his original sentence.  Id. at 763.  The trial court at re-sentencing refused to allow the prisoner to introduce new mitigation evidence concerning his good behavior in prison from the date he had first been sentenced.  Id. at 770-71.  Significantly, the prosecutor had not objected to the presentation of the new evidence by the prisoner.  Id. at 772.  The new mitigation evidence would have been relevant to rebut the prosecutor's argument at re-sentencing that the prisoner was a repeat offender who was too dangerous to permit to serve a life sentence.  Id.  The Sixth Circuit noted that "the record in this case establishes without a doubt that [the new mitigation evidence] was highly relevant to the single aggravating factor relied upon by the state–that future dangerousness should keep Davis on death row."  Id. at 773.  The Sixth Circuit then ordered a second re-sentencing by the trial as a remedy, as opposed to permitting the state appellate courts to cure the error by re-weighing, because "the improperly-excluded evidence was never put into the record . . . and therefore, no factual basis for re-weighing exists."  Id. at 774.  The Davis opinion did not discuss or attempt to distinguish Baston.
   This case is clearly distinguishable.  Procedurally, there has been no re-sentencing in this case.  Also, McGuire does not object that the trial court denied him the right to present mitigating evidence.  Rather, his concern is that the jury might not have considered relevant mitigating evidence in reaching its sentencing recommendation because on the erroneous jury

24

Under these precedents, the trial court's jury instruction error and appellate counsel's deficiency were cured by the Ohio Supreme Court's independent re-weighing of the aggravating circumstances and mitigating factors, including statutory mitigating factors not presented to the jury for consideration.  The Fifth Ground for Relief is **DENIED**.

**Ninth Ground for Relief:**

> **The court made numerous improper evidentiary rulings: the government was permitted to introduce gruesome and cumulative photographs, improper opinion testimony, improper rebuttal testimony; and Mr. McGuire was not permitted to present evidence that someone else may have committed this offense, and finally the jury was permitted to have an audio tape during its deliberations.  These cumulatively violate the Fifth, Sixth, Eighth and Fourteenth Amendments.**

(Doc. 28 at 78.)

McGuire alleged in his Amended Petition that the cumulative effect of the following evidentiary errors deprived him of fair and reliable guilt and sentencing phases:

> a.  Admission of cumulative and gruesome photographs denied McGuire's rights to a fair trial and sentencing determination;

> b.  The admission of opinion evidence given by the government's witness was improper;

> c.  Improper rebuttal testimony;

> d.  Failure to allow McGuire to present his defense;

> e.  The trial court abused its discretion by admitting into evidence and permitting the jury to listen to the tape during deliberations;

> f.  The trial court erred when it failed to instruct the jury to move to a lesser verdict of life when the jury reported that it had consistently voted 11-1.

---

instruction.  This error could be corrected by the appellate courts' independent re-weighing, consistent with <u>Baston</u>, because the relevant mitigating evidence was in the record.

(Id. at 78-89.)

Chief Magistrate Judge Merz recommended that this Ground for Relief be denied in its entirely.  McGuire in his Objections to the R&R and the Suppl. R&R asserts specific objections only concerning the subclaims (b), (c), (d), and (e).  McGuire has waived the right to object to the Chief Magistrate Judge's recommendations concerning the other subclaims.[7]

## A.      State Court Proceedings

In addressing these various alleged evidentiary errors, the Ohio Supreme Court said:

> Appellant also alleges that it was error for the court to submit Detective Swihart's taped interview with McGuire to the jury during its deliberations.  McGuire claims that the interview, which was played during trial, was overly emphasized when the court allowed the tape into the jury room.

> However, there is no error in allowing the jury to view or hear for a second time an exhibit properly admitted into evidence.  State v. Loza (1994), 71 Ohio St.3d 61, 79-80, 641 N.E.2d 1082, 1103; State v. Clark (1988), 38 Ohio St.3d 252, 257, 527 N.E.2d 844, 851.  Sending properly admitted evidence into jury deliberations rests within the sound discretion of the trial judge.  Id.  In this case, the judge did not abuse his discretion in allowing the jury access to the taped interview.  Therefore, appellant's sixth proposition of law is meritless.

> * * *

> Next, appellant argues that appellate counsel should have challenged the admissibility of Willie Reeves's testimony that "I guess [McGuire] was gonna make it look like someone else did it."  However, McGuire failed to challenge it at trial.   No prejudice exists, since appellate counsel's failure to challenge this single, relatively insignificant statement by Reeves does not undermine confidence in the fairness or reliability of the appeal.

> McGuire further contends that appellate counsel should have challenged the rebuttal testimony of Shirley Dinkins as irrelevant or inadmissible, apparently under Evid.R. 403(A) and 611(A).  However, Evid. R. 401 broadly defines "relevance," and judges have broad discretion in admitting or excluding evidence,

_____

[7] The remaining analysis for this Ground for Relief is taken, almost verbatim, from Chief Magistrate Judge Merz's R&R.

and controlling the order of interrogating witnesses. We hold that the trial court committed no error.

McGuire, 80 Ohio St.3d 396, 400, 400-01.

**B.     Clearly Established Federal Law**

Apart from circumstances giving rise to deprivation of a specific constitutional right, trial error will result in a constitutional violation only where it so infected the trial with unfairness as to make the resulting conviction or sentence a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). A federal court will inquire into the state court rulings only where the erroneous application of state law deprives a petitioner of a fundamental constitutional guarantee. Id. State court rulings on the admission of evidence are not open to challenge in a federal habeas suit unless admission of the evidence undermines the fundamental fairness of the trial. Burton v. Renico, 391 F.3d 764, 774 (6th Cir. 2004) (citing Dowling v. United States, 493 U.S. 342, 352-53 (1990)). "Procedural due process is, in the last analysis, simply the court's notion of fundamental fairness, and compliance with the principles implicit in the concept of ordered liberty." Lundy v. Campbell, 888 F.2d 467, 470 (6th Cir. 1989) (internal quotations and citations omitted). The Due Process Clause simply does not mandate that all government decisions comply with standards that assure perfect, error-free determinations. Mackey v. Montrym, 443 U.S. 1, 14 (1979). However, cumulative error can render a trial unfair even when any one of the elements accumulated to reach that conclusion should not in itself render the trial unfair. Lundy, 888 F.2d at 472.

**C.     Analysis**

McGuire argues first that it was error for the trial court to admit into evidence the opinion testimony of Willie Reeves, one of the State's witnesses.

Willie Reeves was an inmate at the Madison Correctional Institute during the period of

27

time that McGuire was incarcerated at that facility. (T.p., Jury Trial at 734-70.) He testified

generally that McGuire confessed to him when they were both in prison that McGuire had killed

Joy Stewart. (Id. at 739.) During his testimony, the following exchange took place between Mr.

Reeves and the prosecutor:

> Q. Did Dennis McGuire confide in you that he made any mistakes in this case?
> A. Just that he told the police where the knife was.
> Q. He considered that a mistake?
> A. He–he said it was. I guess he was gonna try to make it look like someone else did it.

(Id. at 741.)

McGuire's position is that Reeves' statement that McGuire intended to frame someone

else cannot be rationally inferred from McGuire's allegedly telling Reeves that it was a mistake

to tell the police about the knife. As noted by the Ohio Supreme Court, McGuire's trial counsel

failed to object to that testimony. (Id.) The Ohio Supreme Court examined the issue as part of a

claim that his appellate counsel were ineffective for failing to raise the alleged error on appeal.

McGuire, 80 Ohio St.3d at 400. At this juncture, therefore, this Court must consider the issue of

procedural default as it relates to McGuire's claim of error as to the admission of Mr. Reeves' testimony.

A petitioner may not raise on federal habeas a federal constitutional right he could not

raise in state court because of procedural default. Wainwright v. Sykes, 433 U.S. 72, 87 (1977);

Engle v. Isaac, 456 U.S. 107, 129 (1982). Absent cause and prejudice, a federal habeas

petitioner who fails to comply with a state's rules of procedure waives his right to federal habeas

corpus review. Engle, 456 U.S. at 129 (1982); Wainright, 433 U.S. at 87; Boyle v. Million, 201

F.3d 711, 716 (6th Cir. 2000). The Sixth Circuit Court of Appeals requires a four-part analysis when

determining whether a habeas claim is barred by procedural default. Reynolds v. Berry, 146 F.3d 345,

28

347-48 (6th Cir. 1998) (citing <u>Maupin v. Smith</u>, 785 F. 2d 135, 138 (6th Cir. 1986)). The test is as follows:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under [Wainwright v.] Sykes that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

<u>Maupin</u>, 785 F. 2d at 138.

Ohio's contemporaneous objection rule states that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected. <u>Ohio v. Mason</u>, 82 Ohio St.3d 144, 162, 694 N.E.2d 932 (1998); <u>Kubiszak v. Rini's Supermarket</u>, 77 Ohio App.3d 679, 684, 603 N.E.2d 308 (1991).[8] It is an adequate and independent state ground **that bars federal habeas review absent a showing of cause and prejudice.** <u>Mason v. Mitchell</u>, **320 F.3d 604, 635** (6th Cir. 2003).

With these principles in mind, this Court concludes that McGuire's claim with respect to the admission of Mr. Reeves' testimony is procedurally defaulted and therefore it is barred from federal habeas review. First, Ohio has a contemporaneous objection rule and McGuire's counsel failed to contemporaneously object to Reeves' testimony. Second, the Ohio Supreme Court specifically relied on the contemporaneous objection rule in addressing McGuire's claim as to Reeves' testimony. Third, the Sixth Circuit has determined that Ohio's contemporaneous objection rule is an "adequate and

---

[8] Failure to make a contemporaneous objection waives all but "plain error." <u>Mason</u>, 82 Ohio St.3d at 162.

independent" state ground.

Turning to the "cause and prejudice" prong of a procedural default analysis, even if McGuire could establish "cause" successfully, he cannot establish the necessary "prejudice" to excuse the procedural default.

When Reeves' testimony is reviewed in its entirety, even apart from the objectionable statement, it can be inferred that McGuire intended to blame someone else for Joy Stewart's rape and murder.  (T.p., Jury Trial at 741-42.)  Specifically, Reeves testified that McGuire said he had to get some people to testify for him and that he was going to try to make it look like he was somewhere else when he, in fact, wasn't.  (Id.)  Reeves also testified that McGuire told him that after he learned about Kenny Stewart's suicide, he was able to sleep at night because he was also going to try to use Kenny Stewart as his defense.  (Id. at 742.)  In view of the entirety of Reeves' testimony, as well as the other evidence against McGuire, that testimony which McGuire now challenges did not prejudice McGuire nor his defense.  McGuire's subclaim with respect to Reeves' testimony is without merit.

McGuire's next claim is that the trial court abused its discretion when it permitted the State, over defense counsel's objection, to call rebuttal witness Shirley Dinkins.  McGuire's position is that Dinkins' testimony did not rebut any evidence he offered in his defense and that it was merely used to bolster Reeves' credibility.  The State had proffered that Dinkins' testimony would rebut other testimony elicited by defense counsel that Reeves was bragging about having information against McGuire that he could use to help secure his release from prison.  (Id. at 921-22.)  McGuire's counsel objected to Dinkins' testimony at trial, but his counsel did not raise the issue on direct appeal.  As quoted above, McGuire's counsel did assert

30

the issue to the Supreme Court.

Any error by the trial court in allowing Dinkins' testimony was harmless. Dinkins testified that she is Reeves' mother. Id. The thrust of Dinkins' testimony was that after she received an initial telephone call from her son, she obtained the telephone number for the Preble County Sheriff's office which she gave to Reeves during a subsequent telephone conversation with him. Id. She also testified that she had to pry from Reeves the reason that he had called her using a series of "yes" and "no" questions so that anyone listening to him talk would not understand what the conversation was about. Id. While it may be arguable that Dinkins' testimony was irrelevant to directly rebut the testimony elicited by defense counsel during McGuire's case-in-chief, her testimony was not prejudicial to McGuire. In view of the evidence which the State introduced in support of McGuire's guilt, including the forensic evidence, the testimony of Investigator Lindloff, Stapleton, and Baird, and McGuire's own statements to the investigating officials, a reasonable jury would have had a basis for finding McGuire guilty in the absence of Dinkins' testimony purportedly bolstering Reeves' testimony. Dinkins' testimony which McGuire now challenges did not prejudice McGuire nor his defense and his subclaim with respect to her testimony is meritless.

Next, McGuire argues that it was error to not permit him to introduce evidence that someone else may have committed the offense. Specifically, McGuire alleges that it was error for the trial court to not permit him to introduce testimony on the issue of Kenny Stewart's concerns over Joy Stewart's drug use. McGuire also alleges that it was error for the trial court to not allow him to introduce evidence indicating that Kenny Stewart could have been the source of the semen because he and Joy Stewart had engaged in anal intercourse a few days before Joy

31

Stewart's rape and murder.

McGuire first argues that it was error for the trial court to fail to allow him to introduce evidence that Kenny Stewart allegedly expressed concern about Joy Stewart's drug use. At this juncture, this Court notes that McGuire never raised this particular claim in his direct appeal or in his collateral proceedings in state court. Therefore, it appears that the claim is procedurally defaulted. However, the Respondent does not advance the affirmative defense of procedural default and the Court declines to raise the procedural default *sua sponte*. Although McGuire's failure to raise this issue in any of the state court proceedings results in the issue being unexhausted, the AEDPA provides that a habeas court may address an unexhausted claim that is "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005) (citing 28 U.S.C. §2254(b)(2)). The Court turns its attention to the merits of McGuire's claim.

At trial, the defense attempted to introduce Kenny Stewart's alleged concern about his wife's drug use through a statement Kenny Stewart made to Joseph Goodwin, a part-time West Alexander police officer as well as a corrections officer for the Preble County sheriff's department. (T.p., Jury Trial at 106-28.) McGuire's counsel asked Goodwin if, at the time Kenny Stewart came to the West Alexander police station to report his wife Joy as missing, he expressed concern about Joy's drug use. (Id.) The prosecutor objected to the question as calling for hearsay and after a lengthy sidebar conference, the trial court sustained the objection. (Id.) During the sidebar, McGuire's counsel admitted that the question was asking for hearsay but he argued that it was "anticipatory of hearsay" expected to be introduced by the State. (Id.) The trial judge rejected that argument and held that both McGuire and the State were subject to the Rules of Evidence and that he would not admit hearsay. (Id.) Additionally, the trial judge

32

rejected McGuire's argument that the statement qualified as an exception to the hearsay rule as a statement against interest as it was not against Kenny Stewart's pecuniary or proprietary interest to say that he was concerned about his wife's drug use.

McGuire now argues that Goodwin's proposed testimony was not hearsay because it was not being offered to show that Joy Stewart was using drugs. McGuire's position is that the testimony was being offered to establish Kenny Stewart's state of mind at the time he filed the missing person's report. McGuire essentially argues that the testimony was offered to show that Kenny Stewart believed that Joy Stewart used drugs, that Kenny Stewart disapproved of her drug use, and that it therefore went to the issue of whether Kenny Stewart was, or should have been, a suspect in Joy's murder. The trial judge properly rejected counsel's "anticipatory of hearsay" argument. This Court is not aware of any recognized "anticipatory of hearsay" doctrine which would have excepted Goodwin's testimony from the hearsay rule. In addition, the Court does not understand how Kenny Stewart's expressed concern about his wife Joy's drug use was against his pecuniary or proprietary interest.

Nevertheless, even assuming that the trial judge erred by not allowing Goodwin to testify that Kenny Stewart expressed concern about Stewart's drug use, the error was harmless. First, there was evidence in the record that Kenny Stewart was concerned about Joy Stewart smoking cigarettes because she was pregnant. (Id. at 312-13 (10/10/94 Deposition of Juanita Deaton at p.8).) In addition, there was also evidence in the record about Joy Stewart's marijuana use. (Id. at 607 (testimony of Jerry Richardson); id. at 739 (testimony of Willie Reeves.).) Finally, in view of the evidence which the state introduced in support of McGuire's guilt, including the forensic evidence, the testimony of Investigator Lindloff, Stapleton, Reeves, and McGuire's

own statements to the investigating officials, a reasonable jury would have had a basis for finding McGuire guilty even if presented with Kenny Stewart's statement about his concern over Stewart's drug use. McGuire's claim related to testimony about Kenny Stewart's concern about Joy Stewart's drug use is without merit.

The Court turns to McGuire's argument that the trial court erred by failing to allow him to introduce evidence indicating that Kenny Stewart could have been the source of the semen. For the same reasons the Court gave in addressing the Third Ground for Relief, supra, McGuire's current claim that the trial court erred by not allowing the hearsay testimony regarding Stewart's statement fails here as well.

McGuire argues next that the trial court abused its discretion by admitting into evidence the audiotape of the interview Deputy Swihart conducted with him and then permitting the jury to take the tape into deliberations. McGuire's position is that admitting the audiotape and allowing the jury to listen to it during deliberations unduly emphasized that portion of the testimony to the exclusion of everything else that the jurors heard during the trial.

Deputy Swihart testified that he met with McGuire on December 22, 1989 at McGuire's request. (Id. at 376-98.) Deputy Swihart also testified that after McGuire took him and David Lindloff to a barn and showed them a knife hidden there, he (Deputy Swihart) interviewed McGuire and made an audiotape of that interview. (Id.) During the trial, Deputy Swihart testified about the details of that taped interview. (Id.) In addition, the trial court allowed the state to play the audiotape of the interview. (Id.) Subsequently, over the objections of McGuire's counsel, the trial court admitted into evidence State's Ex. 28 which is the audiotape of the interview. (Id. at 781-83.)

The audiotaped statement which McGuire gave to Deputy Swihart, and about which Deputy Swihart testified, is not a direct confession by McGuire that he raped and murdered Joy Stewart. Rather, in that statement McGuire alleges that Jerry Richardson told him that he (Richardson) raped and murdered Joy Stewart. McGuire also alleges in the statement that he was with Jerry Richardson when Richardson hid a knife in a barn on the Conley property. The audiotape is clear, the questions which Deputy Swihart asked McGuire in reaction to McGuire's statements are not repetitive, and the questions do not focus on any particular area of McGuire's statement. The audiotaped statement reveals how much detail about Joy Stewart's rape and murder McGuire was able to give to Deputy Swihart. Deputy Swihart testified as to all of those facts and the audiotape was played in open court. The audiotape itself is, of course, the best evidence of the statement McGuire gave to Deputy Swihart. It is common practice to send exhibits admitted into evidence into the jury room. The trial court did not abuse its discretion by doing so here.

Even assuming that the trial court did err by allowing the jury to take the audiotape of McGuire's statement to Deputy Swihart into the jury room, any such error was not prejudicial to McGuire. Specifically, in light of all of the other evidence which the state introduced in support of McGuire's guilt, including the forensic evidence, the testimony of Investigator Lindloff, Stapleton, Reeves, and McGuire's own statements to the investigating officials, about which the jury heard by way of Deputy Swihart's testimony, as well as the audiotape which was played in open court, a reasonable jury would have had a basis for finding McGuire guilty in the absence of having access to the audiotape during deliberations.

In conclusion, the Ohio Supreme Court's decision regarding the merits of McGuire's claims that

the trial court made numerous improper evidentiary rulings is not contrary to nor an unreasonable application of clearly established federal law.  This is true whether the subclaims are considered individually or for their cumulative effect.  The Ninth Ground for Relief is **DENIED.**

**Tenth Ground for Relief:**

> **Mr. McGuire's intermediate-appellate counsels' conduct of the case fell below the standard of care.  This violates the Sixth, Eighth, and Fourteenth Amendments.**

(Doc. 28 at 89.)

In his Objections to the R&R, McGuire limits this Ground for Relief to the following four subclaims:

> (1) Appellate counsel neglected to argue as error the insufficient quantum of evidence used to convict in violation of the Due Process Clause.

> (2) Appellate counsel failed to challenge the trial court's truncated instruction on mitigating factors.

> (3) Appellate counsel failed to raise as error irrelevant and prejudicial opinion testimony by a lay witness, Willie Reeves, as to McGuire's motives.

> (4) Appellate counsel inadequately argued the trial court's exclusion of a statement by the victim's husband from the defense case-in-chief as hearsay.

(Doc. 94 at 55-56.)

A.    **Clearly Established Federal Law**

The test of  Strickland v. Washington, 466 U.S. 668 (1984)–constitutionally deficient performance plus prejudice resulting therefrom–applies to appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  An appellate attorney need not advance every argument, regardless of merit, urged by the appellant.  Jones v. Barnes, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker

arguments on appeal and focusing on one central issue if possible, or at most on a few key

issues.").  Effective appellate advocacy is rarely characterized by presenting every non-frivolous

argument which can be made.  Williams v. Bagley, 380 F.3d 932, 971 (6th Cir. 2004).  However,

failure to raise an issue can amount to ineffective assistance.  McFarland v. Yukins, 356 F.3d

688, 710 (6th Cir. 2004); Mapes v. Coyle, 171 F.3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner

must show errors so serious that counsel was scarcely functioning as counsel at all and that those

errors undermine the reliability of the defendant's convictions."  McMeans v. Brigano, 228 F.3d

674 (6th Cir. 2000).  Courts "strongly presume" that an attorney's performance was

constitutionally sufficient.  Strickland, 466 U.S. at 690; McFarland, 356 F.3d at 710.  To prevail

on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate

counsel ignored issues which are clearly stronger than those presented.  Smith, 528 U.S. at 288.

Under the prejudice prong of the Strickland test, "[t]he defendant must show that there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  466 U.S. at 694.  A reasonable probability is one that "is sufficient

to undermine confidence in the outcome."  Id.  The Supreme Court further explained:

> When a defendant challenges a conviction, the question is whether there is a
> reasonable probability that, absent the errors, the factfinder would have had a
> reasonable doubt respecting guilt.  When a defendant challenges a death
> sentence . . . the question is whether there is a reasonable probability that, absent
> the errors, the sentencer--including an appellate court, to the extent it
> independently reweighs the evidence--would have concluded that the balance of
> aggravating and mitigating circumstances did not warrant death.

Id. at 695.  Counsels' failure to raise an issue on appeal could only be ineffective assistance if

there is a reasonable probability that inclusion of the issue would have changed the result of the

appeal. McFarland, 356 F.3d at 699. A petitioner has not established prejudice if a court is left with only speculation on whether the outcome would have been different. See Baze v. Parker, 371 F.3d 310, 322 (6th Cir. 2004).

The first subclaim regards the quantum of evidence used to convict McGuire of rape. The Court concludes in the discussion regarding the Eleventh Ground for Relief, infra, that there was sufficient evidence for a reasonable trier of fact to have convicted McGuire of rape. Accordingly, appellate counsel did not err by failing to raise the issue on appeal and/or McGuire was not prejudiced by the error.

The second subclaim regards the trial court's error in instructing the jury on mitigating factors at the sentencing phase of trial. The Court discussed the merits of this subclaim in the Fifth Ground for Relief, supra. The Court concluded therein that the Ohio Supreme Court's independent re-weighing of the aggravating circumstances against the full range of statutory mitigating factors cured the trial court's error in failing to instruct the jury on the full range of mitigating factors. McGuire cannot prove the prejudice aspect of the Strickland test based on the Court's conclusion regarding the Fifth Ground for Relief.

The third subclaim involves the one sentence of opinion testimony offered by Willie Reeves as discussed in the Ninth Ground for Relief, supra. The Court concluded therein that the trial court's alleged error in allowing the testimony was harmless. For the same reasons, the Court concludes here that any alleged error of appellate counsel in failing to raise the claim on appeal was not prejudicial to McGuire.

The fourth subclaim regards the exclusion of a statement made by Kenny Stewart to law enforcement officials. In the Court's analysis of the Third Ground for Relief, supra, the Court

38

held that it was not an unreasonable application of federal law for the trial court to have excluded

Kenny Stewart's statement.  Accordingly, McGuire's appellate counsel did not act in a

constitutionally deficient manner in failing to raise the subclaim on appeal and no prejudice

resulted from their failure.

      The Tenth Ground for Relief is **DENIED**.

**Eleventh Ground for Relief:**

      **The government failed to introduce sufficient evidence of Rape.  Thus Mr.
McGuire was ineligible for consideration for a death sentence.  This violates
the Eighth and Fourteenth Amendments.**

(Doc. 28 at 92.)

      In this Ground for Relief, McGuire alleges that there was insufficient evidence of rape

and of aggravated murder.  He further asserts that he was not eligible for the death sentence.

      The Ohio Revised Code defines the offense of rape as follows:  "No person shall engage

in sexual conduct with another when the offender purposely compels the other person to submit

by force or threat of force."  O.R.C. § 2907.02(A)(2).  Physical resistance by the victim is not an

element of the offense.  "A victim need not prove physical resistance to the offender in

prosecutions under this section."  O.R.C. § 2907.02(C).

      The Ohio Revised Code defines the crime of aggravated murder in relevant part as

follows:

      No person shall purposely cause the death of another while committing or
attempting to commit, or while fleeing immediately after committing or
attempting to commit kidnapping, rape, aggravated arson or arson, aggravated
robbery or robbery, aggravated burglary or burglary, or escape.

      * * *

      No person shall be convicted of aggravated murder unless he is specifically found

39

to have intended to cause the death of another. . . .

O.R.C. § 2903.01(B), (D).

Finally, the Ohio Revised Code states that the death penalty shall not be imposed unless,

among other qualifying circumstances:

> The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, . . . and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

O.R.C. § 2929.04(A)(7).

The Court's discussion and analysis that follows is taken, almost verbatim, from Chief

Magistrate Judge Merz's R&R.

**A.      State Court Proceedings**

In addressing this claim, the Ohio Supreme Court said:

> When a defendant challenges the sufficiency of evidence, we determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  After reviewing the evidence in this case, we find it sufficient to support appellant's convictions.

> McGuire's statements to the police tended to show guilt.  He had detailed knowledge of the crime, correctly stating how Joy was raped, the way she was stabbed, where the crime took place, and where the knife was hidden.  McGuire explained that these details came from what Jerry Richardson had told him the day after the murder, and that McGuire still remembered the details ten months later when he decided to talk to the police.  However, the state's DNA expert testified that Richardson could not be the sole source of sperm.

> The DNA evidence was consistent with McGuire's guilt, since his DNA possessed characteristics similar to the DNA of sperm found on the victim's body.  The DNA did not conclusively eliminate Richardson or Kenny Stewart, but they were possible sperm sources only if there was more than one source.

40

Furthermore, there was evidence that Kenny was at work at the time of the
murder, and Richardson could not have been driving his mother's car as McGuire
claimed.

Additionally, McGuire admitted guilt to Willie Reeves and Shawn Baird.
Likewise, Jack Stapleton testified that McGuire accidentally implicated himself in
describing the murder to another inmate.

Sufficient evidence was also presented indicating that McGuire was the principal
offender. The DNA evidence implicated McGuire as the source of semen found
on Joy's body. Jerry Richardson denied any involvement in the murder, and there
was also testimony that Richardson did not have access to the car that McGuire
claimed Richardson used in the commission of the rape and murder. Willie
Reeves also testified that when McGuire admitted to the rape and murder, he
made no mention of any accomplices. Finally, there was evidence that Kenny
Stewart was at work on the day of the murder and therefore could not have been
an accomplice to the crime.

There was also sufficient evidence to prove rape. Reeves testified that McGuire
told him that Joy became hysterical because "he wanted to have sex with her, and
she didn't want to, so he did it anyway." Moreover, the testimony of Lindloff,
Reeves, and Stapleton shows that McGuire consistently used the word "rape" to
describe what was done to Joy. The jury could infer from this evidence that the
sexual contact was compelled by force or threat of force.

Finally, the nature of the wound indicates specific intent to kill. McGuire also
told Reeves that he killed Joy to avoid going to jail. Thus, there was sufficient
evidence to convict appellant, and we reject his ninth proposition of law.

McGuire, 80 Ohio St.3d at 396-97.

## B.    Clearly Established Federal Law

The Ohio Supreme Court had been correct to apply Jackson v. Virginia, 443 U.S. 307

(1979), as the controlling federal law. Riley v. Berghuis, No. 05-2559, --- F.3d ----, 2007 WL

967938 at *6 (6th Cir. Apr. 3, 2007) (applying Jackson to a sufficiency of evidence claim). In

Jackson, the Supreme Court discussed the standard applicable to a federal court's review of a

state conviction on a sufficiency-of-the-evidence claim. The Court stated:

In [In re] Winship, [397 U.S. 358, 364 (1970)] the Court held for the first time

41

that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." . . . The standard of proof beyond a reasonable doubt, said the Court, "plays a vital role in the American scheme of criminal procedure," because it operates to give "concrete substance" to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding. 397 U.S. at 363. . . . At the same time by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. Id. at 372 . . . . (Harlan, J., concurring).

* * *

The Winship doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. A "reasonable doubt," at a minimum is one based on "reason." Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury. In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction. Under Winship, . . . it follows that when such a conviction occurs in a state trial, it cannot constitutionally stand.

A federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court.

* * *

After Winship the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether, it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.

42

Jackson, 443 U.S. at 315-19 (citations and footnotes omitted) (emphasis in original).

Under the standard announced in Jackson, therefore, it is not the reviewing court's duty to rule out every hypothesis that might be conjured from the facts other than the petitioner's guilt.  Id. at 326.  Instead, where the evidence supports conflicting inferences, the court must presume the fact finder resolved such conflicts against the petitioner and must defer to that resolution.  Id.  Moreover, circumstantial evidence may be sufficient to support a conviction.  United States v. Stone, 748 F.2d 361, 363 (6th Cir. 1984).  The Court will not weigh the evidence presented, consider the credibility of witnesses, or substitute the Court's judgment for that of the jury.  U.S. v. Jackson, 470 F.3d 299, 309 (6th Cir. 2006).

**C.**     **Analysis**

McGuire argues that as to the rape conviction, the state failed to prove the element of compulsion by force or threat of force.  McGuire then argues that because there was insufficient evidence of rape, which was the underlying offense of the felony murder conviction, the murder conviction must be vacated.  McGuire also claims that there was insufficient evidence that he intended to cause Stewart's death when he committed the rape.  Finally, he argues that there was insufficient evidence to support the death specification as principal offender of the murder.  The Court finds that these arguments are without merit.

First, McGuire consistently referred to Stewart being "raped."  Investigator Lindloff testified at McGuire's trial that when he met with McGuire on December 22, 1989, McGuire told him that Joy Stewart had been raped vaginally and anally.  (T.p., Jury Trial at 345.)  Jack Stapleton, an inmate at the Preble County jail at the same time McGuire was incarcerated at that facility, testified that he overheard McGuire telling another inmate about a murder, that McGuire

said he and his brother-in-law were involved, and that they raped the victim.  (Id. at 572.)   As

noted above, Willie Reeves, an inmate at the Madison Correctional facility at the same time as

McGuire, testified that McGuire told him that he and Stewart were cruising around in McGuire's

vehicle and that he wanted to have sex with her but that she did not want to have sex.  (Id. at

738-40.)  Reeves also testified that McGuire told him that he "did it anyway," that it was

difficult for him to have sex with her because she was pregnant so he "flipped her over" and

"fucked her in the ass," and then he got "nervous and paranoid" because she was acting

hysterical.  (Id.)  Reeves testified further that McGuire told him that Stewart became hysterical

and that he knew if he did not kill her that he would go to jail for raping a pregnant woman.  (Id.)

Second, the medical evidence is consistent with a finding of compulsion by force.  Dr.

David M. Smith, the forensic pathologist and deputy coroner for Montgomery County, testified

that Stewart had sustained two abrasions around her neck and one on the inside of her knee.  (Id.

at 138, 148.)  Additionally, Dr. Smith testified that there was enough pressure exerted on

Stewart's neck to cause the pattern of her clothing to be ingrained into her skin.  (Id. at 168.)

Finally, Dr. Smith testified that there was no trauma to Stewart's genitals or anus.  (Id. at 160.)

However, Dr. Smith also testified that it did not necessarily follow that because there was no

trauma that there was consensual sex and that absence of trauma did not have a great deal of

significance.  (Id.)

Additionally, other evidence corroborated the fact that McGuire used force to compel

Stewart to engage in sexual activity.  For example, Stewart's body was found laying on the

ground, out-of-doors, in Ohio, in the winter month of February.  (Id. at 36-42 (testimony of

Steven Noble).)  When Stewart's body was found, she was not wearing her coat; rather, it was

44

recovered from the ground.  (Id. at 76-77 (testimony of Deputy Swihart).)

Finally, in view of the DNA evidence introduced at trial, it was not unreasonable for the jury to conclude that McGuire was the source of the semen collected from Stewart's vagina and anus.  (See Third Ground for Relief, supra.)

Viewing the evidence in the light most favorable to the prosecution, a reasonable  trier of fact could have found that the essential elements of the crime of rape, including the use of or threat of force, were proven beyond a reasonable doubt.  Because there was sufficient evidence of rape which was the underlying offense in the aggravated murder conviction, there is no merit to McGuire's claim that his murder conviction must be vacated on the basis that there was insufficient evidence of rape.

McGuire also claims that there was insufficient evidence that he intended to cause Stewart's death when or immediately after he committed the rape.  However, the trial testimony discussed, supra, reveals that McGuire made several statements describing Stewart's rape and murder.  Some of those statements contained great detail as to how Stewart was stabbed.  They also contained information which the investigating authorities had not released.   Dr. Smith, the deputy coroner, testified about the knife wounds on Stewart's body including the injury which began on the left side of her neck, cut across her carotid artery and jugular vein, continued behind her esophagus and just in front of her spine, and which ended just to the right side of midline.  (T.p., Jury Trial at 137.)  Dr. Smith also described a smaller stab wound located near Stewart's left collarbone.  (Id. at 138.)  Finally, as noted above, Dr. Smith testified that there had been sufficient pressure exerted on Stewart's neck to cause her clothing to leave impressions on her skin.  (Id. at 168.)  Again, viewing the evidence in the light most favorable to the

prosecution, a reasonable fact finder could conclude that McGuire intended to cause Stewart's death when he committed the rape.

McGuire's final argument in support of this Ground is that there was insufficient evidence to support the death specification because the evidence was insufficient to establish that he was the principal offender in Stewart's murder.  However, for the same reasons discussed above, the DNA evidence, coupled with the detailed information that McGuire gave to Investigator Lindloff, Jack Stapleton, and Willie Reeves, provided a reasonable basis for the jury to conclude that McGuire was the principal offender.

The Ohio Supreme Court's decision on McGuire's claim, that the State failed to introduce sufficient evidence of rape and insufficient evidence of aggravated murder, is not contrary to nor an unreasonable application of, clearly established federal law.

The Eleventh Claim for Relief is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, the Petitioner Dennis McGuire's Objections to the Report and Recommendations (doc. 94) and Objections to the Supplemental Report and Recommendations (doc. 100) are **OVERRULED**.  The Amended Petition for *Writ of Habeas Corpus* (doc. 28) is **DENIED WITH PREJUDICE**.

IT IS SO ORDERED.


___s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge

46